WRIGHT, FINLAY & ZAK, LLP
Christina V. Miller, Esq.
Nevada Bar No. 12448
Ramir M. Hernandez, Esq.
Nevada Bar No. 13146
7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117
rhernandez@wrightlegal.net
(702) 475-7964; Fax: (702) 946-1345
*Attorneys for the Answering Parties as defined in ECF Nos. 27 and 29*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: BK-S-16-16593-ABL |
| ALESSI & KOENIG, LLC, | Chapter:  7 |
| Debtor(s). | Adv. No. 17-01210-ABL |
| | **RENEWED MOTION TO CLAIM EXCESS PROCEEDS FOR THE PROPERTY LOCATED AT 11278 TUSCOLANA STREET** |
| SHELLEY D. KROHN, TRUSTEE, | |
| Plaintiff, | Hearing Date:  August 1, 2019 |
| vs. | Hearing Time:  9:30 AM |
| 2010-1 CRE VENTURE LLC, a Delaware limited liability company; ABSOLUTE BEST CONCERTE, INC., a domestic corporation; ALESANDRA M. LECKIE, an individual; ALFRED T. DOLAN, JR.; ALIANTE MASTER ASSOCIATION, a domestic non-profit corporation; ALLAN L. GROMEK, an individual; AMANDA AKERS, an individual; AMERICAN GENERAL FINANCIAL SERVICES, INC.; AMERICAN SECURITY COMPANY OF NEVADA; MERIDIAS CAPITAL, INC., a domestic corporation; ANDREA ROBERTSON, an individual; ANDREW SHEALY, an individual; ANTHONY SWAGGERTY, an individual; ANTOINETTE CLAPP, an individual; | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AQUA FINANCE, INC., a foreign corporation; ASSET MANAGEMENT SERVICE ENTERPRISES LLC, a Nevada limited liability company; AUGUSTIN JIMENEZ an individual; BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS, LP; BAC HOME LOANS SERVICING, LP; BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP; BANK OF AMERICA, N.A.; BANK OF NEW YORK MELLON FORMERLY KNOWN AS BANK OF NEW YORK; BARBARA ANN DOLAN; BARFIELD ONE PROPERTY MANAGEMENT, LLC, a Nevada limited liability company; BAYVIEW LOAN SERVICES, LLC, a foreign limited liability company; BENJAMIN DONEL; BIERFASS 1, LLC; AGCOM II, LLC; RICARDO A. BIERFASS; BOBBIE JO LAMMIE, an individual; BOJAN NENADIC; CANYON CREST ASSOCIATION, a Nevada non-profit corporation; CANYON MIST ESTATES HOMEOWNERS ASSOCIATION, a Nevada nonprofit cooperative corporation without stock; CAPAROLA AT SOUTHERN HIGHLANDS HOMEOWNERS ASSOCIATION; CENTENNIAL POINT COMMUNITY ASSOCIATION, a Nevada non-profit company; CENTEX HOME EQUITY COMPANY, LLC; CHARLES E. AKERS, II, an individual; CHARLOTTE A. DICKEY, an individual; CHARLOTTE BARNETT, an individual; CHICAGO TITLE INSURANCE COMPANY; CITIBANK (WEST); CITIBANK, N.A., AS TRUSTEE FOR BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-8; CITIBANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES

SERIES 2006-8, a national banking
association; CITIMORTGAGE, INC.;
CITY OF HENDERSON, a domestic
governmental entity; CITY OF LAS
VEGAS, a domestic governmental entity;
CITY OF NORTH LAS VEGAS, a
domestic governmental entity; CLARA
BRAUD, an individual; CLARK COUNTY
TREASURER, TRUSTEE, a domestic
governmental entity; COLLEGIUM FUND
LLC SERIES 30, a Nevada limited liability
company; COMMUNITY
MANAGEMENT GROUP, a Nevada
corporation; COOPER CASTLE LAW
FIRM, LLP; COUNTRYWIDE BANK
FSB; COUNTRYWIDE HOME LOANS,
INC., a foreign corporation, for the benefit
of NB HOLDINGS CORPORATION;
COUNTRYWIDE HOME LOANS, INC.;
CTC REAL ESTATE SERVICES; CTX
MORTGAGE COMPANY LLC; DAVID J.
McCOY, an individual; DEBBIE
KRAEMER; DEBRA B. WEIGHTMAN,
an individual; DEBRA LEE, an individual;
DEPARTMENT OF THE TREASURY,
INTERNAL REVENUE SERVICE, a
federal governmental agency; DEUTSCHE
BANK NATIONAL TRUST COMPANY,
a foreign corporation; DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS
TRUSTEE FOR AMERIQUEST
MORTGAGE SECURITIES, INC.,
ASSET-BACKED PASS-THROUGH
CERTIFICATES, SERIES 2002-C, a
foreign corporation; DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS
TRUSTEE FOR LONG BEACH
MORTGAGE LOAN TRUST 2006-1, a
foreign corporation; DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS
TRUSTEE, IN TRUST FOR
REGISTERED HOLDERS OF LONG
BEACH MORTGAGE LOAN TRUST
2006-1, ASSET-BACKED
CERTIFICATES, SERIES 2006-1; DHI
MORTGAGE COMPANY, LTD., a foreign
limited partnership; DITECH SERVICING,
LLC, a foreign limited liability company;
DONALD G. CALDWELL, an individual;

DONNA M. HAWKINS, an individual;
DOUBLE DIAMOND RANCH MASTER
ASSOCIATION; MARIA ANDIOLA,
individual; EDUARDO ANDIOLA, an
individual; EL CAPITAN RANCH
LANDSCAPE MAINTENANCE
ASSOCIATION; EQUITY TRUST CO.
CUSTODIAN FBO DAVID HERRERA,
IRA, an unknown entity; FALCON RIDGE
COMMUNITY ASSOCIATION;
FEDERAL HOUSING FINANCE
AGENCY, as Conservator for the Federal
National Mortgage Association; FEDERAL
NATIONAL MORTGAGE
ASSOCIATION DBA FANNIE MAE, a
government sponsored entity; FEDERAL
NATIONAL MORTGAGE
ASSOCIATION; FIRST AMERICAN
TITLE COMPANY; FIRST FRANKLIN,
A DIVISION OF NATIONAL CITY
BANK; FLAMINGO RIDGE
HOMEOWNERS ASSOCIATION;
FRANKLIN AMERICAN MORTGAGE;
FREDERICK G. ROXBURY; FSB; FULL
SPECTRUM LENDING, INC.; GAHTLIN
BANKS, an individual; GEAN LOO, an
individual; GRANADA WILLOWS
TRUST #7423, NV WEST SERVICING,
LLC AS TRUSTEE; GREEN TREE
SERVICING, LLC, a foreign limited
liability company; HARLAN LEE, an
individual; HOME123 CORPORATION, a
foreign corporation; HOMEWARD
RESIDENTIAL, INC., f/k/a AMERICAN
HOME MORTGAGE SERVICING, INC.,
a Delaware corporation; HOWARD M.
HAUTALA, an individual; HSBC BANK,
USA, N.A.; HSBC MORTGAGE
SERVICES; INDIGO HOMEOWNERS
ASSOCIATION; IRIS WU, an individual;
JAMI BRINKERHOFF, an individual,
JANEEN M. FLORO, an individual; JOHN
D. GREGG, an individual; JOHN P. COLE,
an individual; JOHN S. CLAPP, an
individual; JOSEFINA CACCIOLA, an
individual; JOSEPH BIERNACKI, an
individual; JOSHUA GUST, an individual,
JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION; JPMORGAN CHASE

NA; JULIA SHANDELL HAMPTON, an individual; KAREN L. CELONE f/k/a KAREN L. CLARK, an individual; KAREN L. MORTIMER, an individual; KAREN M. GROMEK, an individual; KIMBERLY K. TAYLOR, an individual; KINETICO QUALITY WATER SYSTEMS; KIRANDEEP MANGAT; KRISTIN JORDAL, AS TRUSTEE FOR THE JBWNO REVOCABLE LIVING TRUST, a trust; LAKE VALLEY ESTATES ASSOCIATION; LAMAR WEBSTER TRUSTEE, an individual on behalf of SEVEN FALLS FAMILY TRUST; LAS VEGAS DEVELOPMENT GROUP, LLC, a Nevada limited-liability company; LAS VEGAS VALLEY WATER DISTRICT, a domestic governmental entity; LAUNA L. LOCASCIO, an individual; LAURA B. FITZPATRICK, IN HER CAPACITY AS CLARK COUNTY TREASURER; LAURA DOUTIS, an individual; LAWRENCE LEE, an individual; LITTON LOAN SERVICING, LP, a Delaware limited partnership, for GSAA HOME EQUITY TRUST 2006-20, a foreign limited partnership; LN MANAGEMENT LLC SERIES 3377 MILENKO; LN MANAGEMENT LLC SERIES 8729 AUTUMN VALLEY; LOG CABIN MANOR HOMEOWNERS ASSOCIATION, INC.; LONG BEACH MORTGAGE COMPANY, a foreign corporation; LVDG Series 113 established under LVDG LLC A Nevada series limited liability company; MAGNOLIA GOTERA, an individual; MANUEL HELLER, an individual; MARC LEEDS, an individual; MARGARETE THEDE, an individual; MARIA E. CALDWELL, an individual; MARIA ELENITA RACOMA, an individual; MARIA PATROCINO M. EVANS AKA PAT M. EVANS, an individual; MARIA REDOUTEY, an individual; MARIYA ILEVA, an individual; MARK COLLINGBOURNE, an individual; MARY SERRA, an individual; MAUNLAD, LLC, a Nevada

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

limited liability company; MAXWELL
STEINBERG, tenant in common with
VALTUS REAL ESTATE, LLC; VALTUS
REAL ESTATE, LLC, tenant in common
with MAXWELL STEINBERG; MELISSA
JOY CRISTOMO, an individual;
MICHAEL BARNETT, an individual;
MICHAEL D. GAYLES, an individual;
MICHAEL H. SHEALY, an individual;
MICHAEL T. ELLIOTT, TRUSTEE,
MICHAEL T. ELLIOTT SEPARATE
PROPERTY TRUST, an individual as
trustee; MICHAEL T. ELLIOTT
SEPARATE PROPERTY TRUST; MIRA
VISTA COMMUNITY HOMEOWNERS
ASSOCIATION; MOONDANCE /
SUNCHASE COMMUNITY
ASSOCIATION; MYONG LEEDS, an
individual; NATIONAL TITLE CO.;
NATIONSTAR MORTGAGE, INC.;
NATIONSTAR MORTGAGE, LLC, a
foreign limited liability company;
NAYCEE TOWNSEND, an individual;
NEIL DYSOM; NEVADA
SANDCASTLES, LLC, a Nevada
limited liability company; NEWPORT
COVE CONDOMINIUM UNIT-OWNERS
ASSOCIATION, INC., a Nevada non-profit
corporation; NIKOLETA UZUNOVA, an
individual; NOESIS PROPERTY
ACQUISITIONS, LLC, a Nevada limited
liability company; NOOR HUSSAIN, an
individual; SALMA DEAN HUSSAIN, an
individual; NV WEST SERVICING, LLC,
as Trustee of FARMHOUSE TRUST
#5774; FARMHOUSE TRUST #5774;
OCWEN LOAN SERVICING, LLC;
PALMILLA HOMEOWNERS
ASSOCIATION; PAMELA C. McCOY, an
individual; PARK 1 AT
SUMMERLINGFATE FKA
QUEENSRIDGE PARK CONDOS, a
Nevada non-profit corporation; PATRICIA
SHERIDAN, an individual; PAUL E.
CHASE, an individual; PAULETTE N.
CHASE, an individual; PECOS ESTATES
HOMEOWNERS ASSOCIATION, a
Nevada non-profit association; PERCIVAL
G. LAMMIE, an individual; PNC

FINANCIAL SERVICES GROUP, INC., a
foreign corporation; QUALITY LOAN
SERVICE CORPORATION, a California
corporation; RANCHO LAS BRISAS
MASTER HOMEOWNERS
ASSOCIATION; RECONTRUST
COMPANY, N.A.; REO INVESTMENT
ADVISORS V LLC; REPUBLIC
SERVICES, a Nevada Corporation;
REPUBLIC SILVER STATE DISPOSAL,
INC., dba REPUBLIC SERVICES, a
Nevada corporation; RHEANNE
GUEVARRA, an individual; RICHARD
SALOMON, an individual; RICHARD
SZUKALA, an individual; ROBERT
BRINKERHOFF, an individual; ROBERT
G. LECKIE, an individual; ROBERT J.
SHEALY, an individual; RODNEY
HOLDINGS, LLC; RONALD K.
LEAVITT and SUSAN W. LEAVITT,
Trustees of LEAVITT FAMILY TRUST, a
trust; LEAVITT FAMILY TRUST;
RONALD K. LEAVITT, an individual;
ROYAL HIGHLANDS STREET AND
LANDSCAPE MAINTENANCE
CORPORATION, a Nevada non-profit
corporation; RUPERTS COURT TRUST;
SABLES, LLC; SATICOY BAY LLC
SERIES
10250 SUN DUSK LANE; SATICOY
BAY LLC SERIES 10777 VESTONE ST;
SATICOY BAY LLC, SERIES 9387
STOCK STREET; SELECT PORTFOLIO
SERVICING INC., AS SERVICING
AGENT FOR HSBC BANK USA,
NATIONAL ASSOCIATION, AS
TRUSTEE FOR HOLDERS LUMINENT
MORTGAGE TRUST 2006-2 TRUST
FUND; SERVICELINK; SETONA
HOMEOWNERS ASSOCIATION, a
Nevada non-profit cooperative corporation;
SEVEN FALLS FAMILY TRUST; SFR
INVESTMENTS POOL 1, LLC, a Nevada
limited liability company; SFR
INVESTMENTS POOL 11, LLC, a Nevada
limited liability company; SIMON HUME,
an individual; SOUTHERN HIGHLANDS
COMMuNITY ASSOCIATION, a Nevada
non-profit cooperative corporation without

stock; SPRINGLEAF FINANCIAL
SERVICES, INC. FKA AMERICAN
GENERAL FINANCIAL SERVICES,
INC., a foreign corporation; STACEY
MOORE, an individual; STAR GOLDEN
ENTERPRISES, LLC; STEPHANIE
ROXBURY, an individual; STEWARD
FINANCIAL, INC.; SUMMERLIN
NORTH COMMUNITY ASSOCIATION;
SUMMIT CANYON RESOURCES, LLC;
SUNSET MESA COMMUNITY
ASSOCIATION; SUSAN
COLLINGBOURNE, an individual;
SUSAN W. LEAVITT, an individual;
TAMARA B. RYS, an individual; TARA J.
BIERNACKI, an individual; TARJE
GRIMSTAD, an individual; TEGE
PROPERTIES, LLC; TERRENCE
KRAEMER; THE BANK OF NEW YORK
MELLON fka THE BANK OF NEW
YORK, AS SUCCESSOR TRUSTEE TO
JPMORGAN CHASE BANK, N.A., AS
TRUSTEE FOR HOLDERS OF SAMI II
TRUST 2006-ARI, a foreign corporation;
THE BANK OF NEW YORK MELLON
FKA THE BANK OF NEW YORK, AS
TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWHEQ,
INC., HOME EQUITY LOAN ASSET
BACKED CERTIFICATES, SERIES
2006-S8, a foreign corporation; THE
BANK OF NEW YORK MELLON FKA
THE BANK OF NEW YORK, AS
TRUSTEE FOR THE
CERTIFICATEHOLDERS OF THE
CWABS, INC., ASSET-BACKED
CERTIFICATES, SERIES 2006-23; THE
BANK OF NEW YORK MELLON
TRUST COMPANY, NATIONAL
ASSOCIATION FKA THE BANK OF
NEW YORK TRUST COMPANY, N.A.
AS SUCCESSOR TO JPMORGAN
CHASE BANK N.A. AS TRUSTEE FOR
RAMP 2003RS2; THE BANK OF NEW
YORK MELLON, FKA THE BANK OF
NEW YORK AS SUCCESSOR IN
INTEREST TO JP MORGAN CHASE
BANK NA AS TRUSTEE FOR
STRUCTURED ASSET MORTGAGE

INVESTMENTS II INC. BEAR STEARNS
ALT-A TRUST 2005-9, MORTGAGE
PASS-THROUGH CERTIFICATES,
SERIES 2005-9; THE KIM LAW FIRM;
TICOR TITLE OF NEVADA, INC.;
TOMASITO P. GUEVARRA, an
individual; TOWN CENTER ESTATES
COMMUNITY ASSOCIATION;
TRILOGY INVESTMENT
ENTERPRISES, LLC, a foreign limited
liability company; TRP FUND IV LLC, a
Nevada limited liability company; U.S.
BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR SROF-2013-S3 REMIC
TRUST I, a national banking association;
U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR THE BENEFIT OF
HARBORBIEW 2005-3 TRUST FUND;
U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR THE BENEFIT OF
HARBORVIEW 2005-16 TRUST FUND;
U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE, SUCCESSOR IN
INTEREST TO BANK OF AMERICA,
NATIONAL ASSOCIATION, AS
SUCCESSOR BY MERGER TO
LASALLE BANK, NATIONAL
ASSOCIATION AS TRUSTEE FOR
WMALT 2006-AR6, a national banking
association; U.S. BANK, N.A., a national
banking association; U.S. BANK, N.A., AS
TRUSTEE, SUCCESSOR-IN-INTEREST
TO BANK OF AMERICA, N.A. AS
TRUSTEE AS SBM TO LASALLE
BANK, N.A., AS TRUSTEE FOR
WMALT 2005-10, a national banking
association; U.S. BANK, NATIONAL
ASSOCIATION, a national banking
association; U.S. BANK, NATIONAL
ASSOCIATION, AS SUCCESSOR
TRUSTEE TO BANK OF AMERICA,
N.A., AS SUCCESSOR BY MERGER TO
LASALLE BANK, N.A., AS TRUSTEE
FOR FIRST FRANKLIN MORTGAGE
LOAN TRUST, MORTGAGE LOAN
ASSET-BACKED CERTIFICATES,
SERIES 2007-FF, a foreign corporation
U.S. BANK, NATIONAL ASSOCIATION,
AS SUCCESSOR TRUSTEE TO BANK

OF AMERICA, N.A., AS SUCCESSOR
TO LASALLE BANK, N.A., AS
TRUSTEE FOR THE HOLDERS OF THE
MERRILL LYNCH FIRST FRANKLIN
MORTGAGE LOAN TRUST,
MORTGAGE LOAN ASSET-BACKED
CERTIFICATES, SERIES 2007-FF U.S.
BANK, NATIONAL ASSOCIATION, AS
SUCCESSOR TRUSTEE TO LASALLE
BANK, N.A., AS TRUSTEE FOR THE
HOLDERS OF THE MERRILL LYNCH
FIRST FRANKLIN MORTGAGE LOAN
TRUST, MORTGAGE LOAN ASSET-
BACKED CERTIFICATES, SERIES
2007-FF2; U.S. BANK, NATIONAL
ASSOCIATION, AS TRUSTEE FOR THE
BENEFIT OF HARBOR VIEW 2005-3
TRUST FUND, a national banking
association; US BANK NATIONAL
ASSOCIATION EE; VEGAS PROPERTY
SERVICES, INC., a Nevada corporation;
VICTOR MAURICE TOWNSEND, an
individual; VISCAYA HOMEOWNERS
ASSOCIATION; WATERFALL
HOMEOWNERS ASSOCIATION;
WELLS FARGO BANK, N.A., a national
banking association; WELLS FARGO
BANK, N.A., AS INDENTURE TRUSTEE
FOR AMERICAN HOME MORTGAGE
INVESTMENT TRUST 2004-2, a national
banking association; WELLS FARGO
BANK, NATIONAL ASSOCIATION, AS
TRUSTEE FOR MORGAN STANLEY
CAPITAL 1, INC. TRUST 2006-HE1,
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-HE1, a
national banking association; WESTPARK
OWNERS ASSOCIATION, a Nevada non-
profit corporation; WILLIAM D. DICKEY,
an individual; WILLIAM HERBERT
HAMPTON, an individual; WMALT 2006-
AR6 TRUST; ZBIGNIEW OLESKY, an
individual; DOES I through X, inclusive;
and ROE CORPORATIONS I through X,
inclusive,

Defendants.

HOMEWARD RESIDENTIAL, INC. f/k/a AMERICAN HOME MORTGAGE SERVICING, INC. ("Homeward"), by and through its attorneys of record, Christina V. Miller, Esq. and Ramir M. Hernandez, Esq., of the law firm Wright, Finlay & Zak, LLP, hereby file this Renewed Motion to Claim Excess Proceeds for the property Located at **11278 Tuscolana Street, Las Vegas, Nevada,** legally described as: "Lot 412 Bella Terra at Southern Highland Unit 7, as shown by map thereof on file in book 106, page 3 of plats, in the office of the county recorder, Clark County, Nevada APN: 177-32-418-055" (the "Property").

This Motion is based on the pleadings and papers on file with this Court, any facts subject to judicial notice, any argument this Court might consider, and any evidence this Court might entertain.

DATED this 28th day of June, 2019.

*/s/ Ramir M. Hernandez*
Christina V. Miller
Nevada Bar No. 12448
Ramir M. Hernandez, Esq.
Nevada Bar No. 13146
7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117
*Attorneys for Attorneys for the Answering*
*Parties as defined in ECF Nos. 27 and 29*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Pursuant to this Court's Order entered on June 27, 2019, Homeward respectfully requests that this Court enter an order directing the disbursement of all remaining surplus funds resulting from the non-judicial foreclosure sale against the Property, conducted by Alessi & Koenig, LLC ("A&K"), as identified in the Court's order.[1] (the "Excess Proceeds").   As discussed below, Homeward submits that it is the only claimant entitled to receive the Excess Proceeds, pursuant to NRS 116.31164(7) (the "Disbursement Statute").

### II. STATEMENT OF FACTS

#### A.  Homeward's Interest in the Property.

1.      On April 28, 2006, a Deed of Trust was recorded against the Property, identifying Victor M. Lemus and Estella M. Guillen as the Borrowers ("Borrowers"), First Guaranty Financial Corporation as the Lender and Trustee, and secured a principal loan in the amount of $375,000.00 ("Deed of Trust").[2]

2.      On September 10, 2008, a Trustee's Deed Upon Sale was recorded against the Property as the result of a foreclosure sale under the Deed of Trust identifying Homeward as the Grantee.[3]

#### B.  The HOA Foreclosure Lien Sale.

3.      Southern Highlands Community Association (the "HOA") is the common interest community that governs the Property.

4.      On January 27, 2011, a Notice of Delinquent Assessment (Lien) was recorded by A&K on behalf of the HOA against the Subject Property.[4]

5.      Pursuant to that Notice of Delinquent Assessment (Lien), a non-judicial foreclosure sale was conducted by A&K on behalf of the HOA on July 11, 2012 (hereinafter the "HOA Sale").

---

[1] ECF No. 481.

[2] A true and correct copy of the Deed of Trust recorded as Book and Instrument Number 20060428-0005627 is attached hereto as **Exhibit A.**

[3] A true and correct copy of the Trustee's Deed Upon Sale recorded as Book and Instrument Number 20080910-0001432 is attached hereto as **Exhibit B.**

6.      On July 18, 2012, a Trustee's Deed Upon Sale was recorded against the Property, stating that 11278 Tuscolana Street Trust ("Buyer") was the grantee at the HOA Sale and paid $152,000.00 for its interest.[5]

7.      On December 3, 2012, a second Trustee's Deed Upon Sale was recorded against the Subject Property, stating that Buyer was the grantee at the HOA Sale and paid $152,000.00 for its interest.[6]  This second Trustee's Deed Upon Sale stated that the "amount of unpaid debt together with costs" totaled $5,352.94.  *Id.*

**C.  The State Court Quiet Title Action.**

8.      On October 1, 2012, Buyer and A&K filed a Complaint against Homeward and Republic Services alleging causes of action for Quiet Title/Declaratory Relief and Interpleader of excess proceeds (the "Quiet Title Complaint").[7]

9.      The Quiet Title Complaint stated that the "total amount of the unpaid debt, together with costs, was $5,352.94", the "total amount due and owing to [Alessi] for its fees and costs for bringing [the interpleader action] is $6,000.00" and the total amount of "excess proceeds is $140,647.06" (the "Excess Proceeds").[8]

10.     On March 6, 2013, a Stipulation and Order was filed wherein it was agreed that the Republic Services lien in the amount of $134.18 would be paid from the Excess Proceeds, pursuant to NRS 444.520 and Nevada law.

11.     The Republic Services lien was paid in full and on July 17, 2014, Republic Services recorded a Release of Lien against the Subject Property.[9]

---

[4] A true and correct copy of the Notice of Delinquent Assessment (Lien) recorded as Book and Instrument Number 20110127-0003282 is attached hereto as **Exhibit C.**

[5] A true and correct copy of the Trustee's Deed Upon Sale recorded as Book and Instrument Number 20120718-0003167 is attached hereto as **Exhibit D.**

[6] A true and correct copy of the second Trustee's Deed Upon Sale recorded as Book and Instrument Number 20121203-0001953 is attached to hereto as **Exhibit E.**

[7] A true and correct copy of the Quiet Title Complaint, filed on October 1, 2012 in the Eighth Judicial District Court, State of Nevada,Case No.: A-12-669326-C, is attached hereto as **Exhibit F.**

[8] *Id.* at ¶¶ 44-46, respectively.

[9] A true and correct copy of the Release of Lien, recorded as Book and Instrument Number 20140717-0001943 is attached hereto as **Exhibit G.**

12.     On April 28, 2014, the Court granted Buyer and A&K's Motion for Summary Judgment and entered a Judgment Granting Quiet Title in favor of Buyer and against Homeward (the "Judgment").[10]

13.     The Judgment did not address the cause of action for Interpleader and the Interpleader cause of action was not adjudicated.

14.     On August 11, 2015, a Civil Order to Statistically Close Case was filed.

15.     A review of the records page from the Clark County Recorder's Office shows that there are no active liens recorded against the Property.[11]

**D.  Homeward's State Court Complaint for Interpleader and Declaratory Relief.**

16.     On October 10, 2016, Homeward filed a Complaint for Interpleader and Declaratory Relief in the Eight Judicial District Court, State of Nevada (Case No. A-16-74480-C) ("State Court Interpleader").

17.     In a series of emails from November 13, 2016 through December 13, 2016, A&K agreed that: 1) Homeward was the sole claimant to the Excess Proceeds; and 2) that A&K would distribute the full amount Excess Proceeds A&K held in escrow for the Property to Homeward.[12]

18.     However, on the same day as the last communication between A&K and Homeward regarding disbursement of the Excess Proceeds, on December 13, 2016, A&K filed for bankruptcy protection (the main bankruptcy case is hereinafter referred to as the "A&K Bankruptcy").[13]

19.     On March 28, 2017, Homeward removed the State Court Interpleader to the Bankruptcy Court in a separate adversary proceeding (the "Removed Action").[14]

20.     On August 24, 2017, the Bankruptcy Court remanded the Removed Action to the State Court.[15]

---

[10] A true and correct copy of the Judgment Granting Quiet Title, filed on April 28, 2014 in Case No.: A-12-669326-C, is attached hereto as **Exhibit H**.

[11] A true and correct copy of the record history webpage from the Clark County Recorder's website accessed on June 19, 2019 is attached hereto as **Exhibit I**.

[12] A true and correct copy of the email chain is attached hereto to as **Exhibit J**.

[13] *See*, ECF No. 1 in the underlying bankruptcy matter.

[14] *See*, ECF No. 1 in A&K Bankruptcy.

E. **The Bankruptcy Court Interpleader Action.**

21.    On July 6, 2017, the Trustee in the A&K Bankruptcy filed a Complaint for Interpleader to divest itself of all excess proceeds existing as of December 13, 2016, which A&K had turned over to the Trustee, from each HOA lien sale the A&K conducted and which it held in trust as of December 13, 2016 (hereinafter "A&K Bankruptcy Interpleader").

22.    In its Complaint for Interpleader, the Trustee produced an accounting of the funds remaining for the properties identified therein.[16]

23.    For the Subject Property, the segregated accounting the Trustee produced lists $138,701.86 remaining in Excess Proceeds as of December 13, 2016.

24.    On September 28, 2018, Homeward filed a Proof of Claim as to the Excess Proceeds in the amount of $146,647.06.[17]

25.    On June 27, 2019, this Court entered an Order stating that the amount remaining for this Property is $135,486.50, after taking into account disbursement of amounts due to the Bankruptcy Trustee and the Court on a pro-rata, per property basis.

## III. APPLICABLE LAW

NRS 116.3116 sets forth the scheme for HOA lien sales.  The Distrbution Statute sets forth that proceeds from a HOA lien sale shall be applied for the following purpose in the following order:

(1)  The reasonable expenses of sale;
(2)  The reasonable expenses of securing possession before sale, holding, maintaining, and preparing the unit for sale, including payment of taxes and other governmental charges, premiums on hazard and liability insurance, and, to the extent provided for by the declaration, reasonable attorney's fees and other legal expenses incurred by the association;
(3)  Satisfaction of the association's lien;
(4)  Satisfaction in the order of priority of any subordinate claim of record; and
(5)  Remittance of any excess to the unit's owner.[18]

///

---

[15] Homeward had opposed remand because the title issues had been resolved, and the only issue left was the dispersal of the funds A&K held in escrow.
[16] *See*, ECF No. 3 at 18-22.
[17] *See* Proof of Claim 28.
[18] NRS 116.31164(7).

**IV. ARGUMENT**

**A. HOMEWARD IS ENTITLED TO CLAIM ALL EXCESS PROCEEDS IDENTIFIED BY THE BANKRUPTCY TRUSTEE FOR THE SUBJECT PROPERTY.**

Based on the distribution formula set forth in NRS 116.31164(7), Homeward is entitled to the full amount of the Excess Proceeds for the Property.

Subsections (1) through (3) of the Distribution Statute have been satisfied. The Complaint in Interpleader acknowledges that the HOA was paid its lien in full, as well as A&K's fees and costs related to the HOA Sale, and those funds have already been removed from the proceeds resulting from the HOA Sale.[19] No amounts for any other expenses were identified or claimed by the Bankruptcy Trustee as receivables due to A&K, i.e. property of the debtor's estate, in the Complaint in Interpleader.

Therefore, this Court must determine distribution of the Excess Proceeds pursuant to subsections (4) and (5) of the Distribution Statute only. As identified above, there are no other lienholders on the Property at this time. The only subordinate claim of interest existing at the time of the HOA Sale was the Deed of Trust. Accordingly, the Excess Proceeds must be paid to the Deed of Trust holder, Homeward, as the next claimant in line pursuant to the Distribution Statute. The Excess Proceeds are also due Homeward as the only interested party to have filed a Proof of Claim related to the Excess Proceeds and the Property.[20] As no other interested party named and served in this action has filed a Proof of Claim to the Excess Proceeds, there are no other claimants permitted to receive the Excess Proceeds, pursuant to the Distribution Statute and this Court's procedural orders during the pendency of the A&K Bankruptcy Interpleader. Accordingly, Homeward submits that this Court need not consider any further distribution of the Excess Proceeds under subsections (4) and (5) of the Distribution Statute.

///

///

///

---

[19] *See* ECF No. 1 at Exhibit "1".
[20] *See* fn. 17, *supra.*

# V. <u>CONCLUSION</u>

Homeward respectfully requests that this Court distribute the Excess Proceeds in the amount of $135,486.50 to Homeward.

DATED this 28th day of June, 2019.

WRIGHT, FINLAY & ZAK, LLP

*/s/ Ramir M. Hernandez*
Christina V. Miller, Esq.
Nevada Bar No. 12448
Ramir M. Hernandez, Esq.
Nevada Bar No. 13146
7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117
*Attorneys for Attorneys for the Answering Parties as defined in ECF Nos. 27 and 29*

# CERTIFICATE OF SERVICE

1.     On June 28, 2019, I served the following document(s):

## RENEWED MOTION TO CLAIM EXCESS PROCEEDS FOR THE PROPERTY LOCATED AT 11278 TUSCOLANA STREET

2.     I served the above-named document(s) by the following means to the persons as listed below:

(Check all that apply)

■ a.    ECF System (You must attach the "Notice of Electronic Filing", or list all persons and address and attach additional paper if necessary)

JOHN P. ALDRICH on behalf of Defendant CHAMPERY REAL ESTATE 2015, LLC
jaldrich@johnaldrichlawfirm.com, eleanor@johnaldrichlawfirm.com

CYNTHIA L ALEXANDER on behalf of Defendant FLAGSTAR BANK, FSB
calexander@dickinsonwright.com,
LV_LitDocket@dickinsonwright.com;mmangiaracina@dickinson-wright.com;jjsmith@dickinson-wright.com

JEFFREY S. ALLISON on behalf of Interested Party DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR MORGAN STANLEY MORTGAGE TRUST
jallison@houser-law.com, jblanco@houser-law.com

ANDREW A. BAO on behalf of Defendant DITECH SERVICING, LLC
aabao@wolfewyman.com,
jcsoquena@wolfewyman.com;idmendez@wolfewyman.com

ANDREW A. BAO on behalf of Defendant PNC FINANCIAL SERVICES GROUP, INC.
aabao@wolfewyman.com,
jcsoquena@wolfewyman.com;idmendez@wolfewyman.com

ANDREW A. BAO on behalf of Interested Party DITECH FINANCIAL, LLC FKA GREEN TREE SERVICING, LLC
aabao@wolfewyman.com,
jcsoquena@wolfewyman.com;idmendez@wolfewyman.com

MICHAEL F BOHN on behalf of Creditor ALDERLEY COURT TRUST
mbohn@bohnlawfirm.com, office@bohnlawfirm.com

MICHAEL F BOHN on behalf of Creditor PIONEER BLVD TRUST
mbohn@bohnlawfirm.com, office@bohnlawfirm.com

MICHAEL F BOHN on behalf of Creditor RESOURCES GROUP, LLC AS TRUSTEE FOR THE REBER DR TRUST
mbohn@bohnlawfirm.com, office@bohnlawfirm.com

MICHAEL F BOHN on behalf of Creditor RESOURCES GROUP, LLC AS TRUSTEE OF THE 5497 RIVERWOOD CT TRUST
mbohn@bohnlawfirm.com, office@bohnlawfirm.com

MICHAEL F BOHN on behalf of Creditor SATICOY BAY LLC SERIES 1915 WINTER HILL ST
mbohn@bohnlawfirm.com, office@bohnlawfirm.com

MICHAEL F BOHN on behalf of Creditor SATICOY BAY LLC SERIES 300 CROSSWIND
mbohn@bohnlawfirm.com, office@bohnlawfirm.com

MICHAEL F BOHN on behalf of Creditor STAICOY BAY SERIES 6808 CORAL ROCK
mbohn@bohnlawfirm.com, office@bohnlawfirm.com

MICHAEL F BOHN on behalf of Defendant NV WEST SERVICING, LLC,
mbohn@bohnlawfirm.com, office@bohnlawfirm.com

MICHAEL F BOHN on behalf of Defendant RUPERTS COURT TRUST
mbohn@bohnlawfirm.com, office@bohnlawfirm.com

MICHAEL F BOHN on behalf of Defendant SATICOY BAY LLC SERIES 10250 SUN DUSK LANE
mbohn@bohnlawfirm.com, office@bohnlawfirm.com

MICHAEL F BOHN on behalf of Defendant SATICOY BAY LLC SERIES 10777 VESTONE ST
mbohn@bohnlawfirm.com, office@bohnlawfirm.com

MICHAEL R. BROOKS on behalf of Defendant BANK OF NEW YORK MELLON FORMERLY KNOWN AS BANK OF NEW YORK
mbrooks@klnevada.com,
bankruptcy@klnevada.com;ckishi@klnevada.com;ckishi@ecf.courtdrive.com

MICHAEL R. BROOKS on behalf of Defendant FEDERAL NATIONAL MORTGAGE ASSOCIATION
mbrooks@klnevada.com,
bankruptcy@klnevada.com;ckishi@klnevada.com;ckishi@ecf.courtdrive.com

PHILIP R. BYRNES on behalf of Defendant CITY OF LAS VEGAS
PBYRNES@LASVEGASNEVADA.GOV,
ccorwin@lasvegasnevada.gov;CKELLY@LASVEGASNEVADA.GOV;KHANSEN@LASVEGASNEVADA.GOV;JANDREWS@LASVEGASNEVADA.GOV

TARA CLARK NEWBERRY on behalf of Defendant COLLEGIUM FUND LLC SERIES 30
tnewberry@cnlawlv.com,
nkhoury@cnlawlv.com;myecfcnlaw@gmail.com;kseckinger@cnlawlv.com;clarktr75010@notify.bestcase.com

ROGER P. CROTEAU on behalf of Defendant LAS VEGAS DEVELOPMENT GROUP, LLC
croteaulaw@croteaulaw.com, p.rr69688@notify.bestcase.com

ROGER P. CROTEAU on behalf of Defendant LVDG SERIES 113
ESTABLISHED UNDER LVDG LLC
croteaulaw@croteaulaw.com, p.rr69688@notify.bestcase.com

MICHAEL A DIGIACOMO on behalf of Defendant DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS TRUSTEE, IN TRUST FOR
REGISTERED HOLDERS OF LONG BEACH MORTGAGE LOAN TRUST
2006-1, ASSET-BACKED CERTIFICATES, SERIES 2006-1
digiacomom@ballardspahr.com,
saltlakedocketclerk@ballardspahr.com;paredesr@ballardspahr.com;hartt@ballard
spahr.com

MICHAEL A DIGIACOMO on behalf of Defendant U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF
AMERICA, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO
LASALLE BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR WMALT
2006-AR6
digiacomom@ballardspahr.com,
saltlakedocketclerk@ballardspahr.com;paredesr@ballardspahr.com;hartt@ballard
spahr.com

MICHAEL A DIGIACOMO on behalf of Defendant U.S. BANK, N.A., AS
TRUSTEE, SUCCESSOR-IN-INTEREST TO BANK OF AMERICA, N.A. AS
TRUSTEE AS SBM TO LASALLE BANK, N.A., AS TRUSTEE FOR WMALT
2005-10
digiacomom@ballardspahr.com,
saltlakedocketclerk@ballardspahr.com;paredesr@ballardspahr.com;hartt@ballard
spahr.com

MICHAEL A DIGIACOMO on behalf of Defendant U.S. BANK, NATIONAL
ASSOCIATION, AS SUCCESSOR TRUSTEE TO BANK OF AMERICA, N.A.,
AS SUCCESSOR BY MERGER TO LASALLE BANK, N.A., AS TRUSTEE
FOR FIRST FRANKLIN MORTGAGE LOAN TRUST, MORTGAGE LOAN
ASSET-BAC
digiacomom@ballardspahr.com,
saltlakedocketclerk@ballardspahr.com;paredesr@ballardspahr.com;hartt@ballard
spahr.com

CRAIG S. DUNLAP on behalf of Defendant AGCOM II, LLC
cdunlap@cdunlaplaw.com, cdunlap7@gmail.com

CRAIG S. DUNLAP on behalf of Defendant BIERFASS 1, LLC
cdunlap@cdunlaplaw.com, cdunlap7@gmail.com

CRAIG S. DUNLAP on behalf of Defendant TEGE PROPERTIES, LLC
cdunlap@cdunlaplaw.com, cdunlap7@gmail.com

CRAIG S. DUNLAP on behalf of Defendant RICARDO A. BIERFASS
cdunlap@cdunlaplaw.com, cdunlap7@gmail.com

DIANA S. EBRON on behalf of Defendant SFR INVESTMENTS POOL 1, LLC
diana@kgelegal.com,
mike@kgelegal.com;howard@kgelegal.com;jackie@kgelegal.com;staff@kgelegal.com;tomas@kgelegal.com;alex@kgelegal.com;chantel@kgelegal.com;caryn@kgelegal.com;jason@kgelegal.com;athanasios@kgelegal.com

DIANA S. EBRON on behalf of Defendant SFR INVESTMENTS POOL 11, LLC
diana@kgelegal.com,
mike@kgelegal.com;howard@kgelegal.com;jackie@kgelegal.com;staff@kgelegal.com;tomas@kgelegal.com;alex@kgelegal.com;chantel@kgelegal.com;caryn@kgelegal.com;jason@kgelegal.com;athanasios@kgelegal.com

SCOTT D. FLEMING on behalf of Defendant FEDERAL NATIONAL MORTGAGE ASSOCIATION
sfleming@klnevada.com, mbarnes@klnevada.com;bankruptcy@klnevada.com

JOSEPH P. GARIN on behalf of Defendant FALCON RIDGE COMMUNITY ASSOCIATION
snutt@lipsonneilson.com;pjimenez@lipsonneilson.com

REX D. GARNER on behalf of Defendant BANK OF AMERICA, N.A.
rex.garner@akerman.com, AkermanLAS@akerman.com

PHILIP S. GERSON on behalf of Defendant NEVADA SANDCASTLES, LLC
Philip@gersonnvlaw.com

PHILIP S. GERSON on behalf of Defendant TRP FUND IV LLC
Philip@gersonnvlaw.com

PHILIP S. GERSON on behalf of Defendant VEGAS PROPERTY SERVICES, INC.
Philip@gersonnvlaw.com

PHILIP S. GERSON on behalf of Defendant GAHTLIN BANKS
Philip@gersonnvlaw.com

PHILIP S. GERSON on behalf of Defendant MARIYA ILEVA
Philip@gersonnvlaw.com

PHILIP S. GERSON on behalf of Defendant NIKOLETA UZUNOVA
Philip@gersonnvlaw.com

JACQUELINE A GILBERT on behalf of Defendant SFR INVESTMENTS POOL 1, LLC
jackie@kgelegal.com,
mike@kgelegal.com;staff@kgelegal.com;athanasios@kgelegal.com

BLAKELEY E. GRIFFITH on behalf of Defendant BANK OF NEW YORK MELLON FORMERLY KNOWN AS BANK OF NEW YORK
bgriffith@swlaw.com,
docket_las@swlaw.com;gkim@swlaw.com;jmath@swlaw.com;jstevenson@swlaw.com

BLAKELEY E. GRIFFITH on behalf of Defendant WELLS FARGO BANK, N.A.
bgriffith@swlaw.com,
docket_las@swlaw.com;gkim@swlaw.com;jmath@swlaw.com;jstevenson@swlaw.com

BLAKELEY E. GRIFFITH on behalf of Interested Party THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JP MORGAN CHASE BANK N.A. AS TRUSTEE FOR STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. BEAR STEARNS ALT-A TRUST 2005 -
bgriffith@swlaw.com,
docket_las@swlaw.com;gkim@swlaw.com;jmath@swlaw.com;jstevenson@swlaw.com

RAMIR M. HERNANDEZ on behalf of Defendant BANK OF AMERICA, N.A.
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant CITIBANK, N.A., AS TRUSTEE FOR BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-8
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant DEUTSCHE BANK TRUST COMPANY AMERICAS
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant FEDERAL NATIONAL MORTGAGE ASSOCIATION
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant HOMEWARD RESIDENTIAL, INC.
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant LITTON LOAN SERVICING, LP
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant NATIONSTAR MORTGAGE, LLC
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant OCWEN LOAN SERVICING, LLC
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant SPRINGLEAF FINANCIAL
SERVICES, INC.
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant U.S. BANK NATIONAL
ASSOCIATION
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF
AMERICA, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO
LASALLE BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR WMALT
2006-AR6
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant WELLS FARGO BANK,
NATIONAL ASSOCATION
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

NATHAN G. KANUTE on behalf of Defendant WELLS FARGO BANK, N.A.
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party BANK OF AMERICA,
N.A.
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party DEUTSCHE BANK
NATIONAL TRUST COMPANY AS TRUSTEE FOR FIRST FRANKLIN
MORTGAGE LOAN TRUST
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party FEDERAL HOME LOAN
MORTGAGE CORPORATION
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party HSBC BANK USA, N.A.
AS TRUSTEE FOR NOMURA ASSET ACCEPTANCE CORPORATION,
MORTGAGE PASSTHROUGH CERTIFICATES, SERIES 2006-AR3 aka
HSBC BANK USA, NATION AS TRUSTEE FOR NAAC 2006-AR3
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party HSBC BANK USA, NATIONAL ASSOCIAITON, AS TRUSTEE FOR MERRILL LYNCH ALTERNATIVE NOTE ASSET TRUST, SERIES 2007-A2
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party HSBC BANK USA, NATIONAL ASSOCIAITON, AS TRUSTEE FOR NOMURA ASSET ACCEPTANCE CORPORATION MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2005-AR5
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR10
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party NATIONSTAR MORTGAGE LLC DBA CHAMPION MORTGAGE COMPANY
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JP MORGAN CHASE BANK N.A. AS TRUSTEE FOR STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. BEAR STEARNS ALT-A TRUST 2005 -
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR ADJUSTABLE RATE MORTGAGE TRUST 2007-1, ADJUSTABLE RATE MORTGAGE-BACKED PASS THROUGH CERTIFICATES, SERIES 2007-1
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., CSFB MORTGAGE PASS-THRU CERTIFICATES, SERIES 2005-5
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party U.S. BANK, N.A., AS TRUSTEE FOR THE HOLDERS OF THE BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2006-AC1, ASSET BACKED CERTIFICATES, SERIES 2006-AC1
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 207-GEL 1
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., CSMC MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-7
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2006-5, ASSET-BACKED CERTIFICATES SERIES 2006-5
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party WELLS FARGO FINANCIAL NEVADA 2, INC.
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2015
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

HOWARD C. KIM on behalf of Defendant SFR INVESTMENTS POOL 1, LLC
howard@kgelegal.com,
jackie@kgelegal.com;mike@kgelegal.com;tomas@kgelegal.com;staff@kgelegal.com;diana@kgelegal.com;alex@kgelegal.com;chantel@kgelegal.com;caryn@kgelegal.com;jason@kgelegal.com;athanasios@kgelegal.com

1

2  HOWARD C. KIM on behalf of Defendant SFR INVESTMENTS POOL 11, LLC

3  howard@kgelegal.com,
jackie@kgelegal.com;mike@kgelegal.com;tomas@kgelegal.com;staff@kgelegal.

4  com;diana@kgelegal.com;alex@kgelegal.com;chantel@kgelegal.com;caryn@kge
legal.com;jason@kgelegal.com;athanasios@kgelegal.com

5

6  ROBERT S. LARSEN on behalf of Defendant CAPAROLA AT SOUTHERN HIGHLANDS HOMEOWNERS ASSOCIATION
rlarsen@gordonrees.com,

7  gangulo@gordonrees.com;wwong@gordonrees.com;kcaswell@grsm.com

8  NILE LEATHAM on behalf of Creditor LEVI J JONES
nleatham@klnevada.com,

9  ckishi@klnevada.com;bankruptcy@klnevada.com;nleatham@ecf.courtdrive.com

10  CASEY J NELSON on behalf of Defendant SUMMIT CANYON RESOURCES, LLC

11  caseynelson@wedgewood-inc.com, ntrautman@wedgewood-inc.com

12  DANA JONATHON NITZ on behalf of Defendant BANK OF AMERICA, N.A.
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

13

14  DANA JONATHON NITZ on behalf of Defendant BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP

15  dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

16  DANA JONATHON NITZ on behalf of Defendant CITIBANK, N.A., AS TRUSTEE FOR BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-

17  THROUGH CERTIFICATES, SERIES 2006-8
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

18

19  DANA JONATHON NITZ on behalf of Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY

20  dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

21  DANA JONATHON NITZ on behalf of Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST

22  MORTGAGE SECURITIES, INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2002-C

23  dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

24  DANA JONATHON NITZ on behalf of Defendant DEUTSCHE BANK TRUST COMPANY AMERICAS

25  dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

26  DANA JONATHON NITZ on behalf of Defendant FEDERAL NATIONAL MORTGAGE ASSOCIATION

27  dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

28  DANA JONATHON NITZ on behalf of Defendant HOMEWARD RESIDENTIAL, INC.
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant LITTON LOAN SERVICING, LP
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant NATIONSTAR MORTGAGE, LLC
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant OCWEN LOAN SERVICING, LLC
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant SPRINGLEAF FINANCIAL SERVICES, INC.
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant U.S. BANK NATIONAL ASSOCIATION
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF HARBORVIEW 2005-16 TRUST FUND
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO LASALLE BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR WMALT 2006-AR6
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant U.S. BANK, N.A.
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant U.S. BANK, N.A., AS TRUSTEE, SUCCESSOR-IN-INTEREST TO BANK OF AMERICA, N.A. AS TRUSTEE AS SBM TO LASALLE BANK, N.A., AS TRUSTEE FOR WMALT 2005-10
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant U.S. BANK, NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO BANK OF AMERICA, N.A., AS SUCCESSOR TO LASALLE BANK, N.A., AS TRUSTEE FOR THE HOLDERS OF THE MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST,
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant WELLS FARGO BANK, NATIONAL ASSOCATION
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY CAPITAL 1, INC. TRUST 2006-HE1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HE1
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

MATT SCHRIEVER on behalf of Defendant CHAMPERY REAL ESTATE 2015, LLC
mschriever@hutchlegal.com, bbenitez@hutchlegal.com

MATT SCHRIEVER on behalf of Defendant SUMMIT CANYON RESOURCES, LLC
mschriever@hutchlegal.com, bbenitez@hutchlegal.com

JOHN T. STEFFEN on behalf of Defendant SUMMIT CANYON RESOURCES, LLC
jsteffen@hutchlegal.com

ARIEL E. STERN on behalf of Defendant BANK OF AMERICA, N.A.
ariel.stern@akerman.com,
Darren.brenner@akerman.com;akermanlas@akerman.com

RYAN D. STIBOR on behalf of Creditor THE BANK OF NEW YORK MELLON TRUST COMPANY, NA, TRUSTEE FOR RAMP MABPTC
rstibor@zbslaw.com, nvbankruptcy@zbslaw.com

RYAN D. STIBOR on behalf of Defendant THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE FOR RAMP 2003RS2
rstibor@zbslaw.com, nvbankruptcy@zbslaw.com

ACE C VAN PATTEN on behalf of Defendant BANK OF AMERICA, N.A.
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant CITIBANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF STRUCTURED ASSET MORTGAGE INVESTMENTS II INC., BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-8
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant DEUTSCHE BANK TRUST COMPANY AMERICAS
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant FEDERAL NATIONAL
MORTGAGE ASSOCIATION
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant HOMEWARD RESIDENTIAL,
INC.
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant LITTON LOAN SERVICING,
LP
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant NATIONSTAR MORTGAGE,
LLC
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant OCWEN LOAN SERVICING,
LLC
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant SPRINGLEAF FINANCIAL
SERVICES, INC.
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant U.S. BANK NATIONAL
ASSOCIATION
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF
AMERICA, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO
LASALLE BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR WMALT
2006-AR6
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant WELLS FARGO BANK,
NATIONAL ASSOCATION
avp@tblaw.com, nvbk@tblaw.com

ABRAN E. VIGIL on behalf of Defendant JPMORGAN CHASE BANK,
NATIONAL ASSOCIATION
vigila@ballardspahr.com, lvdocket@ballardspahr.com

ABRAN E. VIGIL on behalf of Defendant JPMORGAN CHASE NA
vigila@ballardspahr.com, lvdocket@ballardspahr.com

SHADD A. WADE on behalf of Defendant THE BANK OF NEW YORK
MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK
OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN
CHASE BANK N.A. AS TRUSTEE FOR RAMP 2003RS2
swade@zbslaw.com,
shunsaker@zbslaw.com,twilson@zbslaw.com,nvbankruptcy@zbslaw.com

NATALIE L. WINSLOW on behalf of Defendant BANK OF AMERICA, N.A.
natalie.winslow@akerman.com,
ariel.stern@akerman.com;darren.brenner@akerman.com;akermanlas@akerman.com;erin.abugow@akerman.com

NATALIE L. WINSLOW on behalf of Defendant NATIONSTAR MORTGAGE, LLC
natalie.winslow@akerman.com,
ariel.stern@akerman.com;darren.brenner@akerman.com;akermanlas@akerman.com;erin.abugow@akerman.com

NATALIE L. WINSLOW on behalf of Defendant U.S. BANK NATIONAL ASSOCIATION
natalie.winslow@akerman.com,
ariel.stern@akerman.com;darren.brenner@akerman.com;akermanlas@akerman.com;erin.abugow@akerman.com

NATALIE L. WINSLOW on behalf of Defendant U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF HARBORBIEW 2005-3 TRUST FUND
natalie.winslow@akerman.com,
ariel.stern@akerman.com;darren.brenner@akerman.com;akermanlas@akerman.com;erin.abugow@akerman.com

NATALIE L. WINSLOW on behalf of Interested Party U.S. BANK N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF HARBORVIEW MORTGAGE LOAN TRUST
natalie.winslow@akerman.com,
ariel.stern@akerman.com;darren.brenner@akerman.com;akermanlas@akerman.com;erin.abugow@akerman.com

SHANNON C WITTENBERGER on behalf of Defendant CLARK COUNTY TREASURER
Christine.wirt@clarkcountyda.com

DONNA M. WITTIG on behalf of Defendant NATIONSTAR MORTGAGE, INC.
donna.wittig@akerman.com,
akermanlas@akerman.com;ariel.stern@akerman.com;darren.brenner@akerman.com;erin.abugow@akerman.com;tracey.wayne@akerman.com

MICHAEL B WIXOM on behalf of Defendant 2010-1 CRE VENTURE, LLC
mbw@slwlaw.com, mwarner@slwlaw.com

ANTHONY A. ZMAILA on behalf of Defendant DONNA M. HAWKINS
bkecf.aaznevada@gmail.com, tony@aaznevada.com;pat@aaznevada.com

■ b.    United States mail, postage fully pre-paid (List persons and addresses. Attach additional paper if necessary)

HOLLY E. CHEONG
ANDREW M. JACOBS
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NV 89169

LAURA B. FITZPATRICK IN HER CAPACITY AS CLARK COUNTY TREASURER
500 S GRAND CENTRAL PKWY
LAS VEGAS, NV 89106

RYAN E. ALEXANDER, ESQ.
3017 W CHARLESTON BLVD, SUITE 58
LAS VEGAS, NV 89102

RYAN J. WORKS, ESQ.
MCDONALD CARANO
2300 W. SAHARA AVE., STE. 1200
LAS VEGAS, NV 89102

JEROME ADELMAN
78181 BOVEE CIRCLE
PALM DESERT, CA 92211

GEAN LOO
8237 CASSIS COURT
LAS VEGAS, NV 89117

□ c.    Personal Service (List persons and addresses. Attach additional paper if necessary)

I personally delivered the document(s) to the persons at these addresses:

_____

□    For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

□    For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐ d.    By direct email (as opposed to through the ECF System) (List persons and email addresses.  Attach additional paper if necessary)

Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ e.    By fax transmission (List persons and fax numbers.  Attach additional paper if necessary)

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below.  No error was reported by the fax machine that I used.   A copy of the record of the fax transmission is attached.

☐ f.    By messenger (List persons and addresses.  Attached additional paper if necessary)

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.     (A declaration by the messenger must be attached to the Certificate of Service).

I declare under penalty of perjury that the foregoing is true and correct.

Signed on this 28th day of June, 2019.

_/s/ Jason Craig_____
An employee of Wright, Finlay & Zak, LLP

## Exhibit A

## Exhibit A

## Exhibit A



**20060428-0005627**

Fee: $38.00
N/C Fee: $25.00

04/28/2006          14:41:02
T20060076206

**Requestor:**
  FINANCIAL TITLE COMPANY

**Frances Deane**                LEX
**Clark County Recorder**    Pgs: 25

Assessor's Parcel Number: 177-32-418-055

~~Recording Requested By:~~
FIRST GUARANTY FINANCIAL CORPORATION

And When Recorded Return To:
FIRST GUARANTY FINANCIAL CORPORATION
3 HUTTON CENTRE DRIVE SUITE 150
SANTA ANA, CALIFORNIA 92707
Loan Number: ███████
Mail Tax Statements To:
FIRST GUARANTY FINANCIAL CORPORATION, 2437 OAK STREET,
BAKERSFIELD, CALIFORNIA 93301

———————— [Space Above This Line For Recording Data] ————————

# DEED OF TRUST

MIN: ███████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)   "Security Instrument"** means this document, which is dated  APRIL 20, 2006          , together with all Riders to this document.
**(B)   "Borrower"** is  VICTOR M. LEMUS AND ESTELLA M. GUILLEN, HUSBAND AND WIFE AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.
**(C)   "Lender"** is  FIRST GUARANTY FINANCIAL CORPORATION

Lender is a  CALIFORNIA CORPORATION                                        organized and existing under the laws of  CALIFORNIA
Lender's address is  3 HUTTON CENTRE DRIVE, SSANTA ANA, CALIFORNIA 92707

**(D)   "Trustee"** is  FIRST GUARANTY FINANCIAL CORPORATION, A CALIFORNIA CORPORATION

**(E)   "MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)   "Note"** means the promissory note signed by Borrower and dated  APRIL 20, 2006          .

---

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                              Page 1 of 15

DocMagic *eFormas* 800-649-1362
www.docmagic.com

The Note states that Borrower owes Lender   THREE HUNDRED SEVENTY-FIVE THOUSAND AND 00/100                       Dollars (U.S. $ 375,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MAY 1, 2046 .

**(G)  "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)  "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)  "Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

**(J)  "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)  "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)  "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)  "Escrow Items"** means those items that are described in Section 3.

**(N)  "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)  "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)  "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)  "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)  "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

---

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY        of        CLARK        :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]
LOT 412 OF BELLA TERRA AT SOUTHERN HIGHLANDS UNIT 7, AS SHOWM
BY MAP THEREOF ON FILE IN BOOK 106, PAGE 3 OF PLATS, IN THE
OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA.
A.P.N.: 177-32-418-055

which currently has the address of        11278 TUSCOLANA STREET
                                             [Street]

       LAS VEGAS        , Nevada      89141      ("Property Address"):
       [City]                          [Zip Code]

      TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

      BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

      THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

      **UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

      1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01             Page 3 of 15             DocMagic *eFarmns* 800-649-1362
                                                           www.docmagic.com

institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                     Page 4 of 15                     DocMagic *eForms* 800-649-1362
www.docmagic.com

Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                                    Page 5 of 15                    DocMagic *eForms* 800-649-1362
www.docmagic.com

Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy**. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as

---

Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums

---

for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                                    Page 8 of 15                         DocMagic *eFormss* 800-649-1362
                                                                                                www.docmagic.com

is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security

---

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                                Page 9 of 15                         *DocMagic eFarms* 800-649-1362
                                                                                   www.docmagic.com

Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                                    Page 10 of 15                                    DocMagic *eFarms* 800-649-1362
                                                                                                  www.docmagic.com

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with

---

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                    Page 11 of 15                    DocMagic *eForms* 800-649-1362
                                                                  www.docmagic.com

the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold, and shall

---

cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ N/A .

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01          Page 13 of 15          DocMagic *eRooms* 800-649-1362
                                               www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
VICTOR M. LEMUS                -Borrower

_____ (Seal)
ESTELLA M. GUILLEN            -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Witness:                          Witness:

_____      _____

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                        Page 14 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

State of Nevada
County of    CLARK

   This instrument was acknowledged before me on    April 24, 2006
by    VICTOR M. LEMUS, ESTELLA M. GUILLEN



_Michelle v._____
                                                    Notary Public

          (Seal)                      My commission expires: 7-11-06

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                           Page 15 of 15

DocMagic ℰℱℴᵣᵐₛ 800-649-1362
www.docmagic.com

Loan Number: ████

# ADJUSTABLE RATE RIDER
### (12-MTA INDEX - PAYMENT AND RATE CAPS)

THIS ADJUSTABLE RATE RIDER is made this    20th  day of    APRIL 2006                ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to  FIRST GUARANTY FINANCIAL
CORPORATION, A CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

11278 TUSCOLANA STREET, LAS VEGAS, NEVADA 89141
[Property Address]

**THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT.  BECAUSE MY INTEREST
RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT,
AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT
INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY
THE INTEREST THAT ACCRUES.  AS A RESULT, THE PRINCIPAL AMOUNT I
MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY
BORROWED, BUT NOT MORE THAN     110.000 % OF THE ORIGINAL
AMOUNT (OR $ 412,500.00     ).  MY INTEREST RATE CAN NEVER
EXCEED THE LIMIT STATED IN THE NOTE AND RIDER.   A BALLOON
PAYMENT MAY BE DUE AT MATURITY.**

**ADDITIONAL COVENANTS.**  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

Interest will be charged on unpaid Principal until the full amount has been paid.  I will pay interest
at a yearly rate of    1.000  % until MAY 1, 2006       , and the initial monthly
payment provided for in the Note will be based on this rate.  Commencing  JUNE 1            ,
2006       , I will pay interest at a yearly rate of    1.000  %.  Thereafter, the interest rate
I will pay may change in accordance with Section 4 of the Note.

Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates

The interest rate I will pay may further change on the  1st  day of  JUNE             ,
2006       , and on that day every month thereafter.  Each such date on which my interest rate could
change is called a "Change Date."

---

ADJUSTABLE RATE RIDER (12-MTA INDEX - PAYMENT AND RATE CAPS)
AHM-2029R (MULT)  01/01/06              Page 1 of 5          DocMagic *eFerms* 800-649-1362
                                                             www.docmagic.com

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Interest Rate Change**

Before each Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 350/1000                                     percentage point(s) (        3.350  %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.  In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined.  The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available).  This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than          9.950 % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing           JUNE 1, 2007   , and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier  under Section 4(H) of the Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying.  This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the

---

ADJUSTABLE RATE RIDER (12-MTA INDEX - PAYMENT AND RATE CAPS)              *DocMagic eFerms* 800-649-1362
AHM-2029R (MULT) 01/01/06              Page 2 of 5                                             www.docmagic.com

unpaid Principal I owe in full on the maturity date in substantially equal payments.  Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion.  For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate.  For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to      110.000 % of the principal amount originally borrowed.  In the event my unpaid Principal would otherwise exceed that 110.000 % limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation.  The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

**(I)  Required Full Monthly Payment**

On the      5th      anniversary of the due date of the first monthly payment, and on that same day every      5th      year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time.  I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**B.      TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.  If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if:  (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be

---

ADJUSTABLE RATE RIDER (12-MTA INDEX - PAYMENT AND RATE CAPS)
AHM-2029R (MULT) 01/01/06                    Page 3 of 5

*DocMagic* ᵉᶠᵒʳᵐˢ 800-649-1362
*www.docmagic.com*

impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (c) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

ADJUSTABLE RATE RIDER (12-MTA INDEX - PAYMENT AND RATE CAPS)
AHM-2029R (MULT)  01/01/06                    Page 4 of 5                    *DocMagic* *eRomms* 800-649-1362
                                                                            www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

_____ (Seal)
VICTOR M. LEMUS                  -Borrower

_____ (Seal)
ESTELLA M. GUILLEN               -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

ADJUSTABLE RATE RIDER (12-MTA INDEX - PAYMENT AND RATE CAPS)
AHM-2029R (MULT)  01/01/06          Page 5 of 5

*DocMagic* eForms  800-649-1362
www.docmagic.com

Loan Number: ██████████

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this    20th    day of APRIL, 2006                                , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to  FIRST GUARANTY FINANCIAL CORPORATION, A CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

11278 TUSCOLANA STREET, LAS VEGAS, NEVADA 89141
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

BELLA TERRA AT SOUTHERN HIGHLANDS
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

---

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                                           Page 1 of 3

*DocMagic eFormns* 800-649-1362
*www.docmagic.com*

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
VICTOR M. LEMUS          -Borrower      ESTELLA M. GUILLEN      -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                               -Borrower

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                          Page 3 of 3

*DocMagic eForms* 800-649-1362
www.docmagic.com

Loan Number: ▮▮▮▮▮▮

# PREPAYMENT RIDER

This Prepayment Rider is made this 20th day of APRIL, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to FIRST GUARANTY FINANCIAL CORPORATION, A CALIFORNIA CORPORATION (the "Lender" or "Noteholder") of the same date and covering the Property described in the Security Instrument and located at:

11278 TUSCOLANA STREET, LAS VEGAS, NEVADA 89141
[Property Address]

**PREPAYMENT COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:**

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the 3rd anniversary of the date after the execution of the Security Instrument, the Prepayment Fee shall be equal to TWO AND 000/1000 percent ( 2.000 %) of the original loan amount. Thereafter, prepayment shall be permitted without any Prepayment Fee.

To the extent permitted by Applicable Law, the Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

MULTISTATE PREPAY SECURITY RIDER
MTA - AHM-2013S (MULT) 08/01/05        Page 1 of 2        DocMagic *eForms* 800-649-1362
www.docmagic.com

2013s.ahm

CLARK,NV                     Page 24 of 25             Printed on 8/27/2015 11:17:39 PM
Document: DOT 2006.0428.5627

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_____ (Seal)          _____ (Seal)
VICTOR M. LEMUS          -Borrower          ESTELLA M. GUILLEN          -Borrower


_____ (Seal)          _____ (Seal)
-Borrower          -Borrower


_____ (Seal)          _____ (Seal)
-Borrower          -Borrower


MULTISTATE PREPAY SECURITY RIDER
MTA - AHM-2013S (MULT)  08/01/05          Page 2 of 2

DocMagic *eFarms* 800-649-1362
www.docmagic.com

2013s.ahm

# Exhibit B

# Exhibit B

# Exhibit B

20080910-0001432

RECORDING REQUESTED BY
T.D. SERVICE COMPANY
return to:
American Home mtg.
Fidelity National Foreclosure
and Bankruptcy Solutions
RE: Loan # 0031118524/LEMUS
1270 Northland Drive
Mendota Heights, MN 55120

Fee: $15.00    RPTT: $1,746.75
N/C Fee:  $0.00

09/10/2008        10:27:41
T20080205201
Requestor:
    TITLE COURT SERVICE INC

Debbie Conway                KXC
Clark County Recorder    Pgs: 3

177·32·A18·055

_____ Space above this line for recorder's use _____

## TRUSTEE'S DEED UPON SALE

The undersigned declares under penalty of perjury that the following declaration is true and correct:

1) The Grantee herein was the foreclosing Beneficiary.
2) The amount of the unpaid debt together with costs was - - - - - - - - - - - - - - - - - -    $433,991.54
3) The amount paid by the Grantee at the Trustee's Sale was - - - - - - - - - - - - - - - -    $342,156.01
4) The documentary transfer tax is - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    $1,749.30  1746.75
5) The city transfer tax is - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    $.00
6) The monument preservation tax is - - - - - - - - - - - - - - - - - - - - - - - - - - - -    $.00  Reel
7) Said property is in **unincorporated area**, County of **Clark**

T.D. SERVICE COMPANY

By _____
Patty F. Matamoros, Sr. Trustee's Sale Technician

Dated: 08/28/08

T.S. No: B359217 NV    Unit Code: B    Loan No: _____/LEMUS
Min No _____
Property Address: 11278 TUSCOLANA STREET, LAS VEGAS, NV 89141

AHMSI DEFAULT SERVICES, INC.
(herein called Trustee)

THIS INSTRUMENT IS RECORDED AT THE
REQUEST OF SERVICELINK AS AN
ACCOMMODATION ONLY. IT HAS NOT BEEN
EXAMINED AS TO ITS EXECUTION OR AS
TO ITS EFFECTS UPON TITLE.

does hereby GRANT AND CONVEY, without any covenant or warranty, express or implied to

AMERICAN HOME MORTGAGE SERVICING, INC.
(herein called Grantee), such interest as Trustee has in that certain property described as follows:

LOT 412 BELLA TERRA AT SOUTHERN HIGHLAND UNIT 7, AS SHOWN BY MAP THEREOF ON FILE
IN BOOK 106, PAGE 3 OF PLATS, IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY,
NEVADA.

This conveyance is made pursuant to the authority vested in said Trustee, as Trustee or as duly appointed Trustee
by the Deed of Trust described as follows:

Trustor:  VICTOR M. LEMUS, ESTELLA M. GUILLEN

MAIL TAX STATEMENTS TO ADDRESS SHOWN ABOVE

Page 2
T.S. No: B359217 NV      Unit Code: B      Loan No: ███████/LEMUS

Recorded April 28, 2006  as Instr. No. 0005627 in Book 20060428 Page --- of Official Records in the office of the Recorder of CLARK County; NEVADA , Whereas, the holder of the note secured by said Deed of Trust delivered to Trustee a written Declaration of Default and, pursuant thereto, a Notice of Default was recorded May 7, 2008 as Instr. No. 0000670 in Book 20080507 Page - of Official Records in the office of the Recorder of CLARK County; NEVADA .

Whereas, Trustee complied with all applicable statutory provisions of California Civil Code Sections 2924 et seq. and of the described Deed of Trust including the mailing, publication, personal delivery, and posting of the Notice of Default and Notice of Sale, as respectively appropriate.

Said Notice of Trustee's Sale stated the time and place that Trustee would sell its interest in the described property at public auction.  On August 28, 2008, the date set forth in the Notice of Trustee's Sale or the properly postponed sale date, Trustee sold the described property to Grantee, the highest qualified bidder present, for the sum of $342,156.01 **Pro-tanto**.

In Witness Whereof, the undersigned caused its corporate name and seal (if applicable) to be hereunto affixed.


Dated  September 4, 2008

AHMSI DEFAULT SERVICES, INC.
By T.D. Service Company, As Agent for the Trustee

BY _____                    BY _____
    Kimberly Coonradt, Assistant Secretary              Frances Depalma, Assistant Secretary


STATE OF CALIFORNIA          )
COUNTY OF ORANGE            )SS

On  09/04/08  before me, KAY HENDRICKS, a Notary Public, personally appeared  KIMBERLY COONRADT and FRANCES DEPALMA, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the Laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

KAY HENDRICKS
Commission # 1530718
Notary Public - California
Orange County
My Comm. Expires Dec 27, 2008


CLARK,NV                          Page 2 of 3                  Printed on 8/27/2015 11:17:41 PM
Document: DED TRS 2008.0910.1432

**STATE OF NEVADA**
**DECLARATION OF VALUE FORM**

1. Assessor Parcel Number(s)
   a) _177-32-418-055_
   b) _____
   c) _____
   d) _____

2. Type of Property:
   a) [ ] Vacant Land          b) [X] Single Fam. Res.
   c) [ ] Condo/Twnhse         d) [ ] 2-4 Plex
   e) [ ] Apt. Bldg            f) [ ] Comm'l/Ind'l
   g) [ ] Agricultural         h) [ ] Mobile Home
   [ ] Other _____

   FOR RECORDER'S OPTIONAL USE ONLY
   Book:_____ Page:_____
   Date of Recording:_____
   Notes:_____

3. Total Value/Sales Price of Property          $ _382,156.01_
   Deed in Lieu of Foreclosure Only (value of property)  ( _____ )
   Transfer Tax Value:                          $ _____
   Real Property Transfer Tax Due               $ _~~1,749.30~~ 1746.75 ~~rd~~_

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section _____
   b. Explain Reason for Exemption: _____

5. Partial Interest: Percentage being transferred: _100_ %

   The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

   Signature _X. Conrad_          Capacity _ASSISTANT SECRETARY_
   Signature _____        Capacity _ASSISTANT SECRETARY_

| SELLER (GRANTOR) INFORMATION | BUYER (GRANTEE) INFORMATION |
| (REQUIRED) | (REQUIRED) |
| Print Name: AHMSI DEFAULT SERVICES, INC. | Print Name: AMERICAN HOME MORTGAGE SERVICING |
| Address: 4600 REGENT BLVD. SUITE 200 | Address: 4600 REGENT BLVD., SUITE 200 |
| City: IRVING | City: IRVING |
| State: TX    Zip: 75063 | State: TX    Zip: 75063 |

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**

Escrow #: _____

Title Court Service
2800 W Sahara Ste 2G          State:_____ Zip: _____
Las Vegas, NV 89102          E OF $1.00 WILL APPLY FOR EACH DECLARATION
                              ) TO CLARK COUNTY, EFFECTIVE JUNE 1, 2004.

_1432_

<u>Exhibit C</u>

<u>Exhibit C</u>

<u>Exhibit C</u>

Inst #: 201101270003282
Fees: $14.00
N/C Fee: $0.00
01/27/2011 09:33:20 AM
Receipt #: 655932
Requestor:
ALESSI & KOENIG LLC (JUNES
Recorded By: JRV   Pgs: 1
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

When recorded return to:

**ALESSI & KOENIG, LLC**
**9500 W. Flamingo Rd., Suite 100**
**Las Vegas, Nevada 89147**
**Phone: (702) 222-4033**

A.P.N. **177-32-418-055**                    Trustee Sale # **SH-11278-N**

### NOTICE OF DELINQUENT ASSESSMENT (LIEN)

In accordance with Nevada Revised Statutes and the Association's Declaration of Covenants, Conditions and Restrictions (CC&Rs) of the official records of **Clark** County, Nevada, **Southern Highlands Community Association** has a lien on the following legally described property.

The property against which the lien is imposed is commonly referred to as **11278 TUSCOLANA ST , LAS VEGAS, NV 89141** and more particularly legally described as: **LOT 412 Book 106 Page 3** in the County of **Clark**.

The owner(s) of record as reflected on the public record as of today's date is (are): **OSCAR MOLINA**

The mailing address(es) is: **11278 TUSCOLANA ST, LAS VEGAS, NV 89141**

The total amount due through today's date is: **$1,660.79**.  Of this total amount **$1,599.46** represent Collection and/or Attorney fees, assessments, interest, late fees and service charges. **$61.33** represent collection costs.  Note: Additional monies shall accrue under this claim at the rate of the claimant's regular monthly or special assessments, plus permissible late charges, costs of collection and interest, accruing subsequent to the date of this notice.

Date: **January 4, 2011**

By: _____

Aileen Ruiz – Legal Assistant

Alessi & Koenig, LLC on behalf of **Southern Highlands Community Association**

State of Nevada
County of Clark
SUBSCRIBED and SWORN before me January 4, 2011

(Seal)

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
LANI MAE U. DIAZ
Appt. No. 10-2800-1
My Appt. Expires Aug. 24, 2014

(Signature) _____

NOTARY PUBLIC

Exhibit D

Exhibit D

Exhibit D

②-1

Inst #: 201207180003167
Fees: $17.00 N/C Fee: $0.00
RPTT: $775.20 Ex: #
07/18/2012 03:55:24 PM
Receipt #: 1239191
Requestor:
ALESSI & KOENIG LLC
Recorded By: ANI   Pgs: 2

**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

When recorded mail to and
Mail Tax Statements to:
**11278 Tuscolana St Trust**
**PO Box 36208**
**Las Vegas, NV 89133**

A.P.N. No.**177-32-418-055**                    TS No. **SH-11278-N**

### TRUSTEE'S DEED UPON SALE

The Grantee (Buyer) herein was: **11278 Tuscolana St Trust**
The Foreclosing Beneficiary herein was: **Southern Highlands Community Association**
The amount of unpaid debt together with costs (Real Property Transfer Tax Value): **$152,000.00**
The amount paid by the Grantee (Buyer) at the Trustee's Sale: **$152,000.00**
The Documentary Transfer Tax: **$775.20**
Property address: **11278 TUSCOLANA ST, LAS VEGAS, NV 89141**
Said property is in [   ] unincorporated area: City of **LAS VEGAS**
Trustor (Former Owner that was foreclosed on): **OSCAR MOLINA**

Alessi & Koenig, LLC (herein called Trustee), as the duly appointed Trustee under that certain Notice of
Delinquent Assessment Lien, recorded **January 27, 2011** as instrument number **3282**, in **Clark** County, does
hereby grant, without warranty expressed or implied to: **11278 Tuscolana St Trust**  (Grantee), all its right, title
and interest in the property legally described as: **LOT 412**, as per map recorded in Book 106, Pages 3 as shown
in the Office of the County Recorder of **Clark** County Nevada.

**TRUSTEE STATES THAT:**
This conveyance is made pursuant to the powers conferred upon Trustee by NRS 116 et seq., and that certain
Notice of Delinquent Assessment Lien, described herein.  Default occurred as set forth in a Notice of Default
and Election to Sell which was recorded in the office of the recorder of said county.  All requirements of law
regarding the mailing of copies of notices and the posting and publication of the copies of the Notice of Sale
have been complied with.  Said property was sold by said Trustee at public auction on **July  11, 2012** at the place
indicated on the Notice of Trustee's Sale.

                        Ryan Kerbow, Esq
                        Signature of AUTHORIZED AGENT for **Alessi&Koenig, LLC**

State of Nevada          )
County of **Clark**         )

SUBSCRIBED and SWORN to before me   July 18, 2012

WITNESS my hand and official seal.
(Seal)                                    (Signature)

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
LANI MAE U. DIAZ
Appt. No. 10-2800-1
My Appt. Expires Aug. 24, 2014

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1. Assessor Parcel Number(s)
   a. 177-32-418-055
   b. _____
   c. _____
   d. _____

2. Type of Property:
   a. ☐ Vacant Land      b. ☑ Single Fam. Res.
   c. ☐ Condo/Twnhse    d. ☐ 2-4 Plex
   e. ☐ Apt. Bldg        f. ☐ Comm'l/Ind'l
   g. ☐ Agricultural     h. ☐ Mobile Home
      ☐ Other

| FOR RECORDERS OPTIONAL USE ONLY |
|---|
| Book_____ Page:_____ |
| Date of Recording: _____ |
| Notes:_____ |

3.a. Total Value/Sales Price of Property          $ 152,000.00
   b. Deed in Lieu of Foreclosure Only (value of property ( _____ )
   c. Transfer Tax Value:                         $ 152,000.00
   d. Real Property Transfer Tax Due              $ 775.20

**4. If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section_____
   b. Explain Reason for Exemption: _____

5. Partial Interest: Percentage being transferred: 100 %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _____    Capacity: Grantor _____

Signature _____    Capacity: _____

| **SELLER (GRANTOR) INFORMATION** | **BUYER (GRANTEE) INFORMATION** |
|---|---|
| **(REQUIRED)** | **(REQUIRED)** |
| Print Name: Alessi&Koenig, LLC | Print Name: 11278 Tuscolana St Trust |
| Address:9500 W Flamingo 205 | Address: PO Box 36208 |
| City: Las Vegas | City: Las Vegas |
| State: NV          Zip: 89147 | State:NV          Zip:89133 |

**COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**

| Print Name: Alessi&Koenig, LLC | Escrow # N/A Foreclosure |
|---|---|
| Address:9500 W Flamingo 205 | |
| City: Las Vegas | State:NV          Zip:89147 |

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

<u>Exhibit E</u>

<u>Exhibit E</u>

<u>Exhibit E</u>

Inst #: 201212030001953
Fees: $17.00 N/C Fee: $0.00
RPTT: $775.20 Ex: #
12/03/2012 03:22:00 PM
Receipt #: 1404742
Requestor:
ALESSI & KOENIG LLC
Recorded By: JACKSM   Pgs: 2

**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

When recorded mail to and
Mail Tax Statements to:
**11278 Tuscolana St Trust**
**PO Box 36208**
**Las Vegas, NV 89133**

A.P.N. No.**177-32-418-055**                    TS No. **SH-11278-N**

### TRUSTEE'S DEED UPON SALE

The Grantee (Buyer) herein was: **11278 Tuscolana St Trust**
The Foreclosing Beneficiary herein was: **Southern Highlands Community Association**
The amount of unpaid debt together with costs: **$5,352.94**
The amount paid by the Grantee (Buyer) at the Trustee's Sale: **$152,000.00**
The Documentary Transfer Tax: **$775.20**
Property address: **11278 TUSCOLANA ST, LAS VEGAS, NV 89141**
Said property is in [   ] unincorporated area: City of **LAS VEGAS**
Trustor (Former Owner that was foreclosed on): AMERICAN HOME MTGE SRVCING INC

Alessi & Koenig, LLC (herein called Trustee), as the duly appointed Trustee under that certain Notice of
Delinquent Assessment Lien, recorded **January 27, 2011** as instrument number **3282**, in **Clark** County,
does hereby grant, without warranty expressed or implied to: **11278 Tuscolana St Trust** (Grantee), all its
right, title and interest in the property legally described as: **LOT 412**, as per map recorded in Book **106**,
Pages **3** as shown in the Office of the County Recorder of **Clark** County Nevada.

**TRUSTEE STATES THAT:**
This conveyance is made pursuant to the powers conferred upon Trustee by NRS 116 et seq., and that
certain Notice of Delinquent Assessment Lien, described herein. Default occurred as set forth in a Notice
of Default and Election to Sell which was recorded in the office of the recorder of said county. All
requirements of law regarding the mailing of copies of notices and the posting and publication of the
copies of the Notice of Sale have been complied with. Said property was sold by said Trustee at public
auction on **July  11, 2012** at the place indicated on the Notice of Trustee's Sale.

                              Ryan Kerbow, Esq
                              Signature of AUTHORIZED AGENT for Alessi&Koenig, LLC

State of Nevada          )
County of **Clark**          )

SUBSCRIBED and SWORN to before me ____11/10____ , _12_

WITNESS my hand and official seal.
(Seal)                                    _____
                                              (Signature)

MARY INDALECIO
Notary Public-State of Nevada
APPT. No. 12-8340-1
My App. Expires July 12, 2016

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1.  Assessor Parcel Number(s)
    a. 177-32-418-055
    b. _____
    c. _____
    d. _____

2.  Type of Property:
    a. ☐ Vacant Land    b. ☑ Single Fam. Res.
    c. ☐ Condo/Twnhse    d. ☐ 2-4 Plex
    e. ☐ Apt. Bldg    f. ☐ Comm'l/Ind'l
    g. ☐ Agricultural    h. ☐ Mobile Home
       ☐ Other

| FOR RECORDERS OPTIONAL USE ONLY |
|---|
| Book_____ Page:_____ |
| Date of Recording: _____ |
| Notes: |

3. a. Total Value/Sales Price of Property              $ 152,000.00
   b. Deed in Lieu of Foreclosure Only (value of property (                    )
   c. Transfer Tax Value:                               $ 152,000.00
   d. Real Property Transfer Tax Due                    $ 775.20

**4.  If Exemption Claimed:**
    a.  Transfer Tax Exemption per NRS 375.090, Section_____
    b.  Explain Reason for Exemption: _____
    _____

5.  Partial Interest: Percentage being transferred: 100 %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _____    Capacity: Grantor _____

Signature _____    Capacity: _____

| **SELLER (GRANTOR) INFORMATION** (REQUIRED) | **BUYER (GRANTEE) INFORMATION** (REQUIRED) |
|---|---|
| Print Name: Alessi&Koenig, LLC | Print Name: 11278 Tuscolana St Trust |
| Address: 9500 W Flamingo # 205 | Address: PO Box 36208 |
| City: Las Vegas | City: Las Vegas |
| State: NV          Zip: 89147 | State: NV          Zip: 89133 |

**COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**

| Print Name: Alessi&Koenig, LLC | Escrow # N/A Foreclosure |
|---|---|
| Address: 9500 W Flamingo # 205 | |
| City: Las Vegas | State: NV          Zip: 89147 |

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

# Exhibit F

# Exhibit F

# Exhibit F

# CIVIL COVER SHEET

**A-12-669326-C**

**X**

Clark County, Nevada

Case No. _____
*(Assigned by Clerk's Office)*

## I. Party Information

Plaintiff(s) (name/address/phone):
11278 Tuscolana St Trust and Alessi & Koenig, LLC
c/o Alessi & Koenig, LLC
9500 W. Flamingo Rd., Suite 205
Las Vegas, NV 89147     (702) 222/4033

Attorney (name/address/phone):
Huong X. Lam, Esq.
Alessi & Koenig, LLC
9500 W. Flamingo Rd., Suite 205
Las Vegas, NV 89147     (702) 222/4033

Defendant(s) (name/address/phone):
American Home Mortgage Servicing, Inc.
Republic Silver State Disposal, Inc. dba Republic Services

Attorney (name/address/phone):

## II. Nature of Controversy (Please check applicable bold category and applicable subcategory, if appropriate)

☐ **Arbitration Requested**

### Civil Cases

| Real Property | Torts |
|---|---|

**Real Property**

☐ **Landlord/Tenant**
  ☐ Unlawful Detainer
☒ **Title to Property**
  ☐ Foreclosure
  ☐ Liens
  ☒ Quiet Title
  ☐ Specific Performance
☐ **Condemnation/Eminent Domain**
☐ **Other Real Property**
  ☐ Partition
  ☐ Planning/Zoning

**Torts**

**Negligence**
☐ **Negligence – Auto**
☐ **Negligence – Medical/Dental**
☐ **Negligence – Premises Liability**
  (Slip/Fall)
☐ **Negligence – Other**

☐ **Product Liability**
  ☐ Product Liability/Motor Vehicle
  ☐ Other Torts/Product Liability
☐ **Intentional Misconduct**
  ☐ Torts/Defamation (Libel/Slander)
  ☐ Interfere with Contract Rights
☐ **Employment Torts** (Wrongful termination)
☐ **Other Torts**
  ☐ Anti-trust
  ☐ Fraud/Misrepresentation
  ☐ Insurance
  ☐ Legal Tort
  ☐ Unfair Competition

**Probate**

Estimated Estate Value: _____

☐ **Summary Administration**
☐ **General Administration**
☐ **Special Administration**
☐ **Set Aside Estates**
☐ **Trust/Conservatorships**
  ☐ Individual Trustee
  ☐ Corporate Trustee
☐ **Other Probate**

**Other Civil Filing Types**

☐ **Construction Defect**
  ☐ Chapter 40
  ☐ General
☐ **Breach of Contract**
  ☐ Building & Construction
  ☐ Insurance Carrier
  ☐ Commercial Instrument
  ☐ Other Contracts/Acct/Judgment
  ☐ Collection of Actions
  ☐ Employment Contract
  ☐ Guarantee
  ☐ Sale Contract
  ☐ Uniform Commercial Code
☐ **Civil Petition for Judicial Review**
  ☐ Foreclosure Mediation
  ☐ Other Administrative Law
  ☐ Department of Motor Vehicles
  ☐ Worker's Compensation Appeal

☐ **Appeal from Lower Court** (*also check applicable civil case box*)
  ☐ Transfer from Justice Court
  ☐ Justice Court Civil Appeal
☐ **Civil Writ**
  ☐ Other Special Proceeding
☐ **Other Civil Filing**
  ☐ Compromise of Minor's Claim
  ☐ Conversion of Property
  ☐ Damage to Property
  ☐ Employment Security
  ☐ Enforcement of Judgment
  ☐ Foreign Judgment – Civil
  ☐ Other Personal Property
  ☐ Recovery of Property
  ☐ Stockholder Suit
  ☐ Other Civil Matters

## III. Business Court Requested (Please check applicable category; *for Clark or Washoe Counties only.*)

☐ NRS Chapters 78-88
☐ Commodities (NRS 90)
☐ Securities (NRS 90)

☐ Investments (NRS 104 Art. 8)
☐ Deceptive Trade Practices (NRS 598)
☐ Trademarks (NRS 600A)

☐ Enhanced Case Mgmt/Business
☐ Other Business Court Matters

9/26/2012
/Date

#10916
Signature of initiating party or representative

Form PA 201
Rev. 2.5E

Electronically Filed
10/01/2012 04:09:30 PM

**CLERK OF THE COURT**

**COMP**
Huong Lam, Esq.
Nevada Bar No. 10916
ALESSI & KOENIG, LLC
9500 W. Flamingo, Suite 205
Las Vegas, Nevada 89147
Phone: (702) 222-4033
Fax:    (702) 254-9044
Email: huong@alessikoenig.com
*Attorneys for Plaintiff*
*11278 Tuscolana St Trust*

# DISTRICT COURT

## CLARK COUNTY, NEVADA

|  |  |
|---|---|
| 11278 TUSCOLANA ST TRUST, a Nevada trust; ALESSI & KOENIG, LLC, a Nevada limited liability company, | ) ) ) ) ) |
| Plaintiff(s), | ) ) |
| - vs - | ) ) |
| AMERICAN HOME MORTGAGE SERVICING, INC., a Delaware corporation; REPUBLIC SILVER STATE DISPOSAL, INC. dba REPUBLIC SERVICES, a foreign corporation; DOES INDIVIDUALS I-X and ROE CORPORATIONS XI-XX inclusive, | ) ) ) ) ) ) ) |
| Defendant(s). | ) ) ) |

A-12-669326-C

Case No.:

Dept. No.:    X

**Arbitration Exemption Claimed:**
**1) Declaratory Relief**
**2) Concerns Title to Real Property**

## COMPLAINT

COMES NOW, Plaintiff 11278 Tuscolana St Trust and Alessi & Koenig, LLC, by and through its attorneys of record and hereby files this Complaint against Defendant American Home Mortgage Servicing, Inc. and Republic Silver State Disposal, Inc. dba Republic Services as follows:

//

//

1

## THE PARTIES AND JURISDICTION

1.  At all times relevant herein, Plaintiff 11278 Tuscolana St Trust ("Tuscolana Trust") was a trust organized and authorized to conduct business in the State of Nevada.

2.  At all times relevant herein, Plaintiff Alessi & Koenig, LLC ("A&K") was a limited liability company organized and authorized to conduct business in the State of Nevada.

3.  Upon information and belief, Defendant American Home Mortgage Servicing, Inc. ("AHMSI") was a Delaware corporation, authorized and registered to do business in Nevada.

4.  Upon information and belief, Defendant Republic Silver State Disposal, Inc. dba Republic Services ("Republic Services") was a foreign corporation, authorized and registered to do business in Nevada.

5.  The names given to the Defendants sued herein as Doe Individuals I though X and Roe Corporations XI through XX, inclusive, are fictitious names.  Other parties unknown to Plaintiff may have caused Plaintiff to incur damages as pled herein or may have an interest in the Property.  Plaintiff prays that if and when the true names of any said defendants, or any of them, and the nature of their alleged actions and/or interests are ascertained, that they may be inserted herein by proper amendment.  Plaintiff has no knowledge of the addresses or places of residence of any fictitious defendants.

6.  Jurisdiction and venue are proper in this Court because this action concerns real property located in the County of Clark, State of Nevada, and the facts, acts, events

and circumstances herein mentioned, alleged and described occurred in the County of Clark, State of Nevada.

## THE UNDERLYING FORECLOSURE SALE

7. Plaintiff hereby repeats, realleges, and incorporates by reference each and every preceding paragraph and allegation as if fully stated herein.

8. On or about August 28, 2008, by way of a trustee's foreclosure sale under a deed of trust, Defendants AHMSI obtained title to certain real property commonly known as 11278 Tuscolana Street, Las Vegas, NV 89141, Assessor's Parcel Number 177-32-418-055, and legally described as:

> LOT 412 BELLA TERRA AT SOUTHERN HIGHLANDS UNIT 7, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 106, PAGE 3 OF PLATS, IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA.

(the "Property"). See Exhibit "1."

9. On or about February 9, 2009, Jessica L. Lovette ("Lovette"), purportedly as an authorized agent for AHMSI, and Oscar G. Molina, Jr. ("Molina"), purportedly as trustor and grantor, executed a Full Reconveyance which attempted to release the Deed of Trust as a security interest against the Property. The Full Reconveyance was recorded on February 18, 2009, with the Clark County Recorder, State of Nevada, at Instrument No. 200902180004569. See Exhibit "2."

10. On or about February 27, 2009, Victor M. Lemus and Estella M. Guillen, as purported grantors and trustors, and Molina, purportedly as grantee, executed a Grant Deed attempting to convey the Property to Molina. The Grant Deed was recorded on March 5, 2009, with the Clark County Recorder, State of Nevada, at Instrument No. 200903050000353. See Exhibit "3."

3

11. On or about February 20, 2009, Lovette, again as purported authorized agent and trustee for AHMSI, executed a Revised Grant Deed, which states it purpose was to revise the prior Grant Deed and attempted to transfer title to the Subject Property to Molina. The Revised Grant Deed was recorded on March 24, 1009, with the Clark County Recorder, State of Nevada, at Instrument No.200903240003097. See Exhibit "4."

12. On or about August 25, 2010, Defendant AHMSI filed a Verified Complaint for Declaratory Relief, Quiet Title, and Fraud against Lovette and Molina, Clark County District Court Case No. A-10-623833-C. See Exhibit "5."[1]

13. On or about July 6, 2012, Defendant AHMSI obtained relief and an Order Granting Motion for Summary Judgment was entered against Lovette and Molina. See Exhibit "6."

14. The Order Granting Motion for Summary Judgment declared the Full Reconveyance, Grant Deed, and Revised Grant Deed were all void ab initio and ineffective. *See Id.*

15. The Order Granting Motion for Summary Judgment further caused the Full Reconveyance, Grant Deed, and Revised Grant Deed to be expunged from the public record.

16. As such, pursuant to the Order Granting Motion for Summary Judgment, Defendant AHMSI was restored as the title owner of the Property, dating back to the trustee's foreclosure sale under deed of trust on or about August 28, 2008.

17. However, beginning February 18, 2009 through July 31, 2012, Oscar Molina presented as the record owner of the Property on all public records.

---

[1] Complaint is attached without exhibits.

18.    On or about June 9, 2000, a Declaration of Covenants, Conditions, and Restrictions

("CC&Rs") for Southern Highlands Community Association was recorded in the

public records with the Clark County Recorder, State of Nevada, at Instrument

No.200006090000586.

19.    Pursuant to the CC&Rs, Debtor is responsible for assessments.  Section 8.7 of the

CC&Rs provides, in pertinent part:

> Each Owner, by accepting a deed or entering into a Recorded contract of
> sale for any portion of the Properties, covenants and agrees to timely pay
> all assessments authorized in the Governing Documents.  All assessments,
> together with interest … late charges as determined by Board resolution,
> costs, and reasonable attorneys' fees, shall be a personal obligation of each
> Owner and a lien upon each Unit until paid in full.  Upon a transfer of title
> to a Unit, the grantee shall be jointly and severally liable for any
> assessments and other charges due at the time of conveyance.

See attached Exhibit "7."

20.    Section 8.8 of the CC&Rs provides, in pertinent part:

> In accordance with NRS § 116.3116, et seq., and subject to the limitation
> of any applicable provision of NRS Chapter 116 or other applicable
> Nevada law, the Association shall have an automatic statutory lien against
> each Unit to secure payment of delinquent assessments, as well as interest,
> late charges, and costs of collection (including attorneys' fees).

See Id.

21.    Pursuant to Nevada Revised Statute Chapter 116, Defendant AHMSI is governed by

the requirements and obligations set forth in the CC&Rs and related governing

documents.

22.    The CC&Rs require owners within the community to pay regular assessments and

comply with the requirements and obligations set forth in CC&Rs and related

governing documents.

5

23. Defendant failed to pay their regular assessments and further failed to comply with other requirements set forth in the CC&Rs and other related governing documents.

24. Nevada Revised Statute ("NRS") 116.3116 *et. seq.* specifically authorizes a homeowner's association to conduct a foreclosure sale of any lot that has become delinquent on its assessment payments.

25. As a result of Defendant's failure to comply with NRS 116 and CC&Rs, Alessi & Koenig, LLC (hereinafter "A&K") was retained to foreclose on the Property pursuant to NRS 116.3116 *et. seq.*

26. Pursuant to the aforementioned statutory and CC&Rs provisions, A&K, on behalf of homeowners association, Southern Highlands Community Association, foreclosed on the Property on or about July 11, 2012.

27. On or about July 18, 2012, a "Trustee's Deed Upon Sale" was recorded against the Property with the Clark County Recorder in Book 20120416, Instrument No. 0000995. See attached Exhibit "8."

28. The grantee (buyer) at the foreclosure sale was Plaintiff 11278 Tuscolana St Trust. As such, as of July 11, 2012, Plaintiff became the title owner of the Property. See Id.

29. Plaintiff has been unable to obtain title insurance on the Property and seeks to quiet title on the Property.

### FIRST CAUSE OF ACTION
### (Declaratory Relief and Quiet Title)

30. Plaintiff hereby repeats, realleges, and incorporates by reference each and every preceding paragraph and allegation as if fully stated herein.

31. Upon information and belief, a justiciable controversy exists between Plaintiff 11278 Tuscolana St Trust and Defendant AHMSI that their interests are adverse.

6

32. Defendant failed to meet their obligations to pay assessments pursuant to the CC&Rs and NRS 116, et al.

33. As a result of the default in payment under the CC&Rs and NRS 116, et al., Southern Highlands Community Association had a legal right to foreclose on the Property.

34. Southern Highlands Community Association, through their foreclosing agent A&K, performed all conditions and requirements pursuant to the CC&Rs and NRS 116, et al., and NRS 107, et al., and properly foreclosed on the Property.

35. Pursuant to the CC&Rs and applicable law, title vested in Plaintiff 11278 Tuscolana St Trust on or about July 11, 2012.

36. The present question of title in the subject property has abridged the rights of 11278 Tuscolana St Trust as Plaintiff is unable to obtain title insurance.

37. Plaintiff 11278 Tuscolana St Trust requests a judicial determination that the foreclosure sale on July 11, 2012, was valid and proper pursuant to the CC&Rs and applicable Nevada law.

38. Plaintiff 11278 Tuscolana St Trust further requests that this Court determine the issues of title herein and declare title to the Property vested in 11278 Tuscolana St Trust on or about July 11, 2012.

39. The claims of the parties are adverse, and Plaintiff has no plain, speedy, or adequate remedy at law.

40. Declaratory relief is necessary and appropriate to avoid the multiplicity of claims that might otherwise ensue; to allow the parties to determine their rights and liabilities relative to the interests claimed herein; and to obtain a decree setting forth the

7

respective interests and priorities of persons and entities claiming any right, title, or interest in the Property.

41. It has been necessary for Plaintiff 11278 Tuscolana St Trust to employ the legal services of Alessi & Koenig, LLC, as duly licensed and practicing attorneys in the State of Nevada to file and litigate this action, and reasonable attorneys' fees should be awarded to 11278 Tuscolana St Trust, to be paid by Defendants.

## SECOND CAUSE OF ACTION
### (Interpleader re: Excess Proceeds)

42. Plaintiffs hereby repeat, reallege, and incorporate by reference each and every preceding paragraph and allegation as if fully stated herein.

43. A&K, on behalf of Southern Highlands Community Association, foreclosed on the Property on or about July 11, 2012, for $152,000.00.

44. The total amount of the unpaid debt, together with costs, was $5,352.94.

45. The total amount due and owing to A&K for its fees and costs for bringing this action is $6,000.00.

46. That the excess proceeds is $140,647.06, minus the amounts stated as above.

47. Upon information and belief, Defendant AHMSI has a claim for excess proceeds.

48. Upon information and belief, Defendant Republic Services has a claim for excess proceeds pursuant to a Notice of Claim of Lien recorded against the Property with the Clark County Recorder, State of Nevada at Instrument No. 201112290002586. See attached Exhibit "9."

49. That Plaintiff A&K will deposit excess proceeds with this court in the sum of $140,647.06 (total proceeds at sale $152,000.00 minus amount due to Southern

8

Highlands Community Association $2,557.94, foreclosure fees and costs of $2,795, and fees and costs of this interpleader action $6,000.00).

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants in Interpleader and each of them as follows:

1. That the Court declare the homeowners association foreclosure sale valid and proper pursuant to the CC&Rs and applicable Nevada law;

2. That the Court declares title in the Property vest in 11278 Tuscolana St Trust;

3. That Defendant in Interpleader and each of them be required to interplead and litigate among themselves their claims to the proceeds described;

4. That the Court determine and enter an order setting forth the proper recipients of the proceeds;

5. That Plaintiff Alessi & Koenig, LLC be dismissed from this action with prejudice following payment of the excess proceeds into the registry of the Court;

6. For reasonable attorneys' fees; and

7. For such other and further relief as the Court deems just and equitable under the circumstances.

DATED this _28_ day of September, 2012.

ALESSI & KOENIG, LLC

Huong X. Lam, Esq., NSB 10916
9500 W. Flamingo Rd., Ste. 205
Las Vegas, NV 89147
Phone: (702) 222-4033
Fax: (702) 222-4043
huong@alessikoenig.com
*Attorney for Plaintiffs*

9

Exhibit G

Exhibit G

Exhibit G

Inst #: 20140717-0001943
Fees: $17.00
N/C Fee: $0.00
07/17/2014 04:19:46 PM
Receipt #: 2092006
Requestor:
REPUBLIC SERVICES
Recorded By: CHMA   Pgs: 1

DEBBIE CONWAY
CLARK COUNTY RECORDER

## RELEASE OF LIEN
## FOR SOLID WASTE SERVICE

PARCEL# 177-32-418-055

KNOW ALL MEN BY THESE PRESENTS:
That certain Claim of Lien heretofore filed by
Republic Silver State Disposal, Inc., DBA Republic Services,
doing business in the County of Clark, State of Nevada
and recorded in the Office of the County Recorder
of Clark County, Nevada on May 05th 2014 in Official
Records Book No. 20140505, as Document No. 00669
more particularly described as follows:

AMERICAN HOME MTGE SRVCING INC
11278 TUSCOLANA ST

LAS VEGAS NV 89141-3494

BELLA TERRA AT SOUTHERN
HIGHLANDS-UNIT 7
PLAT BOOK 106 PAGE 3
LOT 412
is hereby released, the claim thereunder having been satisfied.

REPUBLIC SILVER STATE DISPOSAL, INC.

By: *Carolyn Paige*
Carolyn Paige
Representative of the Lien Claimant
Republic Silver State Disposal, Inc.,
DBA Republic Services

WHEN RECORDED, RETURN TO:
REPUBLIC SERVICES
P.O. BOX 98508
LAS VEGAS, NEVADA 89193-8508

<u>Exhibit H</u>

<u>Exhibit H</u>

<u>Exhibit H</u>

Electronically Filed
04/28/2014 02:40:48 PM

*[signature]*

**CLERK OF THE COURT**

1  **JUDG**
   MICHAEL F. BOHN, ESQ.
2  Nevada Bar No.: 1641
   mbohn@bohnlawfirm.com
3  LAW OFFICES OF
   MICHAEL F. BOHN, ESQ. LTD.
4  376 E. Warm Springs Road, Ste. 140
   Las Vegas, Nevada 89119
5  (702) 642-3113 / (702) 642-9766 FAX

6  Attorney for plaintiff, 11278 Tuscolana St Trust

7

8                          DISTRICT COURT

9                     CLARK COUNTY, NEVADA

10
    11278 TUSCOLANA ST TRUST, a Nevada
11  trust; and ALESSI & KOENIG, LLC, a Nevada     CASE NO.:    A669326
    limited liability company,                    DEPT NO.:    XIII
12
         Plaintiff,
13
    vs.
14
    AMERICAN HOME MORTGAGE
15  SERVICING INC., a Delaware corporation;
    REPUBLIC SILVER STATE DISPOSAL,
16  INC., dba REPUBLIC SERVICES, a foreign
    corporation; DOES INDIVIDUALS I-X,
17  inclusive; and, ROE CORPORATIONS XI-XX
    inclusive,
18
         Defendant.
19

20              **JUDGMENT GRANTING QUIET TITLE**

21       The court having granted the plaintiffs motion for summary judgment and for good cause

22  appearing, the court finds as follows.

23                       **FINDINGS OF FACT**

24       1. On August 28, 2008, defendant American Home Mortgage Servicing, Inc. (AHMSI) obtained

25  title to the real property commonly known as  11278 Tuscolona Street, Las Vegas, Nevada and legally

26  described as:

27

28

                                    1

Lot 412 Bella Terra at Southern Highland Unit 7, as shown by map thereof on file in book 106, page 3 of plats, in the office of the county recorder, Clark County, Nevada
APN: 177-32-418-055

2.  Defendant AHMSI obtained title pursuant to a trustee's foreclosure deed on a deed of trust.

3.  The prior former owners of the real property recorded a number of fraudulent conveyances and reconveyances of the trust deed.

4.  AHMSI filed suit in District Court case Number A623833, and obtained an order granting summary judgment clearing the clouds placed upon the title by the prior former owners.

5.  In the order filed on July 26, 2012, the court made a finding that American Home Mortgage Servicing, Inc., "has established that it is the holder of the fee title interest in real property commonly known as 11278 Tuscolana St., Las Vegas, NV 89141(Subject Property")."

6.  As a result of the order, AHMSI was confirmed as the record title holder of the property, dating back to the trustee's foreclosure sale under deed of trust on August 28, 2008.

7.  The plaintiff in this case obtained title to the real property pursuant to a foreclosure sale conducted on July 11, 2012 and the resulting foreclosure deed recorded on December 3, 2012.

8.  Any finding of fact which should be properly denominated as a conclusion of law shall be treated as such.

## CONCLUSIONS OF LAW

1.  Prior to December 3, 2012, defendant AHMSI was the fee title owner of the real property commonly known as 11278 Tuscolana Street, Las Vegas, Nevada.

2.  As the owner of the subject real property, defendant AHMSI is responsible to comply with all covenants, conditions, and restrictions recorded against the property, including the obligation to pay it's monthly assessments.

3.  As a result of the foreclosure sale conducted on July 11, 2012 and the resulting foreclosure deed recorded on December 3, 2012, the fee title to the subject real property is vested in the plaintiff 11278 Tuscolana St. Trust without equity or right of redemption.

4.  Also as a result of the foreclosure sale conducted on July 11, 2012 and the resulting foreclosure deed recorded on December 3, 2012, any interest which defendant AHMSI held in the subject real

2

property has been extinguished.

5. Pursuant to NRS 116.31166, the recitals in the foreclosure deed recorded on December 3, 2012 are conclusive proof against the unit's former owner of the matters recited regarding:

(a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;

(b) The elapsing of the 90 days; and

(c) The giving of notice of sale,

6. Any conclusion of law which should be properly denominated as a finding of fact shall be treated as such.

NOW THEREFORE, BASED UPON THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment is hereby entered quieting title in favor of the plaintiff to the real property commonly known 11278 Tuscolana Street, Las Vegas, Nevada and legally described as:

Lot 412 Bella Terra at Southern Highland Unit 7, as shown by map thereof on file in book 106, page 3 of plats, in the office of the county recorder, Clark County, Nevada
APN: 177-32-418-055

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the title of the plaintiff is free and clear of any and all claims of defendant American Home Mortgage Servicing, Inc.,

DATED this 27th day of April, 2014

_____
DISTRICT COURT JUDGE

/ / /

/ / /

/ / /

3

1  Respectfully submitted by:

2  LAW OFFICES OF
3  MICHAEL F. BOHN, ESQ., LTD.

4

5  BY: _Michael Bohn_
6  MICHAEL F. BOHN, ESQ.
   376 East Warm Springs Road, Ste. 140
7  Las Vegas, Nevada 89119
   Attorney for plaintiff
8
   Reviewed by:
9
   WRIGHT FINLAY & ZAK LLP
10

11

12

13  By: _____
    Raymond Jereza, Esq.
14  5532 S. Fort Apache Road, Ste. 110
    Las Vegas, Nevada 89148
15   Attorney for defendant American Home Mortgage Servicing, Inc.,

16

17

18

19

20

21

22

23

24

25

26

27

28

4

## Exhibit I

## Exhibit I

## Exhibit I

| Search Results  Print |
|---|

You searched under: **Parcel Number** for: **177-32-418-055** with the document types of: **ALL DOCUMENTS** between: **1/1/1900** and **6/19/2019**

**Records found: 35**

|  |  |  |  |  |  |  | Refresh | |  |
|---|---|---|---|---|---|---|---|---|

| First Party Name | First Cross Party Name | Instrument # | Document Type | Modifier | Record Date | Parcel # | Remarks | Total Value |
|---|---|---|---|---|---|---|---|---|
| KB HOME NEVADA INC | KB HOME NEVADA INC | 200308130002251 | NOTICE | Completion | 8/13/2003 1:58:56 PM | 177-32-418-055 | | |
| KB HOME NEVADA INC | LEMUS, VICTOR M | 200308130002252 | DEED | | 8/13/2003 1:58:56 PM | 177-32-418-055 | | 257947.0000 |
| LEMUS, VICTOR M | BANK ONE NA | 200308130002253 | DEED OF TRUST | | 8/13/2003 1:58:56 PM | 177-32-418-055 | | |
| LEMUS, VICTOR M | WELLS FARGO BANK NA | 200502280000171 | DEED OF TRUST | | 2/28/2005 7:27:44 AM | 177-32-418-055 | | |
| LEMUS, VICTOR M | FIRST GUARANTY FINANCIAL CORPORATION | 200604280005627 | DEED OF TRUST | | 4/28/2006 2:41:02 PM | 177-32-418-055 | | |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | LEMUS, VICTOR M | 200605150003332 | SUBSTITUTION/RECONVEYANCE | | 5/15/2006 1:21:53 PM | 177-32-418-055 | | |
| LEMUS, VICTOR M | AHMSI DEFAULT SERVICES INC | 200805070000670 | DEFAULT | | 5/7/2008 10:08:57 AM | 177-32-418-055 | | |
| AMERICAN HOME MORTGAGE SERVICING INC | AHMSI DEFAULT SERVICES INC | 200808080001438 | SUBSTITUTION | TRUSTEE | 8/8/2008 10:28:56 AM | 177-32-418-055 | | |
| LEMUS, VICTOR M | AHMSI DEFAULT SERVICES INC | 200808080001439 | NOTICE OF TRUSTEE SALE | | 8/8/2008 10:28:56 AM | 177-32-418-055 | | |
| AHMSI DEFAULT SERVICES INC | AMERICAN HOME MORTGAGE SERVICING INC | 200809100001432 | TRUSTEE DEED | | 9/10/2008 10:27:41 AM | 177-32-418-055 | | 342156.0100 |
| AMERICAN HOME MTGE SRVCING INC | SOUTHERN HIGHLANDS COMMUNITY ASSOCIATION HOA | 200901230002914 | LIEN | | 1/23/2009 1:13:17 PM | 177-32-418-055 | | |
| AMERICAN HOME MORTGAGE SERVICING INC | LEMUS, VICTOR M | 200902180004569 | RECONVEYANCE | | 2/18/2009 3:01:04 PM | 177-32-418-055 | | |
| LEMUS, VICTOR M | MOLINA, OSCAR G JR | 200903050000353 | DEED | | 3/5/2009 8:06:41 AM | 177-32-418-055 | | 342156.0100 |
| | | 200903120001703 | LIEN | | | 177-32-418-055 | | |

Refresh |

| First Party Name | First Cross Party Name | Instrument # | Document Type | Modifier | Record Date | Parcel # | Remarks | Total Value |
|---|---|---|---|---|---|---|---|---|
| AMERICAN HOME MTGE SRVCING INC | CLARK COUNTY WATER RECLAMATION DISTRICT | | | | 3/12/2009 10:30:57 AM | 177-32-418-055 | | |
| AMERICAN HOME MORTGAGE SERVICING | MOLINA, OSCAR G | 200903240003097 | DEED | | 3/24/2009 2:14:56 PM | 177-32-418-055 | | |
| SOUTHERN HIGHLANDS COMMUNITY ASSOCIATION | AMERICAN HOME MTGE SRVCING INC | 200905040002960 | LIEN | Release(RL) | 5/4/2009 1:28:06 PM | 177-32-418-055 | RELEASE OF NOTICE DELINQUENT ASSESSMENT LIEN | |
| CLARK COUNTY WATER RECLAMATION DISTRICT | AMERICAN HOME MTGE SRVCING INC | 200906010004866 | LIEN | Release(RL) | 6/1/2009 11:53:32 AM | 177-32-418-055 | | |
| MOLINA, OSCAR | SOUTHERN HIGHLANDS COMMUNITY ASSOCIATION HOA | 200911170001862 | LIEN | | 11/17/2009 11:43:56 AM | 177-32-418-055 | | 0.0000 |
| SOUTHERN HIGHLANDS COMMUNITY ASSOCIATION | MOLINA, OSCAR | 201002220000766 | LIEN | RELEASE | 2/22/2010 9:33:20 AM | 177-32-418-055 | | 0.0000 |
| MOLINA, OSCAR G | AMERICAN HOME MORTGAGE SERVICING INC | 201009230005339 | LIS PENDENS | | 9/23/2010 4:52:30 PM | 177-32-418-055 | | 0.0000 |
| MOLINA, OSCAR | SOUTHERN HIGHLANDS COMMUNITY ASSOCIATION | 201101270003282 | LIEN | | 1/27/2011 9:33:20 AM | 177-32-418-055 | | 0.0000 |
| MOLINA, OSCAR | SOUTHERN HIGHLANDS COMMUNITY ASSOCIATION | 201104200001512 | DEFAULT | | 4/20/2011 9:53:50 AM | 177-32-418-055 | | 0.0000 |
| AMERICAN HOME MORTGAGE SERVICING INC | GUILLEN, ESTELLA M | 201105310002397 | LIS PENDENS | | 5/31/2011 1:27:14 PM | 177-32-418-055 | | 0.0000 |
| MOLINA, OSCAR | ON OCTOBER 12 2011 ALESSI & KOENIG | 201109080001960 | NOTICE OF TRUSTEE SALE | | 9/8/2011 9:53:26 AM | 177-32-418-055 | | 0.0000 |
| GUILLEN, ESTELLA M ET AL | AMERICAN HOME MORTGAGE SERVICING, INC | 201111140001504 | ORDER | | 11/14/2011 9:06:18 AM | 177-32-418-055 | | 0.0000 |
| MOLINA, OSCAR G | REPUBLIC SILVER STATE DISPOSAL INC | 201112290002586 | LIEN | | 12/29/2011 1:41:15 PM | 177-32-418-055 | | 0.0000 |
| ALESSI & KOENIG LLC | 11278 TUSCOLANA ST TRUST | 201207180003167 | TRUSTEE DEED | | 7/18/2012 3:55:24 PM | 177-32-418-055 | | 152000.0000 |
| MOLINA, OSCAR G JR | AMERICAN HOME MORTGAGE SERVICING INC | 201207310002305 | JUDGMENT | ORDER | 7/31/2012 1:39:40 PM | 177-32-418-055 | | 0.0000 |

Refresh |

| First Party Name | First Cross Party Name | Instrument # | Document Type | Modifier | Record Date | Parcel # | Remarks | Total Value |
|---|---|---|---|---|---|---|---|---|
| AMERICAN HOME MORTGAGE SERVICING INC | 11278 TUSCOLANA ST TRUST | 201210030000881 | LIS PENDENS | | 10/3/2012 9:24:18 AM | 177-32-418-055 | | 0.0000 |
| ALESSI & KOENIG LLC | 11278 TUSCOLANA ST TRUST | 201212030001953 | TRUSTEE DEED | | 12/3/2012 3:22:00 PM | 177-32-418-055 | | 152000.0000 |
| CLARK COUNTY | AMERICAN HOME MTGE SRVCING INC | 201212310000541 | LIEN | RELEASE | 12/31/2012 8:35:42 AM | 177-32-418-055 | | 0.0000 |
| AMERICAN HOME MORTGAGE SERVICING INC | 11278 TUSCOLANA ST TRUST | 201405010004480 | QUIET TITLE | JUDGMENT | 5/1/2014 3:55:29 PM | 177-32-418-055 | | 0.0000 |
| RESOURCES GROUP LLC EE | BACARRO, JAMES F | 201405010004482 | DEED | | 5/1/2014 3:55:29 PM | 177-32-418-055 | TEXT IN TOP MARGIN PG 4 | 267000.0000 |
| AMERICAN HOME MTGE SRVCING INC | REPUBLIC SILVER STATE DISPOSAL INC | 201405050000669 | LIEN | | 5/5/2014 9:22:11 AM | 177-32-418-055 | | 0.0000 |
| REPUBLIC SILVER STATE DISPOSAL INC | AMERICAN HOME MTGE SRVCING INC | 201407170001943 | LIEN | RELEASE | 7/17/2014 4:19:46 PM | 177-32-418-055 | | 0.0000 |

Exhibit J

Exhibit J

Exhibit J

| | |
|---|---|
| **From:** | Natalie C. Lehman |
| **Sent:** | Tuesday, December 13, 2016 3:17 PM |
| **To:** | 'Steve Loizzi'; Jona Lepoma |
| **Cc:** | Dana J. Nitz; Lisa Cox; David Alessi |
| **Subject:** | RE: Deposit of Excess Proceeds / Homeward v. Alessi & Koenig, A-16-74410-C (LEMUS) |
| **Attachments:** | 309879.pdf |

Hi Steve,

You are correct that my client held the property as an REO at the time of the HOA foreclosure sale. Per the attached Complaint, (page 9 of the pdf), the approximately $140k already takes into account the full amount of the HOA's lien plus A&K's $6,000 in fees and costs, as the original sale price was $152,000.

I don't see a problem with my client indemnifying A&K up to the amount of the excess proceeds, however, I cannot agree to anything until I see a written Indemnity Agreement. Please let me know if you already have a form agreement or whether I should draft one and send it over.

Thanks,

**Natalie C. Lehman, Esq.**
Attorney
Licensed in Nevada, New Mexico & Texas



7785 W. Sahara Ave., Suite 200
Las Vegas, NV, 89117
(702) 475-7964 Office
(702) 946-1345 Fax

**Wright, Finlay & Zak, LLP: Your Western Regional Counsel for California, Nevada, Arizona, Washington, Oregon, Utah and New Mexico**

Confidentiality Note: The information contained in this email is privileged and confidential and is intended only for the use of the individual or entity named If the reader of this email is not the intended recipient, you are hereby notified that any distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify the sender by telephone immediately at (949) 477-5050 and arrangements will be made for the return of this material. Thank You.

**From:** Steve Loizzi [mailto:steve@nrs116.com]
**Sent:** Tuesday, December 13, 2016 3:09 PM
**To:** Natalie C. Lehman; Jona Lepoma
**Cc:** Dana J. Nitz; Lisa Cox; David Alessi
**Subject:** RE: Deposit of Excess Proceeds / Homeward v. Alessi & Koenig, A-16-74410-C (LEMUS)
**Importance:** High

Seeing as how your client was the homeowner that the HOA foreclosed upon, that would make your client the only claimant to the excess proceeds.

We can certainly settle this case before the January hearing.  What we would ask is that we be allowed fees and costs for defending this case, and that your client would agree to indemnify the firm in case some other claimant appears out of the woodwork.

Let me know your thoughts on that.

Sincerely,

Steve Loizzi, Jr., Esq.
Stakeholder
Licensed in Nevada
ALESSI & KOENIG, LLC
A Multijurisdictional Law Firm
9500 W. Flamingo, Suite 205
Las Vegas, Nevada 89147
Phone:  (702) 222-4033
Fax:     (702) 222-4043
steve@alessikoenig.com

Providing services in Nevada and California.

Please be advised that Alessi & Koenig, LLC, is a debt collector attempting to collect a debt and any information you provide will be used for that purpose.

CONFIDENTIALITY NOTICE - This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain information that is confidential or legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that you must not read or play this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender by telephone or return e-mail and delete the original transmission and its attachments without reading or saving in any manner. Thank you.

FEDERAL TAX ADVICE DISCLAIMER - We are required by U. S. Treasury Regulations to inform you that, to the extent this message includes any federal tax advice, this message is not intended or written by the sender to be used, and cannot be used, for the purpose of avoiding federal tax penalties.

---

**From:** Natalie C. Lehman [mailto:nlehman@wrightlegal.net]
**Sent:** Tuesday, December 13, 2016 2:57 PM
**To:** Jona Lepoma; Steve Loizzi; Steve Loizzi
**Cc:** Dana J. Nitz; Lisa Cox; David Alessi
**Subject:** RE: Deposit of Excess Proceeds / Homeward v. Alessi & Koenig, A-16-74410-C (LEMUS)

Thank you for your prompt response Jona. I hope to see a Notice of Deposit or Proposed Agreement soon, and hopefully before the scheduled hearing.

**Natalie C. Lehman, Esq.**
Attorney

2

Licensed in Nevada, New Mexico & Texas

 WRIGHT FINLAY & ZAK LLP
ATTORNEYS AT LAW

7785 W. Sahara Ave., Suite 200
Las Vegas, NV, 89117
(702) 475-7964 Office
(702) 946-1345 Fax

**Wright, Finlay & Zak, LLP: Your Western
Regional Counsel for California, Nevada,
Arizona, Washington, Oregon, Utah and
New Mexico**

Confidentiality Note: The information contained in this email is
privileged and confidential and is intended only for the use of the
individual or entity named If the reader of this email is not the
intended recipient, you are hereby notified that any distribution
or copy of this email is strictly prohibited. If you have received
this email in error, please notify the sender by telephone
immediately at (949) 477-5050  and arrangements will be made
for the return of this material. Thank You.

---

**From:** Jona Lepoma [mailto:jona@nrs116.com]
**Sent:** Tuesday, December 13, 2016 2:55 PM
**To:** Natalie C. Lehman; Steve Loizzi; Steve Loizzi
**Cc:** Dana J. Nitz; Lisa Cox; David Alessi
**Subject:** RE: Deposit of Excess Proceeds / Homeward v. Alessi & Koenig, A-16-74410-C (LEMUS)

Hi Natalie,

We have no issue depositing these funds whatsoever. We are actually in the process right now of collecting all of these
sorts of orders and making sure none have fallen through the cracks. Your office sort of hit us with a bunch of these
motions at once, and the orders are still coming in.

As you know, the litigation staff is down to just Steve and I, so your patience is greatly appreciated. I will direct this one
back to the front of everyone's radar, so we can get these funds where they belong.

Thanks!

**Jona L. Lepoma**
Paralegal
ALESSI & KOENIG, LLC
9500 W. Flamingo Rd. Suite 205
Las Vegas, NV 89147
Ph: 702.222.4033
Fax: 702.222.4043

*"Please be advised that Alessi & Koenig, LLC, may be acting as a debt collector attempting to collect a debt and any
information you provide will be used for that purpose."*

 *Please consider the environment before printing this email.*

---

**From:** Natalie C. Lehman [mailto:nlehman@wrightlegal.net]
**Sent:** Tuesday, December 13, 2016 2:10 PM

**To:** Steve Loizzi <steve@nrs116.com>; Steve Loizzi <steve@nrs116.com>; Jona Lepoma <jona@nrs116.com>; Jona Lepoma <jona@nrs116.com>
**Cc:** Dana J. Nitz <dnitz@wrightlegal.net>; Lisa Cox <lcox@wrightlegal.net>
**Subject:** Deposit of Excess Proceeds / Homeward v. Alessi & Koenig, A-16-74410-C (LEMUS)
**Importance:** High

Hi Steve and Jona,

Please see attached Order compelling A&K to deposit the excess proceeds of $140,674.06 with the Court in this matter.  Although the hearing on my client's Motion for Preliminary Injunction  has been reset for January 3, 2017, we could avoid such a hearing if A&K were to go ahead and deposit the proceeds. Additionally, if we could come to some agreement whereby my client, Homeward, were to accept those proceeds as the sole remaining lienholder with an interest in those proceeds, we could discuss dismissal of the above referenced action.

As you may recall, the quiet title aspect of this case has long been resolved, leaving only the matter of disbursement of excess proceeds.

Please let me know if it is your intention to comply with the Court's Order.

Kindest Regards,

**Natalie C. Lehman, Esq.**
Attorney
Licensed in Nevada, New Mexico & Texas



7785 W. Sahara Ave., Suite 200
Las Vegas, NV, 89117
(702) 475-7964 Office
(702) 946-1345 Fax

**Wright, Finlay & Zak, LLP: Your Western Regional Counsel for California, Nevada, Arizona, Washington, Oregon, Utah and New Mexico**

Confidentiality Note: The information contained in this email is privileged and confidential and is intended only for the use of the individual or entity named If the reader of this email is not the intended recipient, you are hereby notified that any distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify the sender by telephone immediately at (949) 477-5050  and arrangements will be made for the return of this material. Thank You.

---

**From:** Natalie C. Lehman
**Sent:** Thursday, December 01, 2016 9:02 AM
**To:** 'David Rothenberg'; 'steve@alessikoenig.com'; 'steve@alessikoenig.com'; 'dwilliams@dhwlawlv.com'
**Cc:** Dana J. Nitz; Lisa Cox
**Subject:** RE: Motion for Preliminary Injunction and Order Granting TRO / Homeward v. Alessi & Koenig, A-16-74410-C (LEMUS)

Greetings,

Please be advised that the Court has moved the hearing from December 6, 2016 to January 3, 2017 at 9 a.m.

Kindest Regards,

**Natalie C. Lehman, Esq.**
Attorney
Licensed in Nevada, New Mexico & Texas



7785 W. Sahara Ave., Suite 200
Las Vegas, NV, 89117
(702) 475-7964 Office
(702) 946-1345 Fax

**Wright, Finlay & Zak, LLP: Your Western Regional Counsel for California, Nevada, Arizona, Washington, Oregon, Utah and New Mexico**

Confidentiality Note: The information contained in this email is privileged and confidential and is intended only for the use of the individual or entity named If the reader of this email is not the intended recipient, you are hereby notified that any distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify the sender by telephone immediately at (949) 477-5050 and arrangements will be made for the return of this material. Thank You.

---

**From:** Natalie C. Lehman
**Sent:** Wednesday, November 30, 2016 3:41 PM
**To:** David Rothenberg; 'steve@alessikoenig.com'; 'steve@alessikoenig.com'; 'dwilliams@dhwlawlv.com'
**Cc:** Dana J. Nitz; Lisa Cox
**Subject:** Motion for Preliminary Injunction and Order Granting TRO / Homeward v. Alessi & Koenig, A-16-74410-C (LEMUS)

Greetings Counsel,

Please see the attached Correspondence, Motion, Order and Notice regarding this case. Copies of the attached will be served by personal service first thing tomorrow morning.

Please let me know if you have any questions.

Kindest Regards,

**Natalie C. Lehman, Esq.**
Attorney
Licensed in Nevada, New Mexico & Texas



7785 W. Sahara Ave., Suite 200
Las Vegas, NV, 89117
(702) 475-7964 Office
(702) 946-1345 Fax

**Wright, Finlay & Zak, LLP: Your Western**

**Regional Counsel** **for California, Nevada, Arizona, Washington, Oregon, Utah and New Mexico**

Confidentiality Note: The information contained in this email is privileged and confidential and is intended only for the use of the individual or entity named If the reader of this email is not the intended recipient, you are hereby notified that any distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify the sender by telephone immediately at (949) 477-5050  and arrangements will be made for the return of this material. Thank You.

---

---

Spam
Phish/Fraud
Not spam
Forget previous vote