WRIGHT, FINLAY & ZAK, LLP
Christina V. Miller
Nevada Bar No. 12448
Ramir M. Hernandez, Esq.
Nevada Bar No. 13146
7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117
cmiller@wrightlegal.net
rhernandez@wrightlegal.net
(702) 475-7964; Fax: (702) 946-1345
*Attorneys for Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2007-2 and the Answering Parties as defined in ECF Nos. 27 and 29*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: BK-S-16-16593-ABL |
| ALESSI & KOENIG, LLC, | Chapter:   7 |
| Debtor(s). | Adv. No. 17-01210-ABL |
| | **MOTION TO CLAIM EXCESS PROCEEDS FOR THE PROPERTY LOCATED AT 10750 RENEGADE COURT** |
| SHELLEY D. KROHN, TRUSTEE, | |
| Plaintiff, | Hearing Date:  November 10, 2020 |
| vs. | Hearing Time:  10:00 AM |
| 2010-1 CRE VENTURE LLC, a Delaware limited liability company; ABSOLUTE BEST CONCERTE, INC., a domestic corporation; ALESANDRA M. LECKIE, an individual; ALFRED T. DOLAN, JR.; ALIANTE MASTER ASSOCIATION, a domestic non-profit corporation; ALLAN L. GROMEK, an individual; AMANDA AKERS, an individual; AMERICAN GENERAL FINANCIAL SERVICES, INC.; AMERICAN SECURITY COMPANY OF NEVADA; MERIDIAS CAPITAL, INC., a domestic corporation; ANDREA ROBERTSON, an individual; ANDREW SHEALY, an individual; | |

| | |
|---|---|
| 1 | ANTHONY SWAGGERTY, an individual; |
| 2 | ANTOINETTE CLAPP, an individual; |
| | AQUA FINANCE, INC., a foreign |
| 3 | corporation; ASSET MANAGEMENT |
| | SERVICE ENTERPRISES LLC, a Nevada |
| 4 | limited liability company; AUGUSTIN |
| 5 | JIMENEZ an individual; BAC HOME |
| | LOANS SERVICING, LP FKA |
| 6 | COUNTRYWIDE HOME LOANS, LP; |
| 7 | BAC HOME LOANS SERVICING, LP; |
| | BANK OF AMERICA, N.A. SUCCESSOR |
| 8 | BY MERGER TO BAC HOME LOANS |
| | SERVICING, LP, FKA COUNTRYWIDE |
| 9 | HOME LOANS SERVICING, LP; BANK |
| 10 | OF AMERICA, N.A.; BANK OF NEW |
| | YORK MELLON FORMERLY KNOWN |
| 11 | AS BANK OF NEW YORK; BARBARA |
| | ANN DOLAN; BARFIELD ONE |
| 12 | PROPERTY MANAGEMENT, LLC, a |
| 13 | Nevada limited liability company; |
| | BAYVIEW LOAN SERVICES, LLC, a |
| 14 | foreign limited liability company; |
| 15 | BENJAMIN DONEL; BIERFASS 1, LLC; |
| | AGCOM II, LLC; RICARDO A. |
| 16 | BIERFASS; BOBBIE JO LAMMIE, an |
| 17 | individual; BOJAN NENADIC; CANYON |
| | CREST ASSOCIATION, a Nevada non- |
| 18 | profit corporation; CANYON MIST |
| | ESTATES HOMEOWNERS |
| 19 | ASSOCIATION, a Nevada nonprofit |
| | cooperative corporation without stock; |
| 20 | CAPAROLA AT SOUTHERN |
| 21 | HIGHLANDS HOMEOWNERS |
| | ASSOCIATION; CENTENNIAL POINT |
| 22 | COMMUNITY ASSOCIATION, a Nevada |
| | non-profit company; CENTEX HOME |
| 23 | EQUITY COMPANY, LLC; CHARLES E. |
| 24 | AKERS, II, an individual; CHARLOTTE |
| | A. DICKEY, an individual; CHARLOTTE |
| 25 | BARNETT, an individual; CHICAGO |
| | TITLE INSURANCE COMPANY; |
| 26 | CITIBANK (WEST); CITIBANK, N.A., |
| | AS TRUSTEE FOR BEAR STEARNS |
| 27 | ALT-A TRUST, MORTGAGE PASS- |
| | THROUGH CERTIFICATES, SERIES |
| 28 | 2006-8; CITIBANK, N.A., AS TRUSTEE |
| | FOR THE CERTIFICATEHOLDERS OF |
| | STRUCTURED ASSET MORTGAGE |
| | INVESTMENTS II INC., BEAR |

STEARNS ALT-A TRUST, MORTGAGE
PASS-THROUGH CERTIFICATES
SERIES 2006-8, a national banking
association; CITIMORTGAGE, INC.;
CITY OF HENDERSON, a domestic
governmental entity; CITY OF LAS
VEGAS, a domestic governmental entity;
CITY OF NORTH LAS VEGAS, a
domestic governmental entity; CLARA
BRAUD, an individual; CLARK COUNTY
TREASURER, TRUSTEE, a domestic
governmental entity; COLLEGIUM FUND
LLC SERIES 30, a Nevada limited liability
company; COMMUNITY
MANAGEMENT GROUP, a Nevada
corporation; COOPER CASTLE LAW
FIRM, LLP; COUNTRYWIDE BANK
FSB; COUNTRYWIDE HOME LOANS,
INC., a foreign corporation, for the benefit
of NB HOLDINGS CORPORATION;
COUNTRYWIDE HOME LOANS, INC.;
CTC REAL ESTATE SERVICES; CTX
MORTGAGE COMPANY LLC; DAVID J.
McCOY, an individual; DEBBIE
KRAEMER; DEBRA B. WEIGHTMAN,
an individual; DEBRA LEE, an individual;
DEPARTMENT OF THE TREASURY,
INTERNAL REVENUE SERVICE, a
federal governmental agency; DEUTSCHE
BANK NATIONAL TRUST COMPANY,
a foreign corporation; DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS
TRUSTEE FOR AMERIQUEST
MORTGAGE SECURITIES, INC.,
ASSET-BACKED PASS-THROUGH
CERTIFICATES, SERIES 2002-C, a
foreign corporation; DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS
TRUSTEE FOR LONG BEACH
MORTGAGE LOAN TRUST 2006-1, a
foreign corporation; DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS
TRUSTEE, IN TRUST FOR
REGISTERED HOLDERS OF LONG
BEACH MORTGAGE LOAN TRUST
2006-1, ASSET-BACKED
CERTIFICATES, SERIES 2006-1; DHI
MORTGAGE COMPANY, LTD., a foreign
limited partnership; DITECH SERVICING,

LLC, a foreign limited liability company;
DONALD G. CALDWELL, an individual;
DONNA M. HAWKINS, an individual;
DOUBLE DIAMOND RANCH MASTER
ASSOCIATION; MARIA ANDIOLA,
individual; EDUARDO ANDIOLA, an
individual; EL CAPITAN RANCH
LANDSCAPE MAINTENANCE
ASSOCIATION; EQUITY TRUST CO.
CUSTODIAN FBO DAVID HERRERA,
IRA, an unknown entity; FALCON RIDGE
COMMUNITY ASSOCIATION;
FEDERAL HOUSING FINANCE
AGENCY, as Conservator for the Federal
National Mortgage Association; FEDERAL
NATIONAL MORTGAGE
ASSOCIATION DBA FANNIE MAE, a
government sponsored entity; FEDERAL
NATIONAL MORTGAGE
ASSOCIATION; FIRST AMERICAN
TITLE COMPANY; FIRST FRANKLIN,
A DIVISION OF NATIONAL CITY
BANK; FLAMINGO RIDGE
HOMEOWNERS ASSOCIATION;
FRANKLIN AMERICAN MORTGAGE;
FREDERICK G. ROXBURY; FSB; FULL
SPECTRUM LENDING, INC.; GAHTLIN
BANKS, an individual; GEAN LOO, an
individual; GRANADA WILLOWS
TRUST #7423, NV WEST SERVICING,
LLC AS TRUSTEE; GREEN TREE
SERVICING, LLC, a foreign limited
liability company; HARLAN LEE, an
individual; HOME123 CORPORATION, a
foreign corporation; HOMEWARD
RESIDENTIAL, INC., f/k/a AMERICAN
HOME MORTGAGE SERVICING, INC.,
a Delaware corporation; HOWARD M.
HAUTALA, an individual; HSBC BANK,
USA, N.A.; HSBC MORTGAGE
SERVICES; INDIGO HOMEOWNERS
ASSOCIATION; IRIS WU, an individual;
JAMI BRINKERHOFF, an individual,
JANEEN M. FLORO, an individual; JOHN
D. GREGG, an individual; JOHN P. COLE,
an individual; JOHN S. CLAPP, an
individual; JOSEFINA CACCIOLA, an
individual; JOSEPH BIERNACKI, an
individual; JOSHUA GUST, an individual,

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION; JPMORGAN CHASE
NA; JULIA SHANDELL HAMPTON, an
individual; KAREN L. CELONE f/k/a
KAREN L. CLARK, an individual;
KAREN L. MORTIMER, an individual;
KAREN M. GROMEK, an individual;
KIMBERLY K. TAYLOR, an individual;
KINETICO QUALITY WATER
SYSTEMS; KIRANDEEP MANGAT;
KRISTIN JORDAL, AS TRUSTEE FOR
THE JBWNO REVOCABLE LIVING
TRUST, a trust; LAKE VALLEY
ESTATES ASSOCIATION; LAMAR
WEBSTER TRUSTEE, an individual on
behalf of SEVEN FALLS FAMILY
TRUST; LAS VEGAS DEVELOPMENT
GROUP, LLC, a Nevada limited-liability
company; LAS VEGAS VALLEY
WATER DISTRICT, a domestic
governmental entity; LAUNA L.
LOCASCIO, an individual; LAURA B.
FITZPATRICK, IN HER CAPACITY AS
CLARK COUNTY TREASURER;
LAURA DOUTIS, an individual;
LAWRENCE LEE, an individual; LITTON
LOAN SERVICING, LP, a Delaware
limited partnership, for GSAA HOME
EQUITY TRUST 2006-20, a foreign
limited partnership; LN MANAGEMENT
LLC SERIES 3377 MILENKO; LN
MANAGEMENT LLC SERIES 8729
AUTUMN VALLEY; LOG CABIN
MANOR HOMEOWNERS
ASSOCIATION, INC.; LONG BEACH
MORTGAGE COMPANY, a foreign
corporation; LVDG Series 113 established
under LVDG LLC A Nevada series limited
liability company; MAGNOLIA GOTERA,
an individual; MANUEL HELLER, an
individual; MARC LEEDS, an individual;
MARGARETE THEDE, an individual;
MARIA E. CALDWELL, an individual;
MARIA ELENITA RACOMA, an
individual; MARIA PATROCINO M.
EVANS AKA PAT M. EVANS, an
individual; MARIA REDOUTEY, an
individual; MARIYA ILEVA, an
individual; MARK COLLINGBOURNE,

an individual; MARY SERRA, an individual; MAUNLAD, LLC, a Nevada limited liability company; MAXWELL STEINBERG, tenant in common with VALTUS REAL ESTATE, LLC; VALTUS REAL ESTATE, LLC, tenant in common with MAXWELL STEINBERG; MELISSA JOY CRISTOMO, an individual; MICHAEL BARNETT, an individual; MICHAEL D. GAYLES, an individual; MICHAEL H. SHEALY, an individual; MICHAEL T. ELLIOTT, TRUSTEE, MICHAEL T. ELLIOTT SEPARATE PROPERTY TRUST, an individual as trustee; MICHAEL T. ELLIOTT SEPARATE PROPERTY TRUST; MIRA VISTA COMMUNITY HOMEOWNERS ASSOCIATION; MOONDANCE / SUNCHASE COMMUNITY ASSOCIATION; MYONG LEEDS, an individual; NATIONAL TITLE CO.; NATIONSTAR MORTGAGE, INC.; NATIONSTAR MORTGAGE, LLC, a foreign limited liability company; NAYCEE TOWNSEND, an individual; NEIL DYSOM; NEVADA SANDCASTLES, LLC, a Nevada limited liability company; NEWPORT COVE CONDOMINIUM UNIT-OWNERS ASSOCIATION, INC., a Nevada non-profit corporation; NIKOLETA UZUNOVA, an individual; NOESIS PROPERTY ACQUISITIONS, LLC, a Nevada limited liability company; NOOR HUSSAIN, an individual; SALMA DEAN HUSSAIN, an individual; NV WEST SERVICING, LLC, as Trustee of FARMHOUSE TRUST #5774; FARMHOUSE TRUST #5774; OCWEN LOAN SERVICING, LLC; PALMILLA HOMEOWNERS ASSOCIATION; PAMELA C. McCOY, an individual; PARK 1 AT SUMMERLINGFATE FKA QUEENSRIDGE PARK CONDOS, a Nevada non-profit corporation; PATRICIA SHERIDAN, an individual; PAUL E. CHASE, an individual; PAULETTE N. CHASE, an individual; PECOS ESTATES HOMEOWNERS ASSOCIATION, a

Nevada non-profit association; PERCIVAL G. LAMMIE, an individual; PNC FINANCIAL SERVICES GROUP, INC., a foreign corporation; QUALITY LOAN SERVICE CORPORATION, a California corporation; RANCHO LAS BRISAS MASTER HOMEOWNERS ASSOCIATION; RECONTRUST COMPANY, N.A.; REO INVESTMENT ADVISORS V LLC; REPUBLIC SERVICES, a Nevada Corporation; REPUBLIC SILVER STATE DISPOSAL, INC., dba REPUBLIC SERVICES, a Nevada corporation; RHEANNE GUEVARRA, an individual; RICHARD SALOMON, an individual; RICHARD SZUKALA, an individual; ROBERT BRINKERHOFF, an individual; ROBERT G. LECKIE, an individual; ROBERT J. SHEALY, an individual; RODNEY HOLDINGS, LLC; RONALD K. LEAVITT and SUSAN W. LEAVITT, Trustees of LEAVITT FAMILY TRUST, a trust; LEAVITT FAMILY TRUST; RONALD K. LEAVITT, an individual; ROYAL HIGHLANDS STREET AND LANDSCAPE MAINTENANCE CORPORATION, a Nevada non-profit corporation; RUPERTS COURT TRUST; SABLES, LLC; SATICOY BAY LLC SERIES 10250 SUN DUSK LANE; SATICOY BAY LLC SERIES 10777 VESTONE ST; SATICOY BAY LLC, SERIES 9387 STOCK STREET; SELECT PORTFOLIO SERVICING INC., AS SERVICING AGENT FOR HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR HOLDERS LUMINENT MORTGAGE TRUST 2006-2 TRUST FUND; SERVICELINK; SETONA HOMEOWNERS ASSOCIATION, a Nevada non-profit cooperative corporation; SEVEN FALLS FAMILY TRUST; SFR INVESTMENTS POOL 1, LLC, a Nevada limited liability company; SFR INVESTMENTS POOL 11, LLC, a Nevada limited liability company; SIMON HUME, an individual; SOUTHERN HIGHLANDS

1  COMMuNITY ASSOCIATION, a Nevada
2  non-profit cooperative corporation without
   stock; SPRINGLEAF FINANCIAL
3  SERVICES, INC. FKA AMERICAN
   GENERAL FINANCIAL SERVICES,
4  INC., a foreign corporation; STACEY
   MOORE, an individual; STAR GOLDEN
5  ENTERPRISES, LLC; STEPHANIE
6  ROXBURY, an individual; STEWARD
   FINANCIAL, INC.; SUMMERLIN
7  NORTH COMMUNITY ASSOCIATION;
   SUMMIT CANYON RESOURCES, LLC;
8  SUNSET MESA COMMUNITY
9  ASSOCIATION; SUSAN
   COLLINGBOURNE, an individual;
10 SUSAN W. LEAVITT, an individual;
   TAMARA B. RYS, an individual; TARA J.
11 BIERNACKI, an individual; TARJE
12 GRIMSTAD, an individual; TEGE
   PROPERTIES, LLC; TERRENCE
13 KRAEMER; THE BANK OF NEW YORK
14 MELLON fka THE BANK OF NEW
   YORK, AS SUCCESSOR TRUSTEE TO
15 JPMORGAN CHASE BANK, N.A., AS
   TRUSTEE FOR HOLDERS OF SAMI II
16 TRUST 2006-ARI, a foreign corporation;
17 THE BANK OF NEW YORK MELLON
   FKA THE BANK OF NEW YORK, AS
18 TRUSTEE FOR THE
   CERTIFICATEHOLDERS OF CWHEQ,
19 INC., HOME EQUITY LOAN ASSET
20 BACKED CERTIFICATES, SERIES
   2006-S8, a foreign corporation; THE
21 BANK OF NEW YORK MELLON FKA
   THE BANK OF NEW YORK, AS
22 TRUSTEE FOR THE
23 CERTIFICATEHOLDERS OF THE
   CWABS, INC., ASSET-BACKED
24 CERTIFICATES, SERIES 2006-23; THE
25 BANK OF NEW YORK MELLON
   TRUST COMPANY, NATIONAL
26 ASSOCIATION FKA THE BANK OF
   NEW YORK TRUST COMPANY, N.A.
27 AS SUCCESSOR TO JPMORGAN
28 CHASE BANK N.A. AS TRUSTEE FOR
   RAMP 2003RS2; THE BANK OF NEW
   YORK MELLON, FKA THE BANK OF
   NEW YORK AS SUCCESSOR IN
   INTEREST TO JP MORGAN CHASE

BANK NA AS TRUSTEE FOR
STRUCTURED ASSET MORTGAGE
INVESTMENTS II INC. BEAR STEARNS
ALT-A TRUST 2005-9, MORTGAGE
PASS-THROUGH CERTIFICATES,
SERIES 2005-9; THE KIM LAW FIRM;
TICOR TITLE OF NEVADA, INC.;
TOMASITO P. GUEVARRA, an
individual; TOWN CENTER ESTATES
COMMUNITY ASSOCIATION;
TRILOGY INVESTMENT
ENTERPRISES, LLC, a foreign limited
liability company; TRP FUND IV LLC, a
Nevada limited liability company; U.S.
BANK NATIONAL ASSOCIATION, AS
TRUSTEE FOR SROF-2013-S3 REMIC
TRUST I, a national banking association;
U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR THE BENEFIT OF
HARBORBIEW 2005-3 TRUST FUND;
U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR THE BENEFIT OF
HARBORVIEW 2005-16 TRUST FUND;
U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE, SUCCESSOR IN
INTEREST TO BANK OF AMERICA,
NATIONAL ASSOCIATION, AS
SUCCESSOR BY MERGER TO
LASALLE BANK, NATIONAL
ASSOCIATION AS TRUSTEE FOR
WMALT 2006-AR6, a national banking
association; U.S. BANK, N.A., a national
banking association; U.S. BANK, N.A., AS
TRUSTEE, SUCCESSOR-IN-INTEREST
TO BANK OF AMERICA, N.A. AS
TRUSTEE AS SBM TO LASALLE
BANK, N.A., AS TRUSTEE FOR
WMALT 2005-10, a national banking
association; U.S. BANK, NATIONAL
ASSOCIATION, a national banking
association; U.S. BANK, NATIONAL
ASSOCIATION, AS SUCCESSOR
TRUSTEE TO BANK OF AMERICA,
N.A., AS SUCCESSOR BY MERGER TO
LASALLE BANK, N.A., AS TRUSTEE
FOR FIRST FRANKLIN MORTGAGE
LOAN TRUST, MORTGAGE LOAN
ASSET-BACKED CERTIFICATES,
SERIES 2007-FF, a foreign corporation

U.S. BANK, NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO BANK OF AMERICA, N.A., AS SUCCESSOR TO LASALLE BANK, N.A., AS TRUSTEE FOR THE HOLDERS OF THE MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2007-FF U.S. BANK, NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO LASALLE BANK, N.A., AS TRUSTEE FOR THE HOLDERS OF THE MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2007-FF2; U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF HARBOR VIEW 2005-3 TRUST FUND, a national banking association; US BANK NATIONAL ASSOCIATION EE; VEGAS PROPERTY SERVICES, INC., a Nevada corporation; VICTOR MAURICE TOWNSEND, an individual; VISCAYA HOMEOWNERS ASSOCIATION; WATERFALL HOMEOWNERS ASSOCIATION; WELLS FARGO BANK, N.A., a national banking association; WELLS FARGO BANK, N.A., AS INDENTURE TRUSTEE FOR AMERICAN HOME MORTGAGE INVESTMENT TRUST 2004-2, a national banking association; WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY CAPITAL 1, INC. TRUST 2006-HE1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-HE1, a national banking association; WESTPARK OWNERS ASSOCIATION, a Nevada non-profit corporation; WILLIAM D. DICKEY, an individual; WILLIAM HERBERT HAMPTON, an individual; WMALT 2006-AR6 TRUST; ZBIGNIEW OLESKY, an individual; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,

Defendants.

1    Deutsche Bank National Trust Company, as Indenture Trustee for American Home

2    Mortgage Investment Trust 2007-2 ("Deutsche Bank Trust") by and through its attorneys of

3    record, Wright, Finlay & Zak, LLP, hereby files this Motion to Claim Excess Proceeds for the

4    Property Located at 10750 Renegade Court, Reno, Nevada 89511, legally described as:

5        "All that certain real property situate in the City of Reno, County of Washoe,

6        State of Nevada, described as follows:

7        Lot 11 of ARROW CREEK SUBDIVISION UNIT 20, according to the map thereof,

8        filed in the office of the County Recorder of Washoe County, State of Nevada, on June

9        29, 2001, as File No. 2570050, as Tract Map No. 3981 and amended by Certificate of

10       Amendment recorded January 8, 2002, as Document No. 2638080."

11       APN: 153-662-04 (hereinafter "the Property").

12       This Motion is based on the pleadings and papers on file with this Court, any facts

13   subject to judicial notice, any argument this Court might consider, and any evidence this Court

14   might entertain.

15       DATED this 2nd day of October, 2020.

16
                                        /s/ Ramir M. Hernandez
17                                      Christina V. Miller
                                        Nevada Bar No. 12448
18                                      Ramir M. Hernandez, Esq.
                                        Nevada Bar No. 13146
19                                      7785 W. Sahara Ave., Suite 200
                                        Las Vegas, NV 89117
20                                      *Attorneys for Deutsche Bank National Trust
21                                      *Company, as Indenture Trustee for American
                                        *Home Mortgage Investment Trust 2007-2 and
22                                      *the Answering Parties as defined in ECF
                                        *Nos. 27 and 29
23

24

25

26

27

28

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

3      Pursuant to this Court's Order entered on June 27, 2019, the Deutsche Bank Trust

4   respectfully requests that this Court enter an Order directing the disbursement of all remaining

5   surplus funds resulting from the non-judicial foreclosure sale against the Property, conducted by

6   Alessi & Koenig, LLC ("A&K"), as identified in the Court's order.   As discussed below, the

7   Deutsche Bank Trust submits that it is the only claimant entitled to receive the Excess Proceeds,

8   pursuant to NRS 116.31164(7) (the "Disbursement Statute").

9

## II. STATEMENT OF FACTS

10   **A.  The Deutsche Bank Trust's Interest in the Property**

11      1.      On December 29, 2006, a Deed of Trust was recorded against the Property,

12   identifying Alesandra M. Leckie and Robert G. Leckie as the Borrowers ("Borrowers"), naming

13   Mortgage Electronic Registration Systems (as nomine for Lender and Lender's successors and

14   assigns) ("MERS") as the beneficiary, and securing a loan in the amount of $1,500,000.00

15   ("Deed of Trust").[1]

16      2.      The Deutsche Bank Trust obtained its interest in the Property *via* a Corporate

17   Assignment of the Deed of Trust recorded on March 22, 2018.[2]

18   **B.  The HOA Foreclosure Lien Sale**

19      3.      Arrow Creek Homeowners Association (the "HOA") is the common interest

20   community that governs the Property.

21      4.      On November 9, 2010, a Notice of Delinquent Assessment (Lien) ("Notice of

22   Lien") was recorded against the Property by The Management Trust on behalf of the HOA.[3]

23      5.      On August 23, 2013, a Notice of Default and Election to Sell Under

24   Homeowners Association Lien was recorded against the Property by A&K on behalf of the

25   HOA.[4]

26   ───────────────

27   [1] A true and correct copy of the Deed of Trust recorded as Book and Instrument Number
    3481402 is attached hereto as **Exhibit A.**

28   [2] A true and correct copy of the Corporate Assignment of Deed of Trust recorded as Book and
    Instrument Number 4797905 is attached hereto as **Exhibits B**.
    [3] A true and correct copy of the Notice of Delinquent Assessment (Lien) recorded as Book and
    Instrument Number 3941199 is attached hereto as **Exhibit C.**

6.     On February 12, 2014, a Notice of Trustee's Sale was recorded against the Property by A&K on behalf of the HOA.[5]

7.     A non-judicial foreclosure sale occurred on March 20, 2014 (hereinafter, the "HOA Sale"), whereby LVDG LLC Series 180 ("LVDG") acquired its interest in the Property for $166,000.00.  A Trustee's Deed Upon Sale was recorded against the Property on March 26, 2014.[6]

8.     On July 21, 2015, LVDG transferred its interest in the Property to Thunder Properties, Inc. ("Thunder") via a Grant Deed.[7]

**C.     The State Court Quiet Title Action**

9.     On September 22, 2015, the Deutsche Bank Trust filed a Complaint against the LVDG and Thunder in the District Court, Washoe County Nevada, alleging causes of action for Quiet Title/Declaratory Relief (the "Quiet Title Complaint").[8]

10.     On April 24, 2018, Deutsche Bank Trust filed an Amended Complaint joining the HOA and adding claims for damages against same.

11.     The Deutsche Bank Trust, LVDG, HOA, and Thunder recently entered into a settlement agreement wherein LVDG, HOA, and Thunder disclaimed any interest in the excess proceeds from the foreclosure sale, including those held in this instant matter.[9]

12.     A review of the records page from the Washoe County Recorder's Office shows that there are no active liens recorded against the Property.[10]

///

///

---

[4] A true and correct copy of the Notice of Default and Election to Sell recorded as Book and Instrument Number 4272275 is attached hereto as **Exhibit D.**

[5] A true and correct copy of the Notice of Trustee's Sale recorded as Book and Instrument Number 4325576 is attached hereto as **Exhibit E.**

[6] A true and correct copy of the Trustee's Deed Upon Sale recorded as Book and Instrument Number 4338284 is attached hereto as **Exhibit F.**

[7] A true and correct copy of the Grant Deed recorded as Book and Instrument Number 4494606 is attached hereto as **Exhibit G.**

[8] A true and correct copy of the Quiet Title Complaint, filed on September 22, 2015, in Case No.: CV15-01887, is attached hereto as **Exhibit H**

[9] *See*, Decl. of Ramir M. Hernandez.

1

**D. The Bankruptcy Court Interpleader Action**

2      13.    On July 6, 2017, the Trustee in the A&K Bankruptcy filed a Complaint for

3  Interpleader to divest itself of all excess proceeds existing as of December 13, 2016, which

4  A&K had turned over to the Trustee, from each HOA lien sale the A&K conducted and which it

5  held in trust as of December 13, 2016 (hereinafter "A&K Bankruptcy Interpleader").

6      14.    In its Complaint for Interpleader, the Trustee produced an accounting of the

7  funds remaining for the properties remaining therein.[11]

8      15.    For the Subject Property, the segregated accounting the Trustee produced lists

9  $133,508.40 remaining in excess proceeds as of December 13, 2016.[12]

10     16.    On September 28, 2018, the Deutsche Bank Trust filed a Proof of Claim as to the

11  excess proceeds in the amount of $148,322.53.[13]

12     17.    On June 27, 2019, this Court entered an Order stating that the amount remaining

13  for this Property is $130,414.34, after taking into account disbursement of amounts due to the

14  Bankruptcy Trustee and the Court on a pro-rata, per property basis.[14]

15                          **III. APPLICABLE LAW**

16      NRS 116.3116 sets forth the scheme for HOA lien sales.  The Distribution Statute sets

17  forth that proceeds from a HOA lien sale shall be applied for the following purpose in the

18  following order:

19                  (1)  The reasonable expenses of sale;
20                  (2)  The reasonable expenses of securing possession before
        sale, holding, maintaining, and preparing the unit for sale,
21      including payment of taxes and other governmental charges,
        premiums on hazard and liability insurance, and, to the extent
22      provided for by the declaration, reasonable attorney's fees and
        other legal expenses incurred by the association;
23                  (3)  Satisfaction of the association's lien;
24                  (4)  Satisfaction in the order of priority of any subordinate
        claim of record; and
25                  (5)  Remittance of any excess to the unit's owner.[15]

26

27  [10] A true and correct copy of the record history webpage from the Washoe County Recorder's
    website accessed on October 2, 2020, is attached hereto as **Exhibit I**.
28  [11] *See* ECF No. 1 at 18-22.
    [12] *Id.*
    [13] *See* Proof of Claim 27.
    [14] ECF No. 481.

1

# IV. <u>ARGUMENT</u>

2

**A. <u>THE DEUTSCHE BANK TRUST IS ENTITLED TO CLAIM ALL EXCESS PROCEEDS IDENTIFIED BY THE BANKRUPTCY TRUSTEE FOR THE SUBJECT PROPERTY.</u>**

3

4

Based on the distribution formula set forth in NRS 116.31164(7), the Deutsche Bank Trust is entitled to the full amount of the Excess Proceeds for the Property.

5

6

Subsections (1) through (3) of the Distribution Statute have been satisfied. The Complaint in Interpleader acknowledges that the HOA was paid its lien in full, as well as A&K's fees and costs related to the HOA Sale, and those funds have already been removed from the proceeds resulting from the HOA Sale.[16]  No amounts for any other expenses were identified or claimed by the Bankruptcy Trustee as receivables due to A&K, i.e. property of the debtor's estate, in the Complaint in Interpleader.

7

8

9

10

11

12

Therefore, this Court must determine distribution of the Excess Proceeds pursuant to subsections (4) and (5) of the Distribution Statute only. As identified above, there are no other lienholders on the Property at this time. The only subordinate claim of interest existing at the time of the HOA Sale was the Deed of Trust. Accordingly, the Excess Proceeds must be paid to the Deed of Trust holder, the Deutsche Bank Trust, as the next claimant in line pursuant to the Distribution Statute. The Excess Proceeds are also due the Deutsche Bank Trust as the only interested party to have filed an active Proof of Claim related to the Excess Proceeds.[17]  As no other interested party named and served in this action has filed an active Proof of Claim to the Excess Proceeds, there are no other claimants permitted to receive the Excess Proceeds, pursuant to the Distribution Statute and this Court's procedural orders during the pendency of the A&K Bankruptcy Interpleader. Accordingly, the Deutsche Bank Trust submits that this Court need not consider any further distribution of the Excess Proceeds under subsections (4) and (5) of the Distribution Statute.

13

14

15

16

17

18

19

20

21

22

23

24

25

///

26

///

27

///

28

---

[15] NRS 116.31164(7).
[16] *See* ECF No. 1 at Exhibit 1.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V. <u>CONCLUSION</u>

The Deutsche Bank Trust respectfully requests that this Court distribute all remaining Excess Proceeds to the Deutsche Bank Trust.

DATED this 2nd day of October, 2020.

/s/ Ramir M. Hernandez
Christina V. Miller
Ramir M. Hernandez, Esq.
*Attorneys for Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2007-2 and the Answering Parties as defined in ECF Nos. 27 and 29*

---

[17] *See* fn. 12, *supra.*

## CERTIFICATE OF SERVICE

1.      On October 2, I served the following document(s):

**MOTION TO CLAIM EXCESS PROCEEDS FOR THE PROPERTY LOCATED AT 10750 RENEGADE COURT**

2.      I served the above-named document(s) by the following means to the persons as listed below:

(Check all that apply)

■ a.    ECF System (You must attach the "Notice of Electronic Filing", or list all persons and address and attach additional paper if necessary)

JOHN P. ALDRICH on behalf of Defendant CHAMPERY REAL ESTATE 2015, LLC
jaldrich@johnaldrichlawfirm.com, eleanor@johnaldrichlawfirm.com

CYNTHIA L ALEXANDER on behalf of Defendant FLAGSTAR BANK, FSB
calexander@dickinsonwright.com,
LV_LitDocket@dickinsonwright.com;mmangiaracina@dickinson-wright.com;jjsmith@dickinson-wright.com

JEFFREY S. ALLISON on behalf of Creditor DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR MORGAN STANLEY MORTGAGE TRUST
jallison@houser-law.com, jblanco@houser-law.com

JEFFREY S. ALLISON on behalf of Interested Party DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR MORGAN STANLEY MORTGAGE TRUST
jallison@houser-law.com, jblanco@houser-law.com

ANDREW A. BAO on behalf of Defendant DITECH SERVICING, LLC
aabao@wolfewyman.com,
jcsoquena@wolfewyman.com;idmendez@wolfewyman.com

ANDREW A. BAO on behalf of Defendant PNC FINANCIAL SERVICES GROUP, INC.
aabao@wolfewyman.com,
jcsoquena@wolfewyman.com;idmendez@wolfewyman.com

ANDREW A. BAO on behalf of Interested Party DITECH FINANCIAL, LLC FKA GREEN TREE SERVICING, LLC
aabao@wolfewyman.com,
jcsoquena@wolfewyman.com;idmendez@wolfewyman.com

MICHAEL F BOHN on behalf of Creditor ALDERLEY COURT TRUST
mbohn@bohnlawfirm.com, office@bohnlawfirm.com

MICHAEL F BOHN on behalf of Creditor PIONEER BLVD TRUST
mbohn@bohnlawfirm.com, office@bohnlawfirm.com

1    MICHAEL F BOHN on behalf of Creditor RESOURCES GROUP, LLC AS
     TRUSTEE FOR THE REBER DR TRUST
2    mbohn@bohnlawfirm.com, office@bohnlawfirm.com

3    MICHAEL F BOHN on behalf of Creditor RESOURCES GROUP, LLC AS
     TRUSTEE OF THE 5497 RIVERWOOD CT TRUST
4    mbohn@bohnlawfirm.com, office@bohnlawfirm.com

5    MICHAEL F BOHN on behalf of Creditor SATICOY BAY LLC SERIES 1915
     WINTER HILL ST
6    mbohn@bohnlawfirm.com, office@bohnlawfirm.com

7    MICHAEL F BOHN on behalf of Creditor SATICOY BAY LLC SERIES 300
     CROSSWIND
8    mbohn@bohnlawfirm.com, office@bohnlawfirm.com

9    MICHAEL F BOHN on behalf of Creditor STAICOY BAY SERIES 6808
     CORAL ROCK
10   mbohn@bohnlawfirm.com, office@bohnlawfirm.com

11   MICHAEL F BOHN on behalf of Defendant NV WEST SERVICING, LLC,
12   mbohn@bohnlawfirm.com, office@bohnlawfirm.com

13   MICHAEL F BOHN on behalf of Defendant RUPERTS COURT TRUST
     mbohn@bohnlawfirm.com, office@bohnlawfirm.com
14

15   MICHAEL F BOHN on behalf of Defendant SATICOY BAY LLC SERIES
     10250 SUN DUSK LANE
16   mbohn@bohnlawfirm.com, office@bohnlawfirm.com

17   MICHAEL F BOHN on behalf of Defendant SATICOY BAY LLC SERIES
     10777 VESTONE ST
18   mbohn@bohnlawfirm.com, office@bohnlawfirm.com

19   MICHAEL R. BROOKS on behalf of Defendant BANK OF NEW YORK
     MELLON FORMERLY KNOWN AS BANK OF NEW YORK
20   mbrooks@klnevada.com,
     bankruptcy@klnevada.com;ckishi@klnevada.com;ckishi@ecf.courtdrive.com
21

     PHILIP R. BYRNES on behalf of Defendant CITY OF LAS VEGAS
22   PBYRNES@LASVEGASNEVADA.GOV,
     ccorwin@lasvegasnevada.gov;CKELLY@LASVEGASNEVADA.GOV;KHANS
23   EN@LASVEGASNEVADA.GOV;JANDREWS@LASVEGASNEVADA.GOV

24   TARA CLARK NEWBERRY on behalf of Defendant COLLEGIUM FUND LLC
     SERIES 30
25   tnewberry@cnlawlv.com,
     nkhoury@cnlawlv.com;myecfcnlaw@gmail.com;kseckinger@cnlawlv.com;clarkt
26   r75010@notify.bestcase.com

27   JAMIE COMBS on behalf of Defendant BANK OF AMERICA, N.A.
     jamie.combs@akerman.com, akermanlas@akerman.com
28

JAMIE COMBS on behalf of Defendant DITECH SERVICING, LLC
jamie.combs@akerman.com, akermanlas@akerman.com

JAMIE COMBS on behalf of Interested Party DITECH FINANCIAL, LLC FKA
GREEN TREE SERVICING, LLC
jamie.combs@akerman.com, akermanlas@akerman.com

ROGER P. CROTEAU on behalf of Defendant LAS VEGAS DEVELOPMENT
GROUP, LLC
croteaulaw@croteaulaw.com, p.rr69688@notify.bestcase.com

ROGER P. CROTEAU on behalf of Defendant LVDG SERIES 113
ESTABLISHED UNDER LVDG LLC
croteaulaw@croteaulaw.com, p.rr69688@notify.bestcase.com

MICHAEL A DIGIACOMO on behalf of Defendant 2010-1 CRE VENTURE,
LLC
digiacomom@ballardspahr.com,
saltlakedocketclerk@ballardspahr.com;paredesr@ballardspahr.com;hartt@ballard
spahr.com

MICHAEL A DIGIACOMO on behalf of Defendant DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS TRUSTEE FOR LONG BEACH
MORTGAGE LOAN TRUST 2006-1
digiacomom@ballardspahr.com,
saltlakedocketclerk@ballardspahr.com;paredesr@ballardspahr.com;hartt@ballard
spahr.com

MICHAEL A DIGIACOMO on behalf of Defendant DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS TRUSTEE, IN TRUST FOR
REGISTERED HOLDERS OF LONG BEACH MORTGAGE LOAN TRUST
2006-1, ASSET-BACKED CERTIFICATES, SERIES 2006-1
digiacomom@ballardspahr.com,
saltlakedocketclerk@ballardspahr.com;paredesr@ballardspahr.com;hartt@ballard
spahr.com

MICHAEL A DIGIACOMO on behalf of Defendant U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF
AMERICA, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO
LASALLE BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR WMALT
2006-AR6
digiacomom@ballardspahr.com,
saltlakedocketclerk@ballardspahr.com;paredesr@ballardspahr.com;hartt@ballard
spahr.com

MICHAEL A DIGIACOMO on behalf of Defendant U.S. BANK, N.A., AS
TRUSTEE, SUCCESSOR-IN-INTEREST TO BANK OF AMERICA, N.A. AS
TRUSTEE AS SBM TO LASALLE BANK, N.A., AS TRUSTEE FOR WMALT
2005-10
digiacomom@ballardspahr.com,
saltlakedocketclerk@ballardspahr.com;paredesr@ballardspahr.com;hartt@ballard
spahr.com

MICHAEL A DIGIACOMO on behalf of Defendant U.S. BANK, NATIONAL
ASSOCIATION, AS SUCCESSOR TRUSTEE TO BANK OF AMERICA, N.A.,
AS SUCCESSOR BY MERGER TO LASALLE BANK, N.A., AS TRUSTEE
FOR FIRST FRANKLIN MORTGAGE LOAN TRUST, MORTGAGE LOAN
ASSET-BAC
digiacomom@ballardspahr.com,
saltlakedocketclerk@ballardspahr.com;paredesr@ballardspahr.com;hartt@ballard
spahr.com

CRAIG S. DUNLAP on behalf of Defendant AGCOM II, LLC
cdunlap@cdunlaplaw.com, cdunlap7@gmail.com

CRAIG S. DUNLAP on behalf of Defendant BIERFASS 1, LLC
cdunlap@cdunlaplaw.com, cdunlap7@gmail.com

CRAIG S. DUNLAP on behalf of Defendant TEGE PROPERTIES, LLC
cdunlap@cdunlaplaw.com, cdunlap7@gmail.com

CRAIG S. DUNLAP on behalf of Defendant RICARDO A. BIERFASS
cdunlap@cdunlaplaw.com, cdunlap7@gmail.com

DIANA S. EBRON on behalf of Defendant SFR INVESTMENTS POOL 1, LLC
diana@kgelegal.com,
mike@kgelegal.com;howard@kgelegal.com;jackie@kgelegal.com;staff@kgelega
l.com;tomas@kgelegal.com;alex@kgelegal.com;chantel@kgelegal.com;caryn@k
gelegal.com;jason@kgelegal.com;candifay@kgelegal.com

DIANA S. EBRON on behalf of Defendant SFR INVESTMENTS POOL 11,
LLC
diana@kgelegal.com,
mike@kgelegal.com;howard@kgelegal.com;jackie@kgelegal.com;staff@kgelega
l.com;tomas@kgelegal.com;alex@kgelegal.com;chantel@kgelegal.com;caryn@k
gelegal.com;jason@kgelegal.com;candifay@kgelegal.com

JOSEPH P. GARIN on behalf of Defendant FALCON RIDGE COMMUNITY
ASSOCIATION
losuna@lipsonneilson.com;aochoa@lipsonneilson.com;jcerezo@lipsonneilson.co
m

REX D. GARNER on behalf of Defendant BANK OF AMERICA, N.A.
rex.garner@akerman.com, AkermanLAS@akerman.com

PHILIP S. GERSON on behalf of Defendant NEVADA SANDCASTLES, LLC
Philip@gersonnvlaw.com

PHILIP S. GERSON on behalf of Defendant TRP FUND IV LLC
Philip@gersonnvlaw.com

PHILIP S. GERSON on behalf of Defendant VEGAS PROPERTY SERVICES,
INC.
Philip@gersonnvlaw.com

PHILIP S. GERSON on behalf of Defendant GAHTLIN BANKS
Philip@gersonnvlaw.com

PHILIP S. GERSON on behalf of Defendant MARIYA ILEVA
Philip@gersonnvlaw.com

PHILIP S. GERSON on behalf of Defendant NIKOLETA UZUNOVA
Philip@gersonnvlaw.com

JACQUELINE A GILBERT on behalf of Defendant SFR INVESTMENTS
POOL 1, LLC
jackie@kgelegal.com,
mike@kgelegal.com;staff@kgelegal.com;candifay@kgelegal.com

BLAKELEY E. GRIFFITH on behalf of Defendant BANK OF NEW YORK
MELLON FORMERLY KNOWN AS BANK OF NEW YORK
bgriffith@swlaw.com,
docket_las@swlaw.com;gkim@swlaw.com;jmath@swlaw.com;jstevenson@swla
w.com

BLAKELEY E. GRIFFITH on behalf of Defendant WELLS FARGO BANK,
N.A.
bgriffith@swlaw.com,
docket_las@swlaw.com;gkim@swlaw.com;jmath@swlaw.com;jstevenson@swla
w.com

BLAKELEY E. GRIFFITH on behalf of Interested Party THE BANK OF NEW
YORK MELLON, FKA THE BANK OF NEW YORK AS SUCCESSOR IN
INTEREST TO JP MORGAN CHASE BANK N.A. AS TRUSTEE FOR
STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. BEAR
STEARNS ALT-A TRUST 2005 -
bgriffith@swlaw.com,
docket_las@swlaw.com;gkim@swlaw.com;jmath@swlaw.com;jstevenson@swla
w.com

JEFFREY R. HALL on behalf of Defendant CHAMPERY REAL ESTATE 2015,
LLC
jhall@hutchlegal.com, bbenitez@hutchlegal.com

RAMIR M. HERNANDEZ on behalf of Defendant BANK OF AMERICA, N.A.
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant BANK OF AMERICA, N.A.
SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant CITIBANK, N.A., AS
TRUSTEE FOR BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 2006-8
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant CITIBANK, N.A., AS
TRUSTEE FOR THE CERTIFICATEHOLDERS OF STRUCTURED ASSET
MORTGAGE INVESTMENTS II INC., BEAR STEARNS ALT-A TRUST,
MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-8
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant DEUTSCHE BANK
NATIONAL TRUST COMPANY
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant DEUTSCHE BANK TRUST
COMPANY AMERICAS
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant FEDERAL NATIONAL
MORTGAGE ASSOCIATION
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant HOMEWARD
RESIDENTIAL, INC.
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant LITTON LOAN
SERVICING, LP
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant NATIONSTAR
MORTGAGE, LLC
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant OCWEN LOAN
SERVICING, LLC
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant SPRINGLEAF FINANCIAL
SERVICES, INC.
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant U.S. BANK NATIONAL
ASSOCIATION
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF
AMERICA, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO
LASALLE BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR WMALT
2006-AR6
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant U.S. BANK, NATIONAL
ASSOCIATION, AS SUCCESSOR TRUSTEE TO BANK OF AMERICA, N.A.,
AS SUCCESSOR TO LASALLE BANK, N.A., AS TRUSTEE FOR THE
HOLDERS OF THE MERRILL LYNCH FIRST FRANKLIN MORTGAGE
LOAN TRUST,
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant WELLS FARGO BANK,
NATIONAL ASSOCATION
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Defendant WELLS FARGO BANK,
NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY
CAPITAL 1, INC. TRUST 2006-HE1, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-HE1
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Interested Party CHRISTIANA TRUST,
A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN
ITS INDIVIDUAL CAPACITY, BUT AS TRUSTEE OF ARLP TRUST 5
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Interested Party DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS TRUSTEE FOR FREMONT HOME
LOAN TRUST 2005-2, ASSET-BACKED CERTIFICATES
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Interested Party U.S. BANK N.A., AS
TRUSTEE, FOR MASTR ADJUSTABLE RATE MORTGAGES TRUST
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

RAMIR M. HERNANDEZ on behalf of Interested Party U.S. BANK, N.A., AS
SUCCESSOR TRUSTEE TO BANK OF AMERICA, N.A., AS SUCCESSOR
TO LASALLE BANK, N.A., AS TRUSTEE FOR THE HOLDERS OF THE
MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST
rhernandez@wrightlegal.net, jcraig@wrightlegal.net;nvbkfiling@wrightlegal.net

NATHAN G. KANUTE on behalf of Defendant WELLS FARGO BANK, N.A.
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party BANK OF AMERICA,
N.A.
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party DEUTSCHE BANK
NATIONAL TRUST COMPANY AS TRUSTEE FOR FIRST FRANKLIN
MORTGAGE LOAN TRUST
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party FEDERAL HOME LOAN
MORTGAGE CORPORATION
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swlaw.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party HSBC BANK USA, N.A.
AS TRUSTEE FOR NOMURA ASSET ACCEPTANCE CORPORATION,
MORTGAGE PASSTHROUGH CERTIFICATES, SERIES 2006-AR3 aka
HSBC BANK USA, NATION AS TRUSTEE FOR NAAC 2006-AR3
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party HSBC BANK USA,
NATIONAL ASSOCIAITON, AS TRUSTEE FOR MERRILL LYNCH
ALTERNATIVE NOTE ASSET TRUST, SERIES 2007-A2
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party HSBC BANK USA,
NATIONAL ASSOCIAITON, AS TRUSTEE FOR NOMURA ASSET
ACCEPTANCE CORPORATION MORTGAGE PASS THROUGH
CERTIFICATES, SERIES 2005-AR5
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party HSBC BANK USA,
NATIONAL ASSOCIATION, AS TRUSTEE FOR WELLS FARGO ASSET
SECURITIES CORPORATION, MORTGAGE PASS-THROUGH
CERTIFICATES SERIES 2006-AR10
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party NATIONSTAR
MORTGAGE LLC DBA CHAMPION MORTGAGE COMPANY
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party THE BANK OF NEW
YORK MELLON, FKA THE BANK OF NEW YORK AS SUCCESSOR IN
INTEREST TO JP MORGAN CHASE BANK N.A. AS TRUSTEE FOR
STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. BEAR
STEARNS ALT-A TRUST 2005 -
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE FOR ADJUSTABLE RATE MORTGAGE
TRUST 2007-1, ADJUSTABLE RATE MORTGAGE-BACKED PASS
THROUGH CERTIFICATES, SERIES 2007-1
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON
MORTGAGE SECURITIES CORP., CSFB MORTGAGE PASS-THRU
CERTIFICATES, SERIES 2005-5
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party U.S. BANK, N.A., AS
TRUSTEE FOR THE HOLDERS OF THE BEAR STEARNS ASSET BACKED
SECURITIES I TRUST 2006-AC1, ASSET BACKED CERTIFICATES,
SERIES 2006-AC1
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party U.S. BANK, NATIONAL
ASSOCIATION, AS TRUSTEE FOR STRUCTURED ASSET SECURITIES
CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES
207-GEL 1
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party US BANK NATIONAL
ASSOCIATION, AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON
MORTGAGE SECURITIES CORP., CSMC MORTGAGE-BACKED PASS-
THROUGH CERTIFICATES, SERIES 2006-7
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party US BANK NATIONAL
ASSOCIATION, AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2006-5,
ASSET-BACKED CERTIFICATES SERIES 2006-5
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party WELLS FARGO
FINANCIAL NEVADA 2, INC.
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

NATHAN G. KANUTE on behalf of Interested Party WILMINGTON TRUST,
NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT
SOLELY AS TRUSTEE FOR MFRA TRUST 2015
nkanute@swlaw.com,
mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;jstevenson@swla
w.com;ljtaylor@swlaw.com

HOWARD C. KIM on behalf of Defendant SFR INVESTMENTS POOL 1, LLC
howard@kgelegal.com,
jackie@kgelegal.com;mike@kgelegal.com;candifay@kgelegal.com;staff@kgeleg
al.com;diana@kgelegal.com;alex@kgelegal.com;chantel@kgelegal.com;caryn@
kgelegal.com;jason@kgelegal.com

HOWARD C. KIM on behalf of Defendant SFR INVESTMENTS POOL 11, LLC
howard@kgelegal.com,
jackie@kgelegal.com;mike@kgelegal.com;candifay@kgelegal.com;staff@kgeleg
al.com;diana@kgelegal.com;alex@kgelegal.com;chantel@kgelegal.com;caryn@
kgelegal.com;jason@kgelegal.com

ROBERT S. LARSEN on behalf of Defendant CAPAROLA AT SOUTHERN HIGHLANDS HOMEOWNERS ASSOCIATION
rlarsen@grsm.com,
gangulo@grsm.com;wwong@grsm.com;WL_LVSupport@grsm.com;sowens@gr
sm.com;jzhao@grsm.com

NILE LEATHAM on behalf of Creditor LEVI J JONES
nleatham@klnevada.com,
ckishi@klnevada.com;bankruptcy@klnevada.com;nleatham@ecf.courtdrive.com

CASEY J NELSON on behalf of Defendant SUMMIT CANYON RESOURCES, LLC
caseynelson@wedgewood-inc.com, ntrautman@wedgewood-inc.com

DANA JONATHON NITZ on behalf of Defendant BANK OF AMERICA, N.A.
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant CITIBANK, N.A., AS TRUSTEE FOR BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-8
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST MORTGAGE SECURITIES, INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2002-C
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant DEUTSCHE BANK TRUST COMPANY AMERICAS
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant FEDERAL NATIONAL
MORTGAGE ASSOCIATION
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant HOMEWARD
RESIDENTIAL, INC.
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant LITTON LOAN
SERVICING, LP
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant NATIONSTAR
MORTGAGE, LLC
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant OCWEN LOAN
SERVICING, LLC
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant SPRINGLEAF FINANCIAL
SERVICES, INC.
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant U.S. BANK NATIONAL
ASSOCIATION
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF HARBORVIEW 2005-
16 TRUST FUND
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF
AMERICA, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO
LASALLE BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR WMALT
2006-AR6
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant U.S. BANK, N.A.
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

DANA JONATHON NITZ on behalf of Defendant U.S. BANK, N.A., AS
TRUSTEE, SUCCESSOR-IN-INTEREST TO BANK OF AMERICA, N.A. AS
TRUSTEE AS SBM TO LASALLE BANK, N.A., AS TRUSTEE FOR WMALT
2005-10
dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net

1  DANA JONATHON NITZ on behalf of Defendant U.S. BANK, NATIONAL
   ASSOCIATION, AS SUCCESSOR TRUSTEE TO BANK OF AMERICA, N.A.,
2  AS SUCCESSOR TO LASALLE BANK, N.A., AS TRUSTEE FOR THE
   HOLDERS OF THE MERRILL LYNCH FIRST FRANKLIN MORTGAGE
3  LOAN TRUST,
   dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net
4
   DANA JONATHON NITZ on behalf of Defendant WELLS FARGO BANK,
5  NATIONAL ASSOCATION
   dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net
6
   DANA JONATHON NITZ on behalf of Defendant WELLS FARGO BANK,
7  NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY
   CAPITAL 1, INC. TRUST 2006-HE1, MORTGAGE PASS-THROUGH
8  CERTIFICATES, SERIES 2006-HE1
   dnitz@wrightlegal.net, nvbkfiling@wrightlegal.net;jcraig@wrightlegal.net
9
   MATT SCHRIEVER on behalf of Defendant SUMMIT CANYON
10 RESOURCES, LLC
   mschriever@hutchlegal.com, bbenitez@hutchlegal.com
11
   JOHN T. STEFFEN on behalf of Defendant SUMMIT CANYON RESOURCES,
12 LLC
   jsteffen@hutchlegal.com
13
   ARIEL E. STERN on behalf of Defendant BANK OF AMERICA, N.A.
14 ariel.stern@akerman.com,
   Darren.brenner@akerman.com;akermanlas@akerman.com
15
   RYAN D. STIBOR on behalf of Creditor THE BANK OF NEW YORK
16 MELLON TRUST COMPANY, NA, TRUSTEE FOR RAMP MABPTC
   rstibor@zbslaw.com, nvbankruptcy@zbslaw.com
17
   RYAN D. STIBOR on behalf of Defendant THE BANK OF NEW YORK
18 MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK
   OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN
19 CHASE BANK N.A. AS TRUSTEE FOR RAMP 2003RS2
   rstibor@zbslaw.com, nvbankruptcy@zbslaw.com
20
   ACE C VAN PATTEN on behalf of Defendant BANK OF AMERICA, N.A.
21 avp@tblaw.com, nvbk@tblaw.com
22
   ACE C VAN PATTEN on behalf of Defendant BANK OF AMERICA, N.A.
23 SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP
   avp@tblaw.com, nvbk@tblaw.com
24
   ACE C VAN PATTEN on behalf of Defendant CITIBANK, N.A., AS TRUSTEE
25 FOR THE CERTIFICATEHOLDERS OF STRUCTURED ASSET MORTGAGE
   INVESTMENTS II INC., BEAR STEARNS ALT-A TRUST, MORTGAGE
26 PASS-THROUGH CERTIFICATES SERIES 2006-8
   avp@tblaw.com, nvbk@tblaw.com
27

28

ACE C VAN PATTEN on behalf of Defendant DEUTSCHE BANK NATIONAL
TRUST COMPANY
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant DEUTSCHE BANK TRUST
COMPANY AMERICAS
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant FEDERAL NATIONAL
MORTGAGE ASSOCIATION
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant HOMEWARD RESIDENTIAL,
INC.
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant LITTON LOAN SERVICING,
LP
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant NATIONSTAR MORTGAGE,
LLC
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant OCWEN LOAN SERVICING,
LLC
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant SPRINGLEAF FINANCIAL
SERVICES, INC.
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant U.S. BANK NATIONAL
ASSOCIATION
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF
AMERICA, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO
LASALLE BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR WMALT
2006-AR6
avp@tblaw.com, nvbk@tblaw.com

ACE C VAN PATTEN on behalf of Defendant WELLS FARGO BANK,
NATIONAL ASSOCATION
avp@tblaw.com, nvbk@tblaw.com

ABRAN E. VIGIL on behalf of Defendant JPMORGAN CHASE BANK,
NATIONAL ASSOCIATION
vigila@ballardspahr.com,
lvdocket@ballardspahr.com;BKTDocket_West@ballardspahr.com

1   ABRAN E. VIGIL on behalf of Defendant JPMORGAN CHASE NA
    vigila@ballardspahr.com,
2   lvdocket@ballardspahr.com;BKTDocket_West@ballardspahr.com

3   SHADD A. WADE on behalf of Defendant BANK OF NEW YORK MELLON
    FORMERLY KNOWN AS BANK OF NEW YORK
4   swade@zbslaw.com,
    shunsaker@zbslaw.com,twilson@zbslaw.com,nvbankruptcy@zbslaw.com
5
    SHADD A. WADE on behalf of Defendant THE BANK OF NEW YORK
6   MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK
    OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN
7   CHASE BANK N.A. AS TRUSTEE FOR RAMP 2003RS2
    swade@zbslaw.com,
8   shunsaker@zbslaw.com,twilson@zbslaw.com,nvbankruptcy@zbslaw.com

9   NATALIE L. WINSLOW on behalf of Defendant BANK OF AMERICA, N.A.
10  natalie.winslow@akerman.com,
    ariel.stern@akerman.com;darren.brenner@akerman.com;akermanlas@akerman.c
11  om;erin.abugow@akerman.com

12  NATALIE L. WINSLOW on behalf of Defendant NATIONSTAR MORTGAGE,
    LLC
13  natalie.winslow@akerman.com,
    ariel.stern@akerman.com;darren.brenner@akerman.com;akermanlas@akerman.c
14  om;erin.abugow@akerman.com

15  NATALIE L. WINSLOW on behalf of Defendant U.S. BANK NATIONAL
    ASSOCIATION
16  natalie.winslow@akerman.com,
    ariel.stern@akerman.com;darren.brenner@akerman.com;akermanlas@akerman.c
17  om;erin.abugow@akerman.com

18  NATALIE L. WINSLOW on behalf of Defendant U.S. BANK NATIONAL
    ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF HARBORBIEW 2005-
19  3 TRUST FUND
    natalie.winslow@akerman.com,
20  ariel.stern@akerman.com;darren.brenner@akerman.com;akermanlas@akerman.c
    om;erin.abugow@akerman.com
21
    NATALIE L. WINSLOW on behalf of Interested Party U.S. BANK N.A., AS
22  TRUSTEE FOR THE CERTIFICATEHOLDERS OF HARBORVIEW
    MORTGAGE LOAN TRUST
23  natalie.winslow@akerman.com,
    ariel.stern@akerman.com;darren.brenner@akerman.com;akermanlas@akerman.c
24  om;erin.abugow@akerman.com
25
    SHANNON C WITTENBERGER on behalf of Defendant CLARK COUNTY
26  TREASURER
    Christine.wirt@clarkcountyda.com
27

28

DONNA M. WITTIG on behalf of Defendant NATIONSTAR MORTGAGE, INC.
donna.wittig@akerman.com,
akermanlas@akerman.com;ariel.stern@akerman.com;darren.brenner@akerman.com;erin.abugow@akerman.com

MICHAEL B WIXOM on behalf of Defendant 2010-1 CRE VENTURE, LLC
mbw@slwlaw.com, mwarner@slwlaw.com

■ b.     United States mail, postage fully pre-paid (List persons and addresses.  Attach additional paper if necessary)

HOLLY E. CHEONG
ANDREW M. JACOBS
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NV 89169

LAURA B. FITZPATRICK IN HER CAPACITY AS CLARK COUNTY TREASURER
500 S GRAND CENTRAL PKWY
LAS VEGAS, NV 89106

RYAN E. ALEXANDER, ESQ.
3017 W CHARLESTON BLVD, SUITE 58
LAS VEGAS, NV 89102

RYAN J. WORKS, ESQ.
MCDONALD CARANO
2300 W. SAHARA AVE., STE. 1200
LAS VEGAS, NV 89102

JEROME ADELMAN
78181 BOVEE CIRCLE
PALM DESERT, CA 92211

GEAN LOO
8237 CASSIS COURT
LAS VEGAS, NV 89117

□ c.     Personal Service (List persons and addresses.  Attach additional paper if necessary)

I personally delivered the document(s) to the persons at these addresses:

_____

□     For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

□      For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

□ d.    By direct email (as opposed to through the ECF System) (List persons and email addresses. Attach additional paper if necessary)

Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

□ e.    By fax transmission (List persons and fax numbers. Attach additional paper if necessary)

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

□ f.    By messenger (List persons and addresses. Attached additional paper if necessary)

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.    (A declaration by the messenger must be attached to the Certificate of Service).

I declare under penalty of perjury that the foregoing is true and correct.

Signed on this 2nd day of October, 2020.

                         */s/ Jason Craig*
                         An employee of Wright, Finlay & Zak, LLP

# Exhibit A

# Exhibit A

# Exhibit A



DOC # 3481402
12/29/2006 01:23:11 PM
Requested By
WESTERN TITLE COMPANY
Washoe County Recorder
Kathryn L. Burke - Recorder
Fee:  $36.00    RPTT: $0.00
Page 1 of 23

Assessor's Parcel Number:
152-662-04
Return To:
American Brokers Conduit
4650 Regent Blvd., Suite 100
Irving, TX 75063-2250



Prepared By:
Debra Bayer
5250 S. Virginia Street
Suite 345
Reno, NV  89502
Recording Requested By:
American Brokers Conduit
538 Broadhollow Road
Melville, NY  11747

7505-JNN  ——— [Space Above This Line For Recording Data] ———

### DEED OF TRUST    MIN ▮▮▮▮▮7551

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated  December 26, 2006
together with all Riders to this document.  AML

(B) "Borrower" is Alesandra M. Leckie, Robert G. Leckie, wife and husband, as
~~joint tenants~~ Community Property, with the Right of Survivorship

Borrower is the trustor under this Security Instrument.
(C) "Lender" is  American Brokers Conduit

Lender is a Corporation
organized and existing under the laws of  State of New York
DOC #▮▮▮▮▮            APPL #▮▮▮▮9755
**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3029 1/01
**WITH MERS** UM51 0307

-6A(NV) (0507)
Page 1 of 15      Initials: AML
VMP Mortgage Solutions, Inc.
(800)521-7291



Lender's address is 538 Broadhollow Road, Melville, NY 11747

**(D) "Trustee"** is Western Title Company, Inc.

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument**. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated  December 26, 2006                 .
The Note states that Borrower owes Lender One Million Five Hundred Thousand and
No/100                                                                                      Dollars
(U.S. $ 1,500,000.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  January 1, 2037             .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

DOC #:            APPL #:      9755          Initials: _____

VMP®-6A(NV) (0507)              Page 2 of 15                    Form 3029  1/01

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the   County                              [Type of Recording Jurisdiction]
of   Washoe                                 [Name of Recording Jurisdiction]:
See Attached Legal Description

Parcel ID Number:                                          which currently has the address of
10750 Renegade Court                                                                    [Street]
Reno                                          [City], Nevada   89511          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

DOC  #  ▇▇▇▇▇                  APPL #  ▇▇▇▇ 9755          Initials: _A.Md A.M.f_

VMP®-6A(NV) (0507)                     Page 3 of 15                              Form 3029   1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds

DOC # ▮▮▮▮▮                    APPL # ▮▮▮▮9755                    Initials: ▮▮▮▮ ▮▮▮

for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

DOC #:███        APPL #:███9755        Initials: _AMX_ _A.f.f_

**VMP**®-6A(NV) (0507)        Page 5 of 15        Form 3029   1/01

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to

DOC #

APPL #            9755

Initials: _AM_ _A.S._

**-6A(NV)** (0507)                    Page 6 of 15                    **Form 3029  1/01**

the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position

DOC #:                        APPL #:        9755          Initials:

**-6A(NV)** (0507)                    Page 7 of 15                    **Form 3029   1/01**

in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the**

DOC #: ▮▮▮▮            APPL #: ▮▮▮▮9755

Initials: _AML_ _A.J.L_

VMP®-6A(NV) (0507)            Page 8 of 15            **Form 3029   1/01**

**Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

DOC #:▮▮▮                    APPL #:▮▮▮9755                    Initials:▮▮▮

-6A(NV) (0507)                    Page 9 of 15                    **Form 3029  1/01**

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations

DOC # ▮▮▮▮▮        APPL # ▮▮9755

-6A(NV) (0507)        Page 10 of 15        Form 3029  1/01

contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the

address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC #: ███    APPL #: ███9755    Initials: _AMS_ _AMM_

VMP®-6A(NV) (0507)    Page 12 of 15    Form 3029  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $

DOC #  ██████        APPL #: ██████9755        Initials _____

VMP®-6A(NV) (0507)        Page 13 of 15        Form 3029  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                           Alesandra M. Leckie                  -Borrower


_____          _____ (Seal)
                                           Robert G. Leckie                     -Borrower


_____ (Seal)    _____ (Seal)
                      -Borrower                                                  -Borrower


_____ (Seal)    _____ (Seal)
                      -Borrower                                                  -Borrower


_____ (Seal)    _____ (Seal)
                      -Borrower                                                  -Borrower


DOC  # ████                    APPL # ████9755

VMP®-6A(NV) (0507)             Page 14 of 15              Form 3029  1/01

**STATE OF NEVADA**
**COUNTY OF**         Washoe

This instrument was acknowledged before me on $12 \cdot 27 \cdot 06$                                                    by
Alesandra M. Leckie, Robert G. Leckie



JANINE NORVICK
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 94-1303-2 · Expires December 19, 2009

Mail Tax Statements To:
Lake Tahoe Mortgage Corp a DBA of Gordon & Assoc
660 Sierra Rose, Unit A
Reno, NV  89511

DOC #: ▮▮▮▮                APPL #: ▮▮▮▮9755                Initials: ▮▮▮▮

-6A(NV) (0507)                Page 15 of 15                Form 3029  1/01

## EXHIBIT "A"

All that certain real property situate in the City of Reno, County of Washoe, State of Nevada, described as follows:

Lot 11 of ARROWCREEK SUBDIVISION UNIT 20, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on June 29, 2001, as File No. 2570050, as Tract Map No. 3981 and amended by Certificate of Amendment recorded January 8, 2002, as Document No. 2638080.

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this  26th          day of December, 2006                                            , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to American Brokers Conduit

(the

"Lender") of the same date and covering the Property described in the Security Instrument and located at:

10750 Renegade Court, Reno, NV  89511

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in   The Deed, The Declaration of Covenants, Conditions and Restrictions

(the "Declaration"). The Property is a part of a planned unit development known as arrow creek

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

DOC  # :                                        APPL # :              9755

**MULTISTATE PUD RIDER** - Single  Family  - Fannie  Mae/Freddie  Mac **UNIFORM INSTRUMENT**

UM31  0008                    Page 1 of 3                    Initials:
-7R  (0008)              VMP MORTGAGE FORMS - (800)521-7291                    Form 3150 1/01

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

DOC # ▮▮▮▮▮        APPL # ▮▮▮▮▮▮

‑7R (0008)                        Page 2 of 3              Initials: _AMX LL_           Form 3150 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
Alesandra M. Leckie          -Borrower          Robert G. Leckie          -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                        -Borrower

DOC  #  ▮▮▮▮▮          APPL #  ▮▮▮▮▮9755

VMP®-7R (0008)          Page 3 of 3          Form 3150 1/01

# FIXED/ADJUSTABLE RATE RIDER
**(LIBOR One-Year Index (As Published In** *The Wall Street Journal*)**- Rate Caps**
**- Ten - Year Interest Only Period)**

THIS FIXED/ADJUSTABLE  RATE RIDER is made this 26th  day of  December     ,
  2006    , and is incorporated  into and shall be deemed  to amend  and supplement   the
Mortgage,  Deed  of Trust,  or Security  Deed  (the  "Security  Instrument")  of the same  date
given  by  the  undersigned   ("Borrower")  to secure  Borrower's Fixed/Adjustable   Rate Note
(the "Note") to          American  Brokers  Conduit

("Lender") of the same  date  and covering  the property  described   in the Security  Instrument
and located at:
    10750  Renegade  Court,  Reno,  NV  89511
                        [Property Address]

**THE  NOTE  PROVIDES   FOR A  CHANGE  IN BORROWER'S   FIXED
INTEREST  RATE  TO AN ADJUSTABLE   INTEREST  RATE. THE  NOTE
LIMITS THE AMOUNT  BORROWER'S   ADJUSTABLE   INTEREST   RATE
CAN  CHANGE  AT  ANY  ONE  TIME  AND  THE  MAXIMUM  RATE
BORROWER MUST PAY.**

**ADDITIONAL  COVENANTS.**  In addition  to the covenants   and agreements   made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.  ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides  for an initial  fixed interest  rate of   6.500       %. The Note also
provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change  Dates
The  initial  fixed interest  rate I will pay  will change  to an adjustable   interest  rate on the
first day of       January, 2014     , and the adjustable interest rate I will pay may change
on  that  day  every  12th  month  thereafter.   The date  on which  my initial  fixed  interest  rate
changes   to an adjustable   interest  rate,  and each  date on which  my adjustable   interest  rate
could change, is called a "Change Date."
### (B) The Index
Beginning   with  the first Change  Date,  my adjustable   interest  rate will be based   on an
Index.  The  "Index"  is  the  average   of interbank   offered   rates  for  one-year   U.S.

DOC #:▓▓▓▓               APPL #▓▓▓9755

**MULTISTATE  FIXED/ADJUSTABLE   RATE  RIDER - WSJ One-Year  LIBOR - Ten-Year
Initial  Interest  Only  Period**  - Single  Family -**Fannie  Mae Uniform  Instrument
Form 3153 2/06**
**VMP®-197R**  (0603).01
Page 1 of 4          Initials: ▓▓▓
VMP Mortgage Solutions, Inc.

dollar-denominated    deposits    in the London    market    ("LIBOR"), as    published    in <u>The Wall</u> <u>Street   Journal</u> . The most   recent   Index   figure   available    as of the date   45 days   before   each Change Date is called the "Current Index."

If the Index   is no longer    available,    the Note   Holder   will choose    a new index   that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation    of**

Before   each   Change   Date,   the Note   Holder   will calculate    my new interest   rate   by adding   Two and One Quarter                                        percentage points

(      2.250                    %) to the Current Index. The Note Holder will then round the result of this addition   to the nearest   one-eighth   of one percentage   point   (0.125%).   Subject   to the limits   stated   in Section   4(D) below,   this rounded    amount   will be my new interest   rate   until the next Change Date.

The Note Holder   will then   determine   the amount   of my monthly   payment.   For payment adjustments    occurring    before   the First Principal    and Interest   Payment    Due Date,   the amount   of my monthly   payment   will be sufficient   to repay   all accrued   interest   each month   on the unpaid   principal   balance   at the new interest   rate.   If I make   a voluntary   payment   of principal   before   the First Principal   and Interest   Payment   Due Date,   my payment   amount   for subsequent    payments    will be reduced    to the amount   necessary   to repay   all accrued   interest on the reduced   principal   balance   at the current   interest   rate.   For payment   adjustments occurring   on or after   the First Principal   and Interest   Payment   Due Date,   the amount   of my monthly   payment   will be sufficient   to repay   unpaid   principal   and interest   that I am expected to owe   in full on the Maturity   Date   at the current   interest   rate   in substantially   equal payments.

**(D) Limits   on Interest   Rate   Changes**

The interest   rate   I am required   to pay at the first Change   Date   will not be greater   than          11.500        % or less than                        2.250   %. Thereafter, my adjustable interest   rate   will never   be increased    or decreased    on any single   Change   Date   by more   than two percentage    points   from the rate   of interest   I have   been   paying   for the preceding    12 months. My interest rate will never be greater than               11.500                  %.

**(E) Effective   Date   of Changes**

My new interest   rate   will become    effective   on each   Change   Date.   I will pay the amount of my new monthly   payment   beginning   on the first monthly   payment   date   after   the Change Date until the amount of my monthly payment changes again.

**(F) Notice   of Changes**

Before   the effective   date   of any change   in my interest   rate   and/or   monthly   payment,   the Note   Holder   will deliver   or mail   to me   a notice   of such   change.   The notice   will include information   required   by law to be given   to me   and also   the title   and telephone   number   of a person who will answer any question I may have regarding the notice.

**(G) Date   of First   Principal   and Interest   Payment**

The date   of my first   payment   consisting   of both principal   and interest   on this Note   (the "First Principal   and Interest   Payment    Due Date")   shall   be that   date   which   is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until   Borrower's   initial   fixed   interest   rate   changes   to an adjustable   interest   rate under   the terms   stated   in Section   A above,   Uniform   Covenant   18 of the Security   Instrument shall read as follows:

Initials: _[signature]_

**VMP-197R**  (0603).01                        Page 2 of 4                                      **Form 3153 2/06**
DOC #: ▮▮▮▮▮▮            APPL #: ▮▮▮▮9755

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: _____

**VMP®-197R** (0603).01          Page 3 of 4          **Form 3153 2/06**

DOC #: ██████          APPL #: ██████9755

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_Alesandra m Leckie_ (Seal)
Alesandra M. Leckie        -Borrower

_Robert G Leckie_ (Seal)
Robert G. Leckie        -Borrower

_____ (Seal)
        -Borrower

_____ (Seal)
        -Borrower

_____ (Seal)
        -Borrower

_____ (Seal)
        -Borrower

_____ (Seal)
        -Borrower

_____ (Seal)
        -Borrower

VMP®-197R  (0603).01          Page 4 of 4          Form 3153 2/06

DOC #: ▮▮▮          APPL #▮▮▮9755

<u>Exhibit B</u>

<u>Exhibit B</u>

<u>Exhibit B</u>

DOC #4051144
10/19/2011 09:13:28 AM
Electronic Recording Requested By
NATIONWIDE TITLE CLEARING
Washoe County Recorder
Kathryn L. Burke – Recorder
Fee: $15.00  RPTT: $0
Page 1 of 2

I hereby affirm that this document submitted for
recording does not contain a social security number.

Signed: _____
           **VILMAREE CASTRO     VICE PRESIDENT**

**Parcel#:**
**When Recorded Mail To:**
**American Home Mortgage**
**C/O NTC 2100 Alt. 19 North**
**Palm Harbor, FL 34683**
**AHMSI L#:** ▮▮▮▮9068
**Investor: OTHER**
**Investor L#:** ▮▮▮▮9068

## CORPORATE ASSIGNMENT OF DEED OF TRUST

--- Contact American Home Mortgage Servicing, Inc., 1525 S. Beltline Rd., Coppell, TX 75019, telephone #
(469) 645-3000, which is responsible for receiving payments.
FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the
undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') AS NOMINEE
FOR AMERICAN BROKERS CONDUIT, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS
Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, sell, assign,
transfer and set over the described deed of trust together with the certain note(s) described therein together with
all interest secured thereby, all liens, and any rights due or to become due thereon to DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST MORTGAGE SECURITIES
INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2002-C, WHOSE ADDRESS IS
1761 EAST ST. ANDREW PLACE, SANTA ANA, CA 92705-4934, ITS SUCCESSORS OR ASSIGNS,
(ASSIGNEE)

Said Deed of Trust is dated 12/26/2006, made by: ALESANDRA M LECKIE AND ROBERT G LECKIE
and recorded as Instr# 3481402 or Book  Page  in the Recorder's office of WASHOE, Nevada.

**Dated this 18th day of October in the year 2011**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') AS NOMINEE FOR**
**AMERICAN BROKERS CONDUIT, ITS SUCCESSORS AND ASSIGNS**

_____
**VILMAREE CASTRO     VICE PRESIDENT**

AMSAS▮▮▮3812  MIN ▮▮▮▮▮▮▮7551 MERS PHONE 1-888-679-MERS  EFRMNV1

4051144  Page 2 of 2 – 10/19/2011 09:13:28 AM

**Parcel#:**
**AHMSI L#:** ████9068
**Investor: OTHER**
**Investor L#:** ████9068

**STATE OF FLORIDA**
**COUNTY OF PINELLAS**

The foregoing instrument was acknowledged before me on this 18th day of October in the year 2011, by
VILMAREE CASTRO as VICE PRESIDENT for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. ('MERS') AS NOMINEE FOR AMERICAN BROKERS CONDUIT, ITS SUCCESSORS AND
ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for
the purposes therein contained. He/she/they is (are) personally known to me.

**MIRANDA AVILA, NOTARY PUBLIC**
**Comm. Expires: 08/22/2014**

Notary Public State of Florida
Miranda Avila
My Commission EE019083
Expires 08/22/2014

Prepared by: E. Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

Mail Tax Statements to:  ALESANDRA LECKIE
                         10750 RENEGADE CT
                         RENO, NV 89511

AMSAS ██ 3812  MIN ████████ 7551 MERS PHONE 1-888-679-MERS  EFRMNV1

<u>Exhibit C</u>

<u>Exhibit C</u>

<u>Exhibit C</u>

**DOC # 3941199**
11/09/2010 11:40:45 AM
Requested By
ALESSI & KOENIG LLC
Washoe County Recorder
Kathryn L. Burke - Recorder
Fee: $15.00 RPTT: $0.00
Page 1 of 2

When recorded return to:

ALESSI & KOENIG, LLC
9500 W. Flamingo Rd., Suite 100
Las Vegas, Nevada 89147
Phone: (702) 222-4033

A.P.N. 152-662-04                          Trustee Sale # **23474-10750**

### NOTICE OF DELINQUENT ASSESSMENT (LIEN)

In accordance with Nevada Revised Statutes and the Association's Declaration of Covenants, Conditions and Restrictions (CC&Rs) of the official records of **Washoe** County, Nevada, **Arrow Creek Homeowners Association** HOA has a lien on the following legally described property.

The property against which the lien is imposed is commonly referred to as **10750 RENEGADE CT. , RENO, NV 89511** and more particularly legally described as: **ARROWCREEK 20 LT 11** Book N/A Page N/A in the County of **Washoe**.

The owner(s) of record as reflected on the public record as of today's date is (are): **ALESANDRA M & ROBERT G LECKIE**

The mailing address(es) is: **10750 RENEGADE CT., RENO, NV 89511**

The total amount due through today's date is: **$3,081.00**. Of this total amount **$3,006.00** represent Collection and/or Attorney fees, assessments, interest, late fees and service charges. **$75.00** represent collection costs. Note: Additional monies shall accrue under this claim at the rate of the claimant's regular monthly or special assessments, plus permissible late charges, costs of collection and interest, accruing subsequent to the date of this notice.

Date: **October 12, 2010**

By:  _____
         Mary Indalecio – Legal Assistant
         Alessi & Koenig, LLC on behalf of **Arrow Creek Homeowners Association**

State of Nevada
County of Washoe
SUBSCRIBED and SWORN before me October 12, 2010

(Seal)

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
LANI MAE U. DIAZ
Appt. No. 10-2800-1
My Appt. Expires Aug. 24, 2014

(Signature)  _____
NOTARY PUBLIC

3941199  Page 2 of 2 – 11/09/2010 11:40:45 AM

COUNTY OF CLARK
STATE OF NEVADA

On ___10·18·10___ before me, the undersigned, a Notary Public in and for said

County, personally appeared Mary Indalecio, personally known to me (or

proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed

to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their

authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity

upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
LANI MAE U. DIAZ
Appt. No. 10-2800-1
My Appt. Expires Aug. 24, 2014

Notary Public in and for said County and State

<u>Exhibit D</u>

<u>Exhibit D</u>

<u>Exhibit D</u>

**DOC # 4272275**
08/23/2013 01:19:38 PM
Requested By
ALESSI & KOENIG LLC
Washoe County Recorder
Laurence R. Burtness - Recorder
Fee: $18.00 RPTT: $0.00
Page 1 of 2

When recorded mail to:

**THE ALESSI & KOENIG, LLC**
**9500 West Flamingo Rd., Ste 205**
**Las Vegas, Nevada 89147**
**Phone: 702-222-4033**

A.P.N. 152-662-04                          Trustee Sale No. 23474-10750

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER HOMEOWNERS ASSOCIATION LIEN

**WARNING!  IF YOU FAIL TO PAY THE AMOUNT SPECIFIED IN THIS NOTICE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS IN DISPUTE!** You may have the right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account.  The sale may not be set until ninety days from the date this notice of default recorded, which appears on this notice. The amount due is **$14,605.13** as of the date of this notice and will increase until your account becomes current.  To arrange for payment to stop the foreclosure, contact: **Arrow Creek Homeowners Association**, c/o Alessi & Koenig, 9500 W. Flamingo Rd. Ste 205, Las Vegas, NV 89147, (702)222-4033.

THIS NOTICE pursuant to that certain Notice of Delinquent Assessment Lien, recorded on **November 9, 2010** as document number 3941199, of Official Records in the County of **Washoe**, State of Nevada. Owner(s): **ALESANDRA M & ROBERT G LECKIE**, of **ARROWCREEK 20 LT 11**, as per map recorded in Book **N/A**, Pages **N/A**, as shown on the Plan and Subdivision map recorded in the Maps of the County of **Washoe**, State of Nevada. PROPERTY ADDRESS: **10750 RENEGADE CT, RENO, NV 89511-4353**.  If you have any questions, you should contact an attorney. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. REMEMBER YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT Alessi & Koenig, LLC is appointed trustee agent under the above referenced lien, dated **November 9, 2010**, on behalf of **Arrow Creek Homeowners Association** to secure assessment obligations in favor of said Association, pursuant to the terms contained in the Declaration of Covenants, Conditions, and Restrictions (CC&Rs).  A default in the obligation for which said CC&Rs has occurred in that the payment(s) have not been made of homeowners assessments due from **February 28, 2010** and all subsequent assessments, late charges, interest, collection and/or attorney fees and costs.
Dated:
    AUG 1 2 2013

Huong Lam, Esq. of Alessi & Koenig, LLC on behalf of **Arrow Creek Homeowners Association**

4272275  Page 2 of 2 - 08/23/2013 01:19:38 PM

COUNTY OF CLARK
STATE OF NEVADA

On __AUG 1 2 2013__ before me, the undersigned, a Notary Public in and for said

County, personally appeared Huong Lam, personally known to me (or

proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed

to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their

authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity

upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



Notary Public in and for said County and State

NOTARY PUBLIC
HEIDI A. HAGEN
STATE OF NEVADA - COUNTY OF CLARK
MY APPOINTMENT EXP. MAY 17, 2017
No: 13-10829-1

Exhibit E

Exhibit E

Exhibit E

DOC #4325576
02/12/2014 12:48:26 PM
Electronic Recording Requested By
ALESSI & KOENIG LLC
Washoe County Recorder
Lawrence R. Burtness
Fee: $18.00  RPTT: $0
Page 1 of 2

When recorded mail to:
**Alessi & Koenig, LLC**
**9500 West Flamingo Rd., Suite 205**
**Las Vegas, NV 89147**
**Phone: 702-222-4033**

APN: 152-662-04                                              TSN 23474-10750

## NOTICE OF TRUSTEE'S SALE

WARNING!  A SALE OF YOUR PROPERTY IS IMMINENT!  UNLESS
YOU PAY THE AMOUNT SPECIFIED IN THIS NOTICE BEFORE THE
SALE DATE, YOU COULD LOSE YOUR HOME, EVEN IF THE
AMOUNT IS IN DISPUTE.  YOU MUST ACT BEFORE THE SALE DATE.
IF YOU HAVE ANY QUESTIONS, PLEASE CALL ALESSI & KOENIG
AT 702-222-4033. IF YOU NEED ASSISTANCE, PLEASE CALL THE
FORECLOSURE SECTION OF THE OMBUDSMAN'S OFFICE, NEVADA
REAL ESTATE DIVISION, AT 1-877-829-9907 IMMEDIATELY.

**NOTICE IS HEREBY GIVEN THAT:**

On March 20, 2014, Alessi & Koenig as duly appointed Trustee pursuant to a certain lien, recorded on
November 9, 2010, as instrument number 3941199, of the official records of Washoe County, Nevada, WILL
SELL THE BELOW MENTIONED PROPERTY TO THE HIGHEST BIDDER FOR LAWFUL MONEY OF
THE UNITED STATES, OR A CASHIERS CHECK at: 2:00 p.m., at the South Virginia St entrance to the
Washoe County Courthouse, 75 Court Street, Reno.

The street address and other common designation, if any, of the real property described above is purported to
be: **10750 RENEGADE CT, RENO, NV 89511-4353.** The owner of the real property is purported to be:
**ALESANDRA M & ROBERT G LECKIE**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common
designations, if any, shown herein.  Said sale will be made, without covenant or warranty, expressed or
implied, regarding title, possession or encumbrances, to pay the remaining principal sum of a note,
homeowner's assessment or other obligation secured by this lien, with interest and other sum as provided
therein; plus advances, if any, under the terms thereof and interest on such advances, plus fees, charges,
expenses, of the Trustee and trust created by said lien.  The total amount of the unpaid balance of the
obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time
of the initial publication of the Notice of Sale is **$16,616.47.**  Payment must be in made in the form of certified
funds.

Date:    JAN 29 2014

By: Huong Lam, Esq. of Alessi & Koenig LLC on behalf of Arrow Creek Homeowners Association

Case 17-01210-abl    Doc 667    Entered 10/02/20 13:34:56    Page 68 of 95

4325576  Page 2 of 2 - 02/12/2014 12:48:26 PM

COUNTY OF CLARK
STATE OF NEVADA

On _____ before me, the undersigned, a Notary Public in and for said

County, personally appeared Huong Lam, personally known to me (or

proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed

to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their

authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity

upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

FEB 0 6 2014



Notary Public in and for said County and State

NOTARY PUBLIC
HEIDI A. HAGEN
STATE OF NEVADA - COUNTY OF CLARK
MY APPOINTMENT EXP. MAY 17, 2017
No: 13-10829-1

## Exhibit F

## Exhibit F

## Exhibit F

**DOC #4338284**
03/26/2014 11:01:29 AM
Electronic Recording Requested By
ALESSI & KOENIG LLC
Washoe County Recorder
Lawrence R. Burtness
Fee: $19.00 RPTT: $680.60
Page 1 of 3

When recorded mail to and
Mail Tax Statements to:
**LVDG LLC Series 180**
**397 3rd Ave Suite A**
**Chula Vista, CA 91910**

A.P.N. No.152-662-04          TS No. 23474-10750

## TRUSTEE'S DEED UPON SALE

The Grantee (Buyer) herein was: **LVDG LLC Series 180**
The Foreclosing Beneficiary herein was: **Arrow Creek Homeowners Association**
The amount of unpaid debt together with costs: $17,677.47
The amount paid by the Grantee (Buyer) at the Trustee's Sale: **$166,000.00**
The Documentary Transfer Tax: $680.60
Property address: **10750 RENEGADE CT, RENO, NV 89511-4353**
Said property is in [    ] unincorporated area: City of RENO
Trustor (Former Owner that was foreclosed on): **ALESANDRA M & ROBERT G LECKIE**

Alessi & Koenig, LLC (herein called Trustee), as the duly appointed Trustee under that certain Notice of Delinquent Assessment Lien, recorded November 9, 2010 as instrument number 3941199, in Washoe County, does hereby grant, without warranty expressed or implied to: LVDG LLC Series 180 (Grantee), all its right, title and interest in the property legally described as: **see attached Exhibit "A"** as shown in the Office of the County Recorder of Washoe County Nevada.

**TRUSTEE STATES THAT:**
This conveyance is made pursuant to the powers conferred upon Trustee by NRS 116 et seq., and that certain Notice of Delinquent Assessment Lien, described herein. Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the office of the recorder of said county. All requirements of law regarding the mailing of copies of notices and the posting and publication of the copies of the Notice of Sale have been complied with. Said property was sold by said Trustee at public auction on **March 20, 2014** at the place indicated on the Notice of Trustee's Sale.

Huong Lam, Esq.
Signature of AUTHORIZED AGENT for Alessi & Koenig, Llc.

State of Nevada          )
County of Clark          )

SUBSCRIBED and SWORN before me **MAR 2 5 2014** by Huong Lam

WITNESS my hand and official seal.
(Seal)

NOTARY PUBLIC
HEIDI A. HAGEN
STATE OF NEVADA · COUNTY OF CLARK
MY APPOINTMENT EXP. MAY 17, 2017
No: 13-10829-1

(Signature)

4338284 Page 2 of 3 - 03/26/2014 11:01:29 AM

COUNTY OF CLARK
STATE OF NEVADA

On **MAR 2 5 2014** _____ before me, the undersigned, a Notary Public in and for said

County, personally appeared Huong Lam, personally known to me (or

proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed

to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their

authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity

upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



Notary Public in and for said County and State

NOTARY PUBLIC
HEIDI A. HAGEN
STATE OF NEVADA - COUNTY OF CLARK
MY APPOINTMENT EXP. MAY 17, 2017
No: 13-10829-1

4338284  Page 3 of 3 - 03/26/2014 11:01:29 AM

**EXHIBIT "A"**

THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE STATE OF NEVADA, COUNTY OF WASHOE, CITY OF RENO, AND DESCRIBED AS FOLLOWS:

LOT 11 OF ARROWCREEK SUBDIVISION UNIT 20, ACCORDING TO THE MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY RECORDER OF WASHOE COUNTY, STATE OF NEVADA, ON JUNE 29, 2001, AS FILE NO. 2570050, AS TRACT MAP NO. 3981 AND AMENDED BY CERTIFICATE OF AMENDEMENT RECORDED JANUARY 8, 2002, AS DOCUMENT NO. 2638080.

152-66-204

\* \* \* \* \* \* \* \*

Exhibit G

Exhibit G

Exhibit G

**DOC # 4494606**
07/22/2015 12:32:17 PM
Requested By
THUNDER PROPERTIES INC
Washoe County Recorder
Laurence R. Burtness - Recorder
Fee: $18.00 RPTT: $0.00
Page 1 of 2



THIS SPACE PROVIDED FOR RECORDER'S USE ONLY:

PARCEL NUMBER: 152-662-04
WHEN RECORDED RETURN TO:
Thunder Properties, Inc.
6360 E Sahara Ave
Las Vegas, Nevada, 89142

## GRANT DEED

THE GRANTOR(S).
- LVDG LLC Series 180, Jon Jentz, Managing Member,

for and in consideration of: One Dollar ($1.00) and other good and valuable consideration grants

to the GRANTEE(S):
- THUNDER PROPERTIES, INC, JON JENTZ, DIRECTOR, 6360 E SAHARA AVE,
  LAS VEGAS, Clark County, Nevada, 89142.
the following described real estate, situated in Reno, in the County of Washoe, State of Nevada:

(LEGAL DESCRIPTION): Lot 11 of Arrowcreek Subdivision Unit 20, according to the map thereof, filed
in the office of the County Recorder of Washoe County, State of Nevada, on June 29, 2001, as File No.
2570050, as Tract Map No. 3981 and amended by Certificate of Amendment recorded January 8, 2002, as
Document No. 2638080

Description is as it appears in Document No. 4238284, Official Records, Washoe County,
Nevada.

Property address: 10750 Renegade Ct, Reno, NV 89511-4353

**4494606  Page 2 of 2 - 07/22/2015 12:32:17 PM**

Subject to existing taxes, assessments, liens, encumbrances, covenants, conditions, restrictions, rights of way and easements of record the grantor hereby covenants with the Grantee(s) that Grantor is lawfully seized in fee simple of the above granted premises and has good right to sell and convey the same.

Tax Parcel Number: 152-662-04

Mail Tax Statements To:
THUNDER PROPERTIES, INC
6360 E SAHARA AVE
LAS VEGAS, Nevada 89162

**Grantor Signatures:**

DATED:  *July 21, 2015*

Jen Jentz, Managing Member, on behalf of
LVDG LLC Series 180
6360 E Sahara Ave
Las Vegas, Nevada, 89142

STATE OF ~~NEVADA~~ *California*, COUNTY OF ~~WASHOE~~ *San Diego*, ss:
This instrument was acknowledged before me on this *21* day of *July*, *2015* by Jen Jentz, Managing Member, on behalf of LVDG LLC Series 180.

*Hope Rose*
Notary Public
Signature of person taking acknowledgment

*Notary Public*
Title (and Rank)

My commission expires  *3-13-18*

HOPE ROSE
COMM. # 2060866
NOTARY PUBLIC-CALIFORNIA
San Diego County
My Comm. Exp. Mar. 13, 2018

# Exhibit H

# Exhibit H

# Exhibit H

F I L E D
Electronically
2015-09-22 03:24:33 PM
Jacqueline Bryant
Clerk of the Court
Transaction # 5153490 : yviloria

**1425**

WRIGHT, FINLAY & ZAK, LLP

Robin Prema Wright, Esq.

Nevada Bar No. 009296

Edgar C. Smith, Esq.

Nevada Bar No. 5506

Christopher Alan James Swift, Esq.

Nevada Bar No. 11291

7785 W. Sahara Ave., Suite 200

Las Vegas, Nevada 89117

(702) 666-0632; Fax: (702) 946-1345

esmith@wrightlegal.net

cswift@wrightlegal.net

*Attorneys for Plaintiff, Deutsche Bank National Trust Company, as Trustee for Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2002-C*

**IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA**

**IN AND FOR THE COUNTY OF WASHOE**

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST MORTGAGE SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2002-C, <br><br> Plaintiff, <br><br> vs. <br><br> LVDG LLC SERIES 180, a Nevada limited liability company; THUNDER PROPERTIES, INC., a Nevada corporation; DOE INDIVIDUALS I through X, inclusive; and ROE CORPORATIONS I through X, inclusive, <br><br> Defendants. | Case No.: <br> Dept. No.: <br><br><br> **COMPLAINT** <br><br><br> **EXEMPT FROM ARBITRATION: ACTION FOR QUIET TITLE AND DECLARATORY RELIEF** |

COMES NOW Plaintiff, Deutsche Bank National Trust Company, as Trustee for

Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2002-C,

(hereinafter "Plaintiff" or "Deutsche Bank"), by and through its attorneys of record, Dana

Jonathon Nitz, Esq. and Regina A. Habermas, Esq., of the law firm of Wright, Finlay & Zak,

1  PROPERTIES, INC.; DOE INDIVIDUALS I through X, inclusive; and ROE CORPORATIONS

2  I through X, inclusive (collectively, "Defendants").

3                                   **INTRODUCTION**

4        1.       Plaintiff is authorized to bring this action in the State of Nevada by NRS 40.430.

5        2.       The real property at issue is known as 10750 Renegade Court, Reno, Nevada

6  89511, APN: 152-662-04 (hereinafter "Property").

7                              **JURISDICTION AND VENUE**

8        3.       Venue and jurisdiction is proper in this judicial district because Defendants

9  conduct business in this district; a substantial part of the events or omissions giving rise to

10 Plaintiff's claims occurred in this district; and the property that is the subject of this action is

11 situated in this district, in Las Vegas, Washoe County, Nevada.

12                                    **PARTIES**

13       4.       Plaintiff is a national banking association chartered under the laws of the United

14 States and authorized to do business in the State of Nevada.

15       5.       Plaintiff is now and at all times relevant herein the assigned Beneficiary under the

16 Deed of Trust signed by Alesandra M. Leckie and Robert G. Leckie (hereinafter "Leckie"),

17 recorded on December 29, 2006, (hereinafter "Deed of Trust"), which encumbers the Property

18 and secures a promissory note.

19       6.       Upon information and belief, Defendant, LVDG LLC SERIES 180 (hereinafter

20 "LVDG"), is a Nevada limited liability company, licensed to do business in the State of Nevada.

21       7.       Upon information and belief, Defendant, THUNDER PROPERTIES, INC.

22 (hereinafter "Thunder Properties"), is a Nevada corporation, licensed to do business in the State

23 of Nevada. Public records show Thunder Properties is the current owner of record for the

24 Property.

25       8.       Upon information and belief, Arrow Creek Homeowners Association (hereinafter

26 the "HOA") is a Nevada non-profit corporation, licensed to do business in the State of Nevada.

27

28

9.     Upon information and belief, Alessi & Koenig, LLC (hereinafter the "HOA Trustee") is a Nevada limited liability company, and at all times relevant was doing business in the State of Nevada.

10.     Plaintiff does not know the true names, capacities or bases of liability of fictitious defendants sued as DOE INDIVIDUALS I through X, inclusive; and ROE CORPORATIONS I through X, inclusive (collectively "fictitious Defendants"). Each fictitious Defendant is in some way liable to Plaintiff or claims some rights, title, or interest in the Subject Property that is subsequent to or subject to the interests of Plaintiff, or both. Plaintiff will amend this Complaint to reflect the true names of said defendants when the same have been ascertained.

11.     Upon information and belief, HOA Trustee and one or more fictitious defendants are the agents of the HOA, and the HOA is responsible for their acts and omissions under the doctrine of respondeat superior.

## GENERAL ALLEGATIONS

12.     On or about December 29, 2006, Leckie purchased the Property.[1]

13.     Leckie financed the purchase price of the Property. The Deed of Trust executed by Leckie identified American Brokers Conduit as the Lender, Western Title Company, Inc. as the Trustee, and Mortgage Electronic Registration Systems, Inc. as nominee for Lender and Lender's successors and assigns ("MERS"), securing a loan in the amount of $1,500,000.00 (hereinafter the "Leckie Loan").[2]

14.     Public records show that on October 19, 2011, MERS, as nominee for American Brokers Conduit, its successors and assigns, assigned all beneficial interest in the Deed of Trust to Plaintiff.[3]

15.     Public records show that on November 9, 2010, a Notice of Delinquent

---

[1] A true and correct copy of the Grant, Bargain, Sale Deed recorded in the Washoe County Recorder's Office as Document Number 3481401 is attached hereto as **Exhibit 1**. All other recordings stated hereafter are recorded in the same manner.
[2] A true and correct copy of the Deed of Trust recorded as Document Number 3481402 is attached hereto as **Exhibit 2**.
[3] A true and correct copy of the Corporate Assignment of Deed of Trust recorded as Document Number 4051144 is attached hereto as **Exhibit 3**.

1  Assessment (Lien) was recorded against the Property by the HOA Trustee, on behalf of the

2  HOA.[4]

3      16.    Public records show that on August 23, 2013, a Notice of Default and Election to

4  Sell under Homeowners Association Lien was recorded against the Property by the HOA Trustee

5  on behalf of the HOA.[5]

6      17.    Public records show that on February 12, 2014, a Notice of Trustee's Sale was

7  recorded against the Property by the HOA Trustee.[6]

8      18.    Upon information and belief, a non-judicial foreclosure sale is alleged to have

9  occurred on March 20, 2014 (hereinafter the "HOA Sale"), whereby the HOA conveyed its

10  interest in the Property, if any, to LVDG for the sum of $166,000.00.

11      19.    Public records show on March 26, 2014, a Trustee's Deed Upon Sale was

12  recorded by which LVDG claimed its interest.[7]

13      20.    Public records show on July 22, 2015, a Quitclaim Deed was recorded by which

14  LVDG purported to convey its interest, if any, in the Property to Thunder Properties.[8]

15      21.    A homeowner's association sale conducted pursuant to NRS Chapter 116 must

16  comply with all notice provisions as stated in NRS 116.31162 through NRS 116.31168 and NRS

17  107.090.

18      22.    A lender or holder of a beneficial interest in a senior deed of trust, such as

19  Plaintiff and its predecessors-in-interest in the Deed of Trust, has a right to cure a delinquent

20  homeowner's association lien in order to protect its interest.

21      23.    Further, the CC&Rs require reasonable notice of delinquency to Plaintiff.

22  _____

23  [4] A true and correct copy of the Notice of Lien (HOA) recorded as Document Number 3941199 is attached hereto as **Exhibit 4**.

24  [5] A true and correct copy of the Notice of Default (HOA) recorded as Document Number 4272275 is attached hereto as **Exhibit 5**.

25  [6] A true and correct copy of the Notice of Sale (HOA) recorded as Document Number 4325576 is attached hereto as **Exhibit 6**.

26  [7] A true and correct copy of the Trustee's Deed Upon Sale recorded as Document Number 4338284 is attached hereto as **Exhibit 7**.

27  [8] A true and correct copy of the Quitclaim Deed recorded as Document Number 4494606 is

28  attached hereto as **Exhibit 8**.

24. Upon information and belief, the HOA and its agent, the HOA Trustee, did not comply with all mailing and noticing requirements stated in NRS 116.31162 through NRS 116.31168.

25. A recorded notice of default must "describe the deficiency in payment."

26. The HOA Sale occurred without notice to Plaintiff, what portion of the lien, if any, that the HOA and HOA Trustee claimed constituted a "super-priority" lien.

27. The HOA Sale occurred without notice to Plaintiff, whether the HOA was foreclosing on the "super-priority" portion of its lien, if any, or under the non-super-priority portion of the lien.

28. The HOA Sale occurred without notice to Plaintiff, of a right to cure the delinquent assessment and the super-priority lien, if any.

29. The HOA Sale violated Plaintiff's rights to due process because Plaintiff was not given proper, adequate notice and the opportunity to cure the deficiency or default in the payment of the HOA's assessments and the super-priority lien, if any.

30. The HOA Sale was an invalid sale and could not have extinguished Plaintiff's secured interest because of defects in the notices given to Plaintiff.

31. Under NRS Chapter 116, a lien under NRS 116.3116(1) can only include costs and fees that are specifically enumerated in the statute.

32. A homeowner's association may only collect as a part of the super priority lien (a) nuisance abatement charges incurred by the association pursuant to NRS 116.310312 and (b) nine months of common assessments which became due prior to the institution of an action to enforce the lien (unless Fannie Mae and Freddie Mac regulations require a shorter period of not less than six months).

33. Upon information and belief, the HOA Foreclosure Notices included improper fees and costs in the amount the HOA and HOA Trustee demanded to be paid by Leckie.

34. The attorney's fees and the costs of collecting on a homeowner's association lien cannot be included in the super-priority lien.

35. Upon information and belief, the HOA assessment lien and foreclosure notices

1    included fines, interest, late fees, dues, attorney's fees, and costs of collection that are not

2    properly included in a super-priority lien under Nevada law and that are not permissible under

3    NRS 116.3102 et seq.

4        36.    The HOA Sale is unlawful and void under NRS 116.3102 et seq.

5        37.    The HOA Sale is unlawful and void because the "opt-in" provision in NRS

6    116.3116 does not satisfy Constitutional Due Process safeguards under the 5th and 14th

7    Amendment to the United States Constitution, nor Article 1, Section 8, of the Nevada

8    Constitution, so that the statute is unconstitutional on its face.

9        38.    The HOA Sale is unlawful and void because the statutory scheme set forth in

10    NRS 116.3116, et seq. constitutes a regulatory taking of private property without adequate

11    compensation so the statute is unconstitutional on its face.

12        39.    NRS 116.31162 through NRS 116.31168 do not contain any provision requiring

13    notice of a foreclosure to the lender, beneficiary or holder of a first mortgage or deed of trust,

14    thus violating their constitutional right to due process.

15        40.    NRS Chapter 116 is unconstitutional on its face as it lacks any express right by

16    the lender, beneficiary or holder, or their respective trustees, servicers, agents, or representatives,

17    to obtain payoff information for the super-priority portion, if any, of the homeowner's

18    association lien or the express right to cure the default and protect the Deed of Trust, and it lacks

19    an express obligation for a homeowner's association or its agents to accept a tendered payoff and

20    release the super-priority portion of the lien.

21        41.    NRS Chapter 116 is unconstitutional on its face due to vagueness and ambiguity.

22        42.    The HOA Sale deprived Plaintiff of its right to due process because the

23    foreclosure notices failed to identify the super-priority amount, or to adequately describe the

24    deficiency in payment, to provide Plaintiff notice of the correct super-priority amount, or to

25    provide a reasonable opportunity for Plaintiff to protect its priority by payment to satisfy that

26    amount.

27        43.    A homeowner's association sale must be done in a commercially reasonable

28    manner.

1      44.    At the time of the HOA Sale, the amount owed on the Leckie Loan exceeded

2  $1,499,406.00.

3      45.    Upon information and belief, at the time of the HOA Sale, the fair market value of

4  the Property exceeded $1,075,000.00.

5      46.    The amount paid at the HOA Sale allegedly totaled $166,000.00.

6      47.    The HOA Sale was not commercially reasonable, and the HOA Sale not done in

7  good faith, in light of the sales price, the market value of the property, and the errors alleged

8  above.

9      48.    The HOA Sale by which LVDG took its interest was commercially unreasonable

10  if it extinguished Plaintiff's Deed of Trust.

11      49.    In the alternative, the HOA Sale was an invalid sale and could not have

12  extinguished Plaintiff's secured interest because it was not a commercially reasonable sale.

13      50.    Without providing Plaintiff notice of the correct super-priority amount and a

14  reasonable opportunity to tender payment to satisfy that amount, including the failure to set out

15  the super-priority amount and the failure to adequately describe the deficiency in payment as

16  required by Nevada law, the HOA Sale is commercially unreasonable and deprived Plaintiff of

17  its right to due process.

18      51.    The CC&Rs for the HOA provide in Article IX, Section 2 that Plaintiff's Deed of

19  Trust encumbers the Property, even in the event the HOA conducts a sale pursuant to NRS

20  116.3116 et seq.[9]

21      52.    Because the CC&Rs contain a Mortgagee Protection Clause in Article IX, Section

22  2, and because Plaintiff was not given proper notice that the HOA intended to foreclose on the

23  super-priority portion of the dues owing, Plaintiff did not know that it had to attend the HOA

24  Sale to protect its security interest.

25      53.    Because the CC&Rs contain a Mortgagee Protection Clause, and because proper

26  notice that the HOA intended to foreclose on the super-priority portion of the dues owing was

27  ———————————————

[7] A true and correct copy of the Declaration of Covenants, Conditions & Restrictions for

28  Arrowcreek is attached hereto as **Exhibit 9**.

1  not given, prospective bidders did not appear for the HOA Sale, making the HOA Sale

2  commercially unreasonable.

3      54.    LVDG, Thunder Properties, the HOA, HOA Trustee and fictitious Defendants

4  knew that Plaintiff would rely on the Mortgagee Protection Clause contained in the recorded

5  CC&Rs, and knew that Plaintiff would not know that the HOA was foreclosing on super-priority

6  amounts because of the failure of the HOA and HOA Trustee to provide such notice. Plaintiff's

7  absence from the HOA Sale allowed LVDG to appear at the HOA Sale and purchase the

8  Property for a fraction of market value, making the HOA Sale commercially unreasonable.

9      55.    LVDG, Thunder Properties, the HOA, HOA Trustee and fictitious Defendants

10  knew that prospective bidders would be less likely to attend the HOA Sale because the public at

11  large believed that Plaintiff was protected under the Mortgagee Protection Clause in the CC&Rs

12  of public record, and that the public at large did not receive notice, constructive or actual, that the

13  HOA was foreclosing on a super-priority portion of its lien because the HOA and HOA Trustee

14  improperly failed to provide such notice. The general public's belief therefore was that a buyer

15  at the HOA Sale would take title to the Property subject to Plaintiff's Deed of Trust. This

16  general belief resulted in the absence of prospective bidders at the HOA Sale, which allowed

17  LVDG to appear at the HOA Sale and purchase the Property for a fraction of market value,

18  making the HOA Sale commercially unreasonable.

19      56.    The circumstances of the HOA Sale of the Property breached the HOA's and the

20  HOA Trustee's obligations of good faith under NRS 116.1113 and their duty to act in a

21  commercially reasonable manner.

22      57.    Plaintiff is informed and believes that LVDG is a professional foreclosure sale

23  property purchaser.

24      58.    Plaintiff is informed and believes that Thunder Properties is a professional

25  foreclosure sale property purchaser.

26      59.    The circumstances of the HOA Sale of the Property and LVDG's and Thunder

27  Properties' statuses as professional property purchasers mean LVDG and Thunder Properties

28  cannot be deemed bona fide purchasers for value.

1    60.    Upon information and belief, LVDG had actual, constructive or inquiry notice of
2   Plaintiff's first Deed of Trust, which prevents LVDG from being deemed a bona fide purchaser
3   or encumbrancer for value.

4    61.    Upon information and belief, Thunder Properties had actual, constructive or
5   inquiry notice of Plaintiff's first Deed of Trust, which prevents Thunder Properties from being
6   deemed a bona fide purchaser or encumbrancer for value.

7    62.    In the event Plaintiff's interest in the Property is not reaffirmed nor restored,
8   Plaintiff suffered damages in the amount of the fair market value of the Property or the unpaid
9   balance of the Leckie Loan and Deed of Trust, at the time of the HOA Sale, whichever is greater,
10  as a proximate result of Defendants' acts and omissions.

11                            **FIRST CAUSE OF ACTION**

12      **(Quiet Title/Declaratory Relief Pursuant to NRS 30.010 et seq. and NRS 40.010 et seq.**
13                **versus LVDG, Thunder Properties and fictitious Defendants)**

14   63.    Plaintiff incorporates and re-alleges all previous paragraphs, as if fully set forth
15  herein.

16   64.    Pursuant to NRS 30.010 et seq. and NRS 40.010, this Court has the power and
17  authority to declare Plaintiff's rights and interests in the Property and to resolve Defendants'
18  adverse claims in the Property.

19   65.    Further, pursuant to NRS 30.010 et seq., this Court has the power and authority to
20  declare the rights and interests of the parties following the acts and omissions of the HOA and
21  HOA Trustee in foreclosing the Property.

22   66.    Plaintiff's Deed of Trust is a first secured interest on the Property as intended by
23  NRS 116.3116(2)(b).

24   67.    As the current beneficiary under the Deed of Trust and the lender entitled to
25  enforce the Leckie Loan, Plaintiff's interest still encumbers the Property and retains its first
26  position status in the chain of title for the Property after the HOA Sale and is superior to the
27  interest, if any, acquired by LVDG, Thunder Properties, or held or claimed by any other
28  successor in interest to either of them, for the reasons alleged herein.

68.    Upon information and belief, LVDG, Thunder Properties and the fictitious Defendants dispute Plaintiff's claims and assert priority, so that their claims are adverse to Plaintiff's claims.

69.    Upon information and belief, the HOA, the HOA Trustee and the fictitious Defendants failed to provide proper, adequate and sufficient notices required by Nevada statutes, the CC&R's and assure due process to Plaintiff, and therefore the HOA Sale is void and should be set aside or rescinded.

70.    Based on the adverse claims being asserted by the parties, Plaintiff is entitled to a judicial determination regarding the rights and interests of the respective parties to the case.

71.    For all the reasons set forth, Plaintiff is entitled to a determination from this Court, pursuant to NRS 40.010, that Plaintiff is the beneficiary of a Deed of Trust that still encumbers the Property as of the date of the court's determination, and that Plaintiff's rights under the deed of trust are superior in the chain of title to the interest of LVDG, Thunder Properties and the fictitious Defendants.

72.    In the alternative, if it is found under state law that Plaintiff's interest could have been extinguished by the HOA sale, for all the reasons set forth above and in the General Allegations, Plaintiff is entitled to a determination from this Court, pursuant to NRS 30.010 and NRS 40.010, that the HOA Sale is unlawful and void and conveyed no legitimate interest to LVDG, Thunder Properties, or any other successor in interest to either of them.

73.    Plaintiff has furthermore been required to retain counsel and is entitled to recover reasonable attorney's fees for having brought the underlying action.

## SECOND CAUSE OF ACTION

### (Preliminary and Permanent Injunctions versus LVDG, Thunder Properties and fictitious Defendants)

74.    Plaintiff incorporates by reference the allegations of all previous paragraphs, as if fully set forth herein.

75.    As set forth above, LVDG, Thunder Properties and fictitious Defendants may claim an ownership interest in the Property that is adverse to Plaintiff.

76.     Any sale or transfer of the Property, prior to a judicial determination concerning the respective rights and interests of the parties to the case, may be rendered invalid if Plaintiff's Deed of Trust still encumbers the Property in first position and was not extinguished by the HOA Sale.

77.     Plaintiff has a reasonable probability of success on the merits of the Complaint, for which compensatory damages will not adequately compensate Plaintiff for the irreparable harm of the loss of title to a bona fide purchaser or loss of the first position priority status secured by the Property.

78.     Plaintiff has no adequate remedy at law due to the uniqueness of the Property involved in the case.

79.     Plaintiff is entitled to a preliminary and permanent injunction prohibiting Thunder Properties, its successors, assigns, and agents from conducting a sale, transfer or encumbrance of the Property if Thunder Properties or its transferee claims or will claim the sale, transfer or encumbrance to be made is free and clear of Plaintiff's Deed of Trust.

80.     Plaintiff is entitled to a preliminary injunction requiring Thunder Properties to pay all taxes, insurance and homeowner's association dues during the pendency of this action.

81.     Plaintiff is entitled to a preliminary injunction requiring Thunder Properties to segregate and deposit all rents with the Court or a Court-approved trust account over which Thunder Properties has no control during the pendency of this action.

82.     Plaintiff is entitled to a mandatory injunction that the HOA and HOA Trustee be compelled to deliver to the Clerk of the Court and deposit all funds collected at the HOA Sale pending determination by the Court of the validity of the sale and the respective rights of the parties to the sale proceeds.

83.     Plaintiff has been required to retain counsel to prosecute this action and is entitled to recover reasonable attorney's fees to prosecute this action.

### THIRD CAUSE OF ACTION

**(Unjust Enrichment versus LVDG, Thunder Properties and fictitious Defendants)**

84.     Plaintiff incorporates and re-alleges all previous paragraphs, as if fully set forth

1 | herein.

2      85.    Plaintiff has been deprived of the benefit of its secured deed of trust by the actions

3 | of LVDG, Thunder Properties, the HOA, the HOA Trustee and fictitious Defendants.

4      86.    LVDG, Thunder Properties, the HOA, the HOA Trustee and fictitious Defendants

5 | have benefitted from the unlawful HOA Sale and nature of the real property.

6      87.    LVDG, Thunder Properties, the HOA, the HOA Trustee and fictitious Defendants

7 | have benefitted from Plaintiff's payment of taxes, insurance or homeowner's association

8 | assessments since the time of the HOA Sale.

9      88.    Should Plaintiff's Complaint be successful in quieting title against LVDG,

10 | Thunder Properties, the HOA, and HOA Trustee and setting aside the HOA Sale, LVDG,

11 | Thunder Properties, the HOA, the HOA Trustee and fictitious Defendants will have been

12 | unjustly enriched by the HOA Sale and usage of the Property.

13      89.    Plaintiff will have suffered damages if LVDG, Thunder Properties, the HOA, the

14 | HOA Trustee and fictitious Defendants are allowed to retain their interests in the Property and

15 | the funds received from the HOA Sale.

16      90.    Plaintiff will have suffered damages if LVDG, Thunder Properties, the HOA, the

17 | HOA Trustee and fictitious Defendants are allowed to retain their interests in the Property and

18 | Plaintiff's payment of taxes, insurance or homeowner's association assessments since the time of

19 | the HOA Sale.

20      91.    Plaintiff is entitled to general and special damages in excess of $10,000.00.

21      92.    Plaintiff has furthermore been required to retain counsel and is entitled to recover

22 | reasonable attorney's fees for having brought the underlying action.

23 | **FOURTH CAUSE OF ACTION**

24 | **(Tortious Interference with Contract versus LVDG, Thunder Properties and fictitious**

25 | **Defendants)**

26      93.    Plaintiff incorporates by reference the allegations of all previous paragraphs, as if

27 | fully set forth herein.

28      94.    At all times mentioned, Plaintiff had a valid and existing contract with Leckie, the

1  Borrowers, and the contract terms included in the power of sale in the Deed of Trust.

2      **95.**    The Deed of Trust evidencing the contract was and is a matter of public record,
3  and therefore known to LVDG, Thunder Properties, the HOA and HOA Trustee.

4      **96.**    LVDG, Thunder Properties, the HOA, the HOA Trustee and fictitious Defendants
5  engaged in acts intended or designed to disrupt the contractual relationship between Plaintiff and
6  the Borrowers by ostensibly electing to enforce the "super priority" rights of the Association
7  through a power of sale, notwithstanding: (i) the covenants contained in the CC&R's; (ii) no
8  notice to Plaintiff or its predecessors in interest of the intent to do so; (iii) no notice to Plaintiff or
9  its predecessors in interest of the foreclosure proceedings; and (iv) failing to provide an
10  opportunity to cure to Plaintiff before the sale.

11      **97.**    At all times LVDG, Thunder Properties, the HOA, the HOA Trustee and fictitious
12  Defendants could have elected to honor the covenant in its CC&R's evidenced by the Mortgagee
13  Protection Clause in Article IX, Section 2 and chosen not to enforce the super priority portion of
14  its lien, or to do so only after ensuring Plaintiff had notice and was prepared to waive its rights to
15  foreclose under the Deed of Trust.

16      **98.**    Plaintiff's contractual rights to enforce the power of sale have been disrupted and
17  frustrated through Defendants' actions.

18      **99.**    As an actual and proximate result of the Defendants' actions and inactions,
19  Plaintiff has sustained damages in excess of Ten Thousand Dollars ($10,000).

20      **100.**    As an actual and proximate result of the Defendants' actions and inactions,
21  Plaintiff has sustained special damages, in the form of costs and attorney's fees, in an amount not
22  yet liquidated, to defend its rights under the Deed of Trust in this action.

23  **PRAYER**

24      Wherefore, Plaintiff prays for judgment against the Defendants, jointly and severally, as
25  follows:

26      1.    For a declaration and determination that Plaintiff's interest is secured against the
27          Property, and that Plaintiff's first Deed of Trust was not extinguished by the HOA
28          Sale;

2.    For a declaration and determination that Plaintiff's interest is superior to the interest of LVDG, Thunder Properties and all fictitious Defendants;

3.    For a declaration and determination that all transfers of title to the Property are and were subject to Plaintiff's Deed of Trust, and that the Deed of Trust continues to encumber title in senior position in the chain of title;

4.    For a declaration and determination that the HOA Sale was invalid to the extent it purports to convey the Property free and clear to LVDG;

5.    In the alternative, for a declaration and determination that the HOA Sale was invalid and conveyed no right, title or interest to LVDG, Thunder Properties, or their encumbrancers, successors and assigns;

6.    For a preliminary and permanent injunction that Thunder Properties, its successors, assigns, and agents are prohibited from conducting a sale or transfer of the Property, or from encumbering the title to the Property;

7.    For a preliminary injunction that Thunder Properties, its successors, assigns, and agents pay all taxes, insurance and homeowner's association dues during the pendency of this action;

8.    For a preliminary injunction that Thunder Properties, its successors, assigns, and agents be required to segregate and deposit all rents with the Court or a Court-approved trust account over which Thunder Properties has no control during the pendency of this action.

9.    For a mandatory injunction that the HOA and/or the HOA Trustee be compelled to deliver to the Clerk of the Court and deposit all funds collected at the HOA Sale pending determination by the Court of the validity of the sale and the respective rights of the parties to the sale proceeds;

10.    If it is determined that Plaintiff's Deed of Trust has been extinguished by the HOA Sale, for special damages in the amount of the fair market value of the Property or the unpaid balance of the Leckie Loan and Deed of Trust, at the time of the HOA Sale, whichever is greater;

11.    For general and special damages in excess of $10,000.00;

12.    For attorney's fees;

13.    For costs of incurred herein, including post-judgment costs;

14.    For any and all further relief deemed appropriate by this Court.


DATED this _____ day of September, 2015.

                              WRIGHT, FINLAY & ZAK, LLP


                              Edgar C. Smith, Esq.
                              Nevada Bar No. 5506
                              Christopher Alan James Swift, Esq.
                              Nevada Bar No. 11291
                              7785 W. Sahara Ave., Suite 200
                              *Attorneys for Plaintiff, Deutsche Bank National
                              Trust Company, as Trustee for Ameriquest
                              Mortgage Securities Inc., Asset-Backed Pass-
                              Through Certificates, Series 2002-C*

1

**AFFIRMATION**

2

Pursuant to NRS 239B.030

3

4        The undersigned does hereby affirm that the preceding **COMPLAINT** filed in the

5   above captioned matter does **not** contain the social security number of any person.

6

7

DATED this /7th day of September, 2015.

8

9                                          WRIGHT, FINLAY & ZAK, LLP

10

11

Edgar C. Smith, Esq.
12                                          Nevada Bar No. 5506
                                           Christopher Alan James Swift, Esq.
13                                          Nevada Bar No. 11291
                                           7785 W. Sahara Ave., Suite 200
14                                          Las Vegas, Nevada 89117
                                           (702) 666-0632; Fax: (702) 946-1345
15                                          cswift@wrightlegal.net
                                           *Attorneys for Plaintiff, Deutsche Bank National*
16                                          *Trust Company, as Trustee for Ameriquest*
17                                          *Mortgage Securities Inc., Asset-Backed Pass-*
                                           *Through Certificates, Series 2002-C*
18

19

20

21

22

23

24

25

26

27

28

<u>Exhibit I</u>

<u>Exhibit I</u>

<u>Exhibit I</u>

# Search Results

Showing selected 10 of 10 Total Results                                    Printed Oct 2, 2020 1:16:09 PM

Official Records Search and Copies where APN (NO HYPHENS)* equals 15266204

## Assignment Deeds Of Trust

| Document Number | Grantor (3) | Grantee | Recording Date |
|---|---|---|---|
| 4797905 | DEUTSCHE BANK NATIONAL TRUST COMPANY TR LECKIE ALESANDRA M LECKIE ROBERT G | DEUTSCHE BANK NATIONAL TRUST COMPANY TR | 03/22/2018 10:45 AM |

No Related Documents

## Notice Lis Pend

| Document Number | Grantor (2) | Grantee | Recording Date |
|---|---|---|---|
| 4524741 | LVDG LLC SERIES 180 THUNDER PROPERTIES INC | DEUTSCHE BANK NATIONAL TRUST COMPANY TR | 10/19/2015 01:30 PM |

No Related Documents

## Deed

| Document Number | Grantor | Grantee | Recording Date |
|---|---|---|---|
| 4494606 | LVDG LLC SERIES 180 | THUNDER PROPERTIES INC | 07/22/2015 12:32 PM |

Related Documents (1)

| Document Number | Document Type | Recording Date | Book/Page |
|---|---|---|---|
| DV-4494606 | Declaration of Value | 07/22/2015 | |

## Trustees Deed

| Document Number | Grantor (3) | Grantee | Recording Date |
|---|---|---|---|
| 4338284 | ALESSI & KOENIG LLC TR (LECKIE) LECKIE ALESANDRA M LECKIE ROBERT G | LVDG LLC SERIES 180 | 03/26/2014 11:01 AM |

Related Documents (1)

| Document Number | Document Type | | Book/Page |
|---|---|---|---|
| L | | | |

## Deed

| Document Number | Grantor | Grantee (2) | Recording Date |
|---|---|---|---|
| 3481401 | BDLM LLC | LECKIE ALESANDRA M LECKIE ROBERT G | 12/29/2006 01:23 PM |

Related Documents (1)

| Document Number | Document Type | Recording Date | Book/Page |
|---|---|---|---|
| DV-3481401 | Declaration of Value | 12/29/2006 | |

## Deed

| Document Number | Grantor (4) | Grantee | Recording Date |
|---|---|---|---|
| **2569941** | **JONES HELEN JEANE TR WALKER KENNETH G TR SMITH GERALD C TR REDFIELD NELL J REVOCABLE TRUST AGREEMENT** | **SOUTHWEST POINTE ASSOCIATES LLC** | **06/29/2001 04:31 PM** |

No Related Documents

## Deed

| Document Number | Grantor | Grantee (2) | Recording Date |
|---|---|---|---|
| **2676201** | **SOUTHWEST POINTE ASSOCIATES LLC** | **CURTIS JOANN WREISNER TR CURTIS JOANN WREISNER 1988 TRUST** | **04/15/2002 04:34 PM** |

No Related Documents

## Deed

| Document Number | Grantor | Grantee (3) | Recording Date |
|---|---|---|---|
| **2697652** | **SOUTHWEST POINTE ASSOCIATES LLC** | **CURTIS WILLIAM A JR TR CURTIS JOANN WREISNER TR CURTIS FAMILY TRUST OF 2000** | **06/10/2002 03:03 PM** |

No Related Documents

## Deed

| Document Number | Grantor (3) | Grantee (2) | Recording Date |
|---|---|---|---|
| **3134306** | **CURTIS WILLIAM A JR TR CURTIS FAMILY 2000 TRUST CURTIS WILLIAM A JR** | **CURTIS WILLIAM A JR TR CURTIS FAMILY 2000 TRUST** | **11/29/2004 12:29 PM** |

Related Documents (1)

| Document Number | Document Type | Recording Date | Book/Page |
|---|---|---|---|
| **DV-3134306** | **Declaration of Value** | **11/29/2004** | |

## Deed

| Document Number | Grantor (3) | Grantee | Recording Date |
|---|---|---|---|
| **3194269** | **CURTIS WILLIAM A JR TR CURTIS FAMILY TRUST OF 2000 CURTIS FAMILY TRUST** | **BDLM LLC** | **04/06/2005 11:25 AM** |

No Related Documents