E-filed: February 2, 2022

1  Andrew M. Jacobs, Esq. (NV Bar No. 12787)
   Blakeley E. Griffith (NV Bar No. 12386)
2  SNELL & WILMER L.L.P.
   3883 Howard Hughes Parkway, Suite 1100
3  Las Vegas, NV 89169
   Telephone: (702) 784-5200
4  Facsimile: (702) 784-5252
   Email: bgriffith@swlaw.com
5  *Attorneys for The Bank of New York Mellon, fka The Bank of New*
   *York as Successor in Interest to JPMorgan Chase Bank NA as*
6  *Trustee for Structured Asset Mortgage Investments II Inc. Bear*
   *Stearns ALT-A Trust 2005-9, Mortgage Pass-Through*
7  *Certificates, Series 2005-9*

8                    **UNITED STATES BANKRUPTCY COURT**

9                         **DISTRICT OF NEVADA**

10 | In re                                    | Case No. 16-16593-abl |
11 | ALESSI & KOENIG, LLC,                    | Chapter 7 |
12 |                                          |
   |                Debtor.                   |
13 | _____          | _____ |
   | SHELLEY D. KROHN, TRUSTEE,               | Adversary No. 17-01210-abl |
14 |                                          |
   |                Plaintiff,                |
15 |                                          | **AMENDED[1] MOTION TO DISTRIBUTE** |
   |        vs.                               | **EXCESS PROCEEDS FOR THE** |
16 |                                          | **PROPERTY LOCATED AT 10912 FISHERS** |
   |                                          | **ISLAND ST** |
17 | 2010-1 CRE VENTURE, LLC, a Delaware      |
   | limited liability company; ABSOLUTE      | **Hearing Date: March 8, 2022** |
18 | BEST CONCRETE, INC., a domestic          |
   | corporation; ALESANDRA M. LECKIE, an     | **Hearing Time: 10:00 a.m.** |
19 | individual; ALFRED T. DOLAN, JR.;        |
   | ALIANTE MASTER ASSOCIATION, a            | **Hearing Location:** |
20 | domestic non-profit corporation; ALLAN L.|   **United States Bankruptcy Court** |
   | GROMEK, an individual; AMANDA            |   **Foley Federal Building, Courtroom No. 1** |
21 | AKERS, an individual; AMERICAN           |   **300 Las Vegas Blvd South, Third Floor** |
   | GENERAL FINANCIAL SERVICES, INC.;        |   **Las Vegas, Nevada 89101** |
22 | AMERICAN SECURITY COMPANY OF             |
   | NEVADA; MERIDIAS CAPITAL, INC., a        |
23 | domestic corporation; ANDREA             |
   | ROBERTSON, an individual; ANDREW         |
24 | SHEALY, an individual; ANTHONY           |
   | SWAGGERTY, an individual;                |
25 | ANTOINETTE CLAPP, an individual;         |
   | AQUA FINANCE, INC., a foreign            |
26 | corporation; ASSET MANAGEMENT            |
   | SERVICE ENTERPRISES LLC, a Nevada        |
27 | limited liability company; AUGUSTIN      |

---

[1] This Amended Motion is submitted pursuant to the Court's Notice of Docketing Error [ECF No. 720]
directing BNYM to correct the case caption.

4854-9857-0764

JIMENEZ, an individual; BAC HOME
LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS, LP;
BAC HOME LOANS SERVICING, LP;
BANK OF AMERICA, N.A., SUCCESSOR
BY MERGER TO BAC HOME LOANS
SERVICING, LP, FKA COUNTRYWIDE
HOME LOANS SERVICING, LP; BANK
OF AMERICA, N.A.; BANK OF NEW
YORK MELLON FORMERLY KNOWN
AS BANK OF NEW YORK; BARBARA
ANN DOLAN; BARFIELD ONE
PROPERTY MANAGEMENT, LLC, a
Nevada limited liability company;
BAYVIEW LOAN SERVICES, LLC, a
foreign limited liability company;
BENJAMIN DONEL; BIERFASS 1, LLC;
AGCOM II, LLC; RICARDO A.
BIERFASS; BOBBIE JO LAMMIE, an
individual; BOJAN NENADIC; CANYON
CREST ASSOCIATION, a Nevada non-
profit corporation; CANYON MIST
ESTATES HOMEOWNERS
ASSOCIATION, a Nevada nonprofit
cooperative corporation without stock;
CAPAROLA AT SOUTHERN
HIGHLANDS HOMEOWNERS
ASSOCIATION; CENTENNIAL POINT
COMMUNITY ASSOCIATION, a Nevada
non-profit company; CENTEX HOME
EQUITY COMPANY, LLC; CHAMPERY
REAL ESTATE 2015, LLC; CHARLES E.
AKERS, II, an individual; CHARLOTTE A.
DICKEY, an individual; CHARLOTTE
BARNETT, an individual; CHICAGO
TITLE INSURANCE COMPANY;
CITIBANK (WEST); CITIBANK, N.A., AS
TRUSTEE FOR BEAR STEARNS ALT-A
TRUST, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-8;
CITIBANK, N.A., AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF
STRUCTURED ASSET MORTGAGE
INVESTMENTS II INC., BEAR STEARNS
ALT-A TRUST, MORTGAGE PASS-
THROUGH CERTIFICATES SERIES
2006-8, a national banking association;
CITIMORTGAGE, INC.; CITY OF
HENDERSON, a domestic governmental
entity; CITY OF LAS VEGAS, a domestic
governmental entity; CITY OF NORTH
LAS VEGAS, a domestic governmental
entity; CLARA BRAUD, an individual;
CLARK COUNTY TREASURER,
TRUSTEE, a domestic governmental entity;

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

COLLEGIUM FUND LLC SERIES 30, a
Nevada limited liability company;
COMMUNITY MANAGEMENT GROUP,
a Nevada corporation; COOPER CASTLE
LAW FIRM, LLP; COUNTRYWIDE
BANK FSB; COUNTRYWIDE HOME
LOANS, INC., a foreign corporation, for the
benefit of NB HOLDINGS
CORPORATION; COUNTRYWIDE
HOME LOANS, INC.; CTC REAL
ESTATE SERVICES; CTX MORTGAGE
COMPANY LLC; DAVID J. McCOY, an
individual; DEBBIE KRAEMER; DEBRA
B. WEIGHTMAN, an individual; DEBRA
LEE, an individual; DEPARTMENT OF
THE TREASURY, INTERNAL REVENUE
SERVICE, a federal governmental agency;
DEUTSCHE BANK NATIONAL TRUST
COMPANY, a foreign corporation;
DEUTSCHE BANK NATIONAL TRUST
COMPANY AS TRUSTEE FOR
AMERIQUEST MORTGAGE
SECURITIES, INC., ASSET-BACKED
PASS-THROUGH CERTIFICATES,
SERIES 2002-C, a foreign corporation;
DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE FOR LONG
BEACH MORTGAGE LOAN TRUST
2006-1, a foreign corporation; DEUTSCHE
BANK NATIONAL TRUST COMPANY,
AS TRUSTEE, IN TRUST FOR
REGISTERED HOLDERS OF LONG
BEACH MORTGAGE LOAN TRUST
2006-1, ASSET-BACKED
CERTIFICATES, SERIES 2006-1;
DEUTSCHE BANK TRUST COMPANY
AMERICAS; DHI MORTGAGE
COMPANY, LTD., a foreign limited
partnership; DITECH SERVICING, LLC, a
foreign limited liability company; DONALD
G. CALDWELL, an individual; DONNA M.
HAWKINS, an individual; DOUBLE
DIAMOND RANCH MASTER
ASSOCIATION; MARIA ANDIOLA, an
individual; EDUARDO ANDIOLA, an
individual; EL CAPITAN RANCH
LANDSCAPE MAINTENANCE
ASSOCIATION; EQUITY TRUST CO.
CUSTODIAN FBO DAVID HERRERA,
IRA, an unknown entity; FALCON RIDGE
COMMUNITY ASSOCIATION;
FEDERAL HOUSING FINANCE
AGENCY, as Conservator for the Federal
National Mortgage Association; FEDERAL
NATIONAL MORTGAGE ASSOCIATION

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

DBA FANNIE MAE, a government sponsored entity; FEDERAL NATIONAL MORTGAGE ASSOCIATION; FIRST AMERICAN TITLE COMPANY; FIRST FRANKLIN, A DIVISION OF NATIONAL CITY BANK; FLAGSTAR BANK, FSB; FLAMINGO RIDGE HOMEOWNERS ASSOCIATION; FRANKLIN AMERICAN MORTGAGE; FREDERICK G. ROXBURY; FULL SPECTRUM LENDING, INC.; GAHTLIN BANKS, an individual; GEAN LOO, an individual; GRANADA WILLOWS TRUST#7423, NV WEST SERVICING, LLC AS TRUSTEE; GREEN TREE SERVICING, LLC, a foreign limited liability company; HARLAN LEE, an individual; HOME123 CORPORATION, a foreign corporation; HOMEWARD RESIDENTIAL, INC., f/k/a AMERICAN HOME MORTGAGE SERVICING, INC., a Delaware corporation; HOWARD M. HAUTALA, an individual; HSBC BANK, USA, N.A.; HSBC MORTGAGE SERVICES; INDIGO HOMEOWNERS ASSOCIATION; IRIS WU, an individual; JAMI BRINKERHOFF, an individual; JANEEN M. FLORO, an individual; JOHN D. GREGG, an individual; JOHN P. COLE, an individual; JOHN S. CLAPP, an individual; JOSEFINA CACCIOLA, an individual; JOSEPH BIERNACKI, an individual; JOSHUA GUST, an individual; JPMORGAN CHASE BANK, NATIONAL ASSOCIATION; JP MORGAN CHASE NA; JULIA SHANDELL HAMPTON, a individual; KAREN L. CELONE f/k/a KAREN L. CLARK, an individual; KAREN L. MORTIMER, an individual; KAREN M. GROMEK, an individual; KIMBERLY K. TAYLOR, an individual; KINETICO QUALITY WATER SYSTEMS; KIRANDEEP MANGAT; KRISTIN JORDAL, AS TRUSTEE FOR THE JBWNO REVOCABLE LIVING TRUST, a trust; LAKE VALLEY ESTATES ASSOCIATION; LAMAR WEBSTER TRUSTEE, an individual on behalf of SEVEN FALLS FAMILY TRUST; LAS VEGAS DEVELOPMENT GROUP, LLC, a Nevada limited liability company; LAS VEGAS VALLEY WATER DISTRICT, a domestic governmental entity; LAUNA L. LOCASCIO, an individual; LAURA B. FITZPATRICK, IN HER CAPACITY AS

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

CLARK COUNTY TREASURER; LAURA
DOUTIS, an individual; LAWRENCE LEE,
an individual; LITTON LOAN
SERVICING, LP, a Delaware limited
partnership, for GSAA HOME EQUITY
TRUST 2006-20, a foreign limited
partnership; LN MANAGEMENT LLC
SERIES 3377 MILENKO; LN
MANAGEMENT LLC SERIES 8729
AUTUMN VALLEY; LOG CABIN
MANOR HOMEOWNERS
ASSOCIATION, INC.; LONG BEACH
MORTGAGE COMPANY, a foreign
corporation; LVDG Series 113 established
under LVDG LLC, a Nevada series limited
liability company; MAGNOLIA GOTERA,
an individual; MANUEL HELLER, an
individual; MARC LEEDS, an individual;
MARGARETE THEDE, an individual;
MARIA E. CALDWELL, an individual;
MARIA ELENITA RACOMA, an
individual; MARIA PATROCINO M.
EVANS AKA PAT M. EVANS, an
individual; MARIA REDOUTEY, an
individual;; MARIYA ILEVA, an
individual; MARK COLLINGBOURNE, an
individual; MARY SERRA, an individual;
MAUNLAD, LLC, a Nevada limited
liability company; MAXWELL
STEINBERG, tenant in common with
VALTUS REAL ESTATE, LLC; VALTUS
REAL ESTATE, LLC, tenant in common
with MAXWELL STEINBERG; MELISSA
JOY CRISTOMO, an individual; MICHAEL
BARNETT, an individual; MICHAEL D.
GAYLES, an individual; MICHAEL H.
SHEALY, an individual; MICHAEL T.
ELLIOTT, TRUSTEE, MICHAEL T.
ELLIOTT SEPARATE PROPERTY
TRUST, an individual as trustee; MICHAEL
T. ELLIOTT SEPARATE PROPERTY
TRUST; MIRA VISTA COMMUNITY
HOMEOWNERS ASSOCIATION;
MOONDANCE/SUNCHASE
COMMUNITY ASSOCIATION; MYONG
LEEDS, an individual; NATIONAL TITLE
CO.; NATIONSTAR MORTGAGE, INC.;
NATIONSTAR MORTGAGE, LLC, a
foreign limited liability company; NAYCEE
TOWNSEND, an individual; NEIL
DYSOM; NEVADA SANDCASTLES,
LLC, a Nevada limited liability company;
NEWPORT COVE CONDOMINIUM
UNIT-OWNERS ASSOCIATION, INC.; a
Nevada non-profit corporation; NIKOLETA

UZUNOVA, an individual; NOESIS
PROPERTY ACQUISITIONS, LLC, a
Nevada limited liability company; NOOR
HUSSAIN, an individual; SALMA DEAN
HUSSAIN, an individual; NV WEST
SERVICING, LLC, as Trustee of
FARMHOUSE TRUST #5774;
FARMHOUSE TRUST #5774; OCWEN
LOAN SERVICING, LLC; PALMILLA
HOMEOWNERS ASSOCIATION;
PAMELA C. McCOY, an individual;;
PARK 1 AT SUMMERLINGFATE FKA
QUEENSRIDGE PARK CONDOS, a
Nevada non-profit corporation; PATRICIA
SHERIDAN, an individual; PAUL E.
CHASE, an individual; PAULETTE N.
CHASE, an individual; PECOS ESTATES
HOMEOWNERS ASSOCIATION, a
Nevada non-profit association; PERCIVAL
G. LAMMIE, an individual; PNC
FINANCIAL SERVICES GROUP, INC., a
foreign corporation; QUALITY LOAN
SERVICE CORPORATION, a California
corporation; RANCHO LAS BRISAS
MASTER HOMEOWNERS
ASSOCIATION; RECONTRUST
COMPANY, N.A.; REO INVESTMENT
ADVISORS V LLC; REPUBLIC
SERVICES, a Nevada corporation;
REPUBLIC SILVER STATE DISPOSAL,
INC. dba REPUBLIC SERVICES, a Nevada
corporation; RHEANNE GUEVARRA, an
individual; RICHARD SALOMON, an
individual; RICHARD SZUKALA, an
individual; ROBERT BRINKERHOFF, an
individual; ROBERT G. LECKIE, an
individual; ROBERT J. SHEALY, an
individual; RODNEY HOLDINGS, LLC;
RONALD K. LEAVITT and SUSAN W.
LEAVITT, Trustees of LEAVITT FAMILY
TRUST, a trust; LEAVITT FAMILY
TRUST; RONALD K. LEAVITT, an
individual; ROYAL HIGHLANDS STREET
AND LANDSCAPE MAINTENANCE
CORPORATION, a Nevada non-profit
corporation; RUPERTS COURT TRUST;
SABLES, LLC; SATICOY BAY LLC
SERIES 10250 SUN DUSK LANE;
SATICOY BAY LLC SERIES 10777
VESTONE ST; SATICOY BAY LLC,
SERIES 9387 STOCK STREET; SELECT
PORTFOLIO SERVICING INC., AS
SERVICING AGENT FOR HSBC BANK
USA, NATIONAL ASSOCIATION, AS
TRUSTEE FOR HOLDERS LUMINENT

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

MORTGAGE TRUST 2006-2 TRUST FUND; SERVICELINK; SETONA HOMEOWNERS ASSOCIATION, a Nevada non-profit cooperative corporation; SEVEN FALLS FAMILY TRUST; SFR INVESTMENTS POOL 1, LLC, a Nevada limited liability company; SFR INVESTMENTS POOL 11, LLC, a Nevada limited liability company; SIMON HUME, an individual; SOUTHERN HIGHLANDS COMMUNITY ASSOCIATION, a Nevada non-profit cooperative corporation without stock; SPRINGLEAF FINANCIAL SERVICES, INC. FKA AMERICAN GENERAL FINANCIAL SERVICES, INC., a foreign corporation; STACEY MOORE, an individual; STAR GOLDEN ENTERPRISES, LLC; STEPHANIE ROXBURY, an individual;  STEWARD FINANCIAL, INC.; SUMMERLIN NORTH COMMUNITY ASSOCIATION; SUMMIT CANYON RESOURCES, LLC; SUNSET MESA COMMUNITY ASSOCIATION; SUSAN COLLINGBOURNE, an individual; SUSAN W. LEAVITT, an individual; TAMARA B. RYS, an individual; TARA J. BIERNACKI, an individual; TARJE GRIMSTAD, an individual; TEGE PROPERTIES, LLC; TERRENCE KRAEMER; THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, AS SUCCESSOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR HOLDERS OF SAMI II TRUST 2006-ARI, a foreign corporation; THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWHEQ, INC., HOME EQUITY LOAN ASSET BACKED CERTIFICATES, SERIES 2006-S8, a foreign corporation; THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-23; THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE FOR RAMP 2003RS2; THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK AS

SUCCESSOR IN INTEREST TO JP
MORGAN CHASE BANK NA AS
TRUSTEE FOR STRUCTURED ASSET
MORTGAGE INVESTMENTS II INC.
BEAR STEARNS ALT-A TRUST 2005-9,
MORTGAGE PASS-THROUGH
CERTIFICATES; SERIES 2005-9; THE
KIM LAW FIRM; TICOR TITLE OF
NEVADA, INC.; TOMASITO P.
GUEVARRA, an individual; TOWN
CENTER ESTATES COMMUNITY
ASSOCIATION; TRILOGY
INVESTMENT ENTERPRISES, LLC, a
foreign limited liability company; TRP
FUND IV LLC, a Nevada limited liability
company; U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE FOR
SROF-2013-S3 REMIC TRUST I, a national
banking association; U.S. BANK
NATIONAL ASSOCIATION, AS
TRUSTEE FOR THE BENEFIT OF
HARBORBIEW 2005-3 TRUST FUND;
U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR THE BENEFIT OF
HARBORVIEW 2005-16 TRUST FUND;
U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE, SUCCESSOR IN
INTEREST TO BANK OF AMERICA,
NATIONAL ASSOCIATION, AS
SUCCESSOR BY MERGER TO LASALLE
BANK, NATIONAL ASSOCIATION AS
TRUSTEE FOR WMALT 2006-AR6, a
national banking association; U.S. BANK,
N.A., a national banking association; U.S.
BANK, N.A., AS TRUSTEE,
SUCCESSOR-IN-INTEREST TO BANK
OF AMERICA, N.A. AS TRUSTEE AS
SBM TO LASALLE BANK, N.A., AS
TRUSTEE FOR WMALT 2005-10, a
national banking association; U.S. BANK,
NATIONAL ASSOCIATION, a national
banking association; U.S. BANK,
NATIONAL ASSOCIATION, AS
SUCCESSOR TRUSTEE TO BANK OF
AMERICA, N.A., AS SUCCESSOR BY
MERGER TO LASALLE BANK, N.A., AS
TRUSTEE FOR FIRST FRANKLIN
MORTGAGE LOAN TRUST,
MORTGAGE LOAN ASSET-BACKED
CERTIFICATES, SERIES 2007-FF, a
foreign corporation; U.S. BANK,
NATIONAL ASSOCIATION, AS
SUCCESSOR TRUSTEE TO BANK OF
AMERICA, N.A., AS SUCCESSOR TO
LASALLE BANK, N.A., AS TRUSTEE

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1  FOR THE HOLDERS OF THE MERRILL
   LYNCH FIRST FRANKLIN MORTGAGE
2  LOAN TRUST, MORTGAGE LOAN
   ASSET-BACKED CERTIFICATES,
3  SERIES 2007-FF; U.S. BANK, NATIONAL
   ASSOCIATION, AS SUCCESSOR
4  TRUSTEE TO LASALLE BANK, N.A., AS
   TRUSTEE FOR THE HOLDERS OF THE
5  MERRILL LYNCH FIRST FRANKLIN
   MORTGAGE LOAN TRUST,
6  MORTGAGE LOAN ASSET-BACKED
   CERTIFICATES, SERIES 2007-FF2; U.S.
7  BANK, NATIONAL ASSOCIATION, AS
   TRUSTEE FOR THE BENEFIT OF
8  HARBOR VIEW 2005-3 TRUST FUND, a
   national banking association; US BANK
9  NATIONAL ASSOCIATION EE; VEGAS
   PROPERTY SERVICES, INC., a Nevada
10 corporation; VICTOR MAURICE
   TOWNSEND, an individual; VISCAYA
11 HOMEOWNERS ASSOCIATION;
   WATERFALL HOMEOWNERS
12 ASSOCIATION; WELLS FARGO BANK,
   N.A., a national banking association;
13 WELLS FARGO BANK, N.A., AS
   INDENTURE TRUSTEE FOR
14 AMERICAN HOME MORTGAGE
   INVESTMENT TRUST 2004-2, a national
15 banking association; WELLS FARGO
   BANK, NATIONAL ASSOCIATION, AS
16 TRUSTEE FOR MORGAN STANLEY
   CAPITAL 1, INC. TRUST 2006-HE1,
17 MORTGAGE PASS-THROUGH
   CERTICIATES, SERIES 2006-HE1, a
18 national banking association; WESTPARK
   OWNERS ASSOCIATION, a Nevada non-
19 profit corporation; WILLIAM D. DICKEY,
   an individual; WILLIAM HERBERT
20 HAMPTON, an individual; WMALT 2006-
   AR6 TRUST; ZBIGNIEW OLESKY, an
21 individual; DOES I through X, inclusive;
   and ROE CORPORATIONS I through X,
22 inclusive,

23              Defendants.

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Creditor The Bank of New York Mellon, fka The Bank of New York as Successor in Interest to JPMorgan Chase Bank NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-9, Mortgage Pass-Through Certificates, Series 2005-9 ("BNYM"), by and through its attorney of record, hereby submits the following Amended Motion to Distribute Excess Proceeds for the Property Located at 10912 Fishers Island St ("the Property"), listed in Exhibit 1 to the Adversary Complaint of the Trustee and currently held with the Court.

This Motion is based on the pleadings and papers on file with this Court, any facts subject to judicial notice, any argument this Court might consider, and any evidence this Court might entertain.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Pursuant to this Court's Order entered on June 27, 2019, BNYM respectfully requests that this Court enter an order directing the disbursement from the interpleaded funds of the remaining proceeds (the "Excess Proceeds") resulting from the non-judicial foreclosure sale against the Property, conducted by Alessi & Koenig ("Alessi"), as identified in the Court's Order. As discussed below, BNYM is the only claimant entitled to receive the Excess Proceeds, pursuant to NRS 116.31164(7).

### II.    STATEMENT OF FACTS

#### A.    BNYM's Interest in the Property

On August 8, 2005, Ronald Burnside obtained a loan from BNYM's predecessor-in-interest, Stearns Lending, Inc. ("Stearns"), in the amount of $354,250.00, and as security for the loan, executed a Deed of Trust, which was recorded against the Property on August 8, 2005 as Instrument Number 20050805-0004376 (the "Deed of Trust"), naming Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. **Exhibit 1**, Deed of Trust. Stearns (as the lender under the Note and Deed of Trust) named First American Title as the trustee of the Deed of Trust. *Id.* On or before March 29, 2011, MERS assigned the Deed of Trust to The Bank of New York Mellon, fka The Bank of New York as Successor in Interest to JP Morgan Chase Bank NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-9,

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1   Mortgage Pass-Through Certificates, Series 2005-9, through a Corporate Assignment of Deed of
2   Trust, recorded on April 4, 2011 as Instrument No. 201104040002575.   **Exhibit 2**, Corporate
3   Assignment of Deed of Trust.

### B.    The HOA Foreclosure Sale

5   Royal Highlands Street and Landscape Maintenance Corporation (the "HOA"), through
6   Alessi, recorded a Notice of Default and Election to Sell under Homeowners Association Lien
7   ("Notice of Default") on January 13, 2011.  **Exhibit 3**, Notice of Default.  The HOA then recorded
8   a Notice of Trustee's Sale on April 2, 2012 ("Notice of Sale" and with the Notice of Default, the
9   "Foreclosure Notices").  **Exhibit 4**, Notice of Sale.

10  On March 6, 2013, Alessi held the HOA foreclosure sale at its offices (the "HOA Sale").
11  **Exhibit 5**, Trustee's Deed Upon Sale.  The winning bidder was Las Vegas Development Group,
12  LLC ("LVDG"), which paid $25,100 for a deed to the Property. *Id.*

### C.    The Federal Court Action

14  On March 4, 2016, BNYM filed a Complaint against Alessi, LVDG, and the HOA in the
15  United States District Court, District of Nevada, Case No. 16-cv-00478, alleging causes of action
16  for Declaratory Relief and Wrongful Foreclosure (the "Federal Action").  On February 5, 2019 the
17  District Court entered an Order granting summary judgment in favor of LVDG.  *See* ECF No. 85
18  in Case No. 16-cv-00478.  BNYM appealed the District Court's Order, which was ultimately
19  affirmed by the Ninth Circuit.  *See* ECF No. 107 in Case No. 16-cv-00478.

### D.    This Bankruptcy Court Adversary Action

21  On July 6, 2017, the Trustee in the Alessi Bankruptcy filed a Complaint for Interpleader to
22  divest itself of all excess proceeds existing as of December 13, 2016, which Alessi had turned over
23  to the Trustee, from each HOA lien foreclosure sale that Alessi conducted and which it held in trust
24  as of December 13, 2016 (hereinafter "Alessi Bankruptcy Interpleader").

25  On September 7, 2018, BNYM filed a Proof of Claim in the Alessi Bankruptcy Interpleader
26  as to the excess proceeds for the Property in the amount of $17,716.89.  ECF No. 328.  On June 27,
27  2019, the Court entered an Order stating that the amount of net remaining excess proceeds for this
28  Property is $6,641.23, after taking into account the amounts due to the Trustee and the Court on a

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

pro-rata, per property basis. *See* ECF No. 481 at p. 17.

## III. NEVADA'S HOA LIEN STATUTE SUPPORTS DISTRIBUTION OF THE EXCESS PROCEEDS TO BNYM.

NRS 116.3116 sets forth the procedure for HOA lien foreclosure sales. NRS 116.31164(7) provides that excess proceeds remaining after an HOA lien foreclosure sale shall be applied/disbursed for the purpose and in order as follows:

> (1) The reasonable expenses of sale;
> (2) The reasonable expenses of securing possession before sale, holding, maintaining, and preparing the unit for sale, including payment of taxes and other governmental charges, premiums on hazard and liability insurance, and, to the extent provided for by the declaration, reasonable attorney's fees and other legal expenses incurred by the association;
> (3) Satisfaction of the association's lien;
> (4) Satisfaction in the order of priority of any subordinate claim of record; and
> (5) Remittance of any excess proceeds to the unit's owner.

Applying the distribution formula set forth in NRS 116.31164(7), to the facts of this matter, it is clear that BNYM is entitled to the full amount of the remaining net Excess Proceeds for the Property pursuant to subsection (4). Subsections (1) through (3) of the statute have been satisfied. The Complaint in Interpleader acknowledges that the HOA has paid its lien in full, as well as Alessi's fees and costs related to the HOA sale, and those funds have already been removed from the excess proceeds resulting from the HOA sale. ECF No. 1 at ¶ 10; *see also* ECF No. 481 at p. 17. No amounts for any other expenses were identified or claimed by the Trustee as receivables due to Alessi, i.e., property of the estate, in the Complaint in Interpleader. BNYM is informed and believes there are no other lienholder claimants at the time of the HOA sale of the Property herein or creditor claimants herein for receipt of the net Excess Proceeds for the Property under subsection (4). Further, no other party submitted a proof of claim for these funds in accordance with this Court's procedural order for submission of proofs of claim during the pendency of the Alessi Interpleader.

Accordingly, pursuant to subsection (4) of the excess proceeds distribution scheme set forth in Nevada's HOA lien statute, as set forth above, the Excess Proceeds must be paid to BNYM.

## IV. CONCLUSION

BNYM respectfully requests that the Court grant the Motion and distribute the Excess

1  Proceeds from the interpleaded funds in the amount of $6,641.23, to BNYM, payable to its servicer,

2  Specialized Loan Servicing.

3       DATED this 2nd day of February 2022.

4                                      SNELL & WILMER L.L.P.

5

6       By /s/ Blakeley E. Griffith
        Andrew M. Jacobs, Esq. (NV Bar No. 12787)
7       Blakeley E. Griffith (Nevada Bar No. 12386)
        3883 Howard Hughes Parkway, Suite 1100
8       Las Vegas, NV 89169
        Telephone (702) 784-5200
9       Facsimile: (702) 784-5252

10      *Attorneys for The Bank of New York Mellon, fka The Bank
        of New York as Successor in Interest to JPMorgan Chase
11      Bank NA as Trustee for Structured Asset Mortgage
        Investments II Inc. Bear Stearns ALT-A Trust 2005-9,
12      Mortgage Pass-Through Certificates, Series 2005-9*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# EXHIBIT 1

**20050805-0004376**

Fee: $35.00
N/C Fee: $0.00

08/05/2005          15:31:06
T20050143180

Requestor:
FIRST AMERICAN TITLE COMPANY OF NEVAD

Frances Deane                    DOM
Clark County Recorder    Pgs: 22

Assessor's Parcel Number:
177-31-714-009
Return To:
STEARNS LENDING, INC.

4 HUTTON CENTRE DRIVE, SUITE 500
SANTA ANA, CA 92707

Prepared By:

KERRIE DAVIDSON , LOAN CLOSER
157 EAST WARM SPRINGS RD., #110
LAS VEGAS, NV 89119
(702)889-6590
Recording Requested By:
STEARNS LENDING, INC.

——————— [Space Above This Line For Recording Data] ———————

# DEED OF TRUST

LOAN NO.: ████████00346
ESCROW NO.: 171-2200346

MIN   100183300000217787
MERS Phone: 1-888-679-6377

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.
(A) "Security Instrument" means this document, which is dated          JULY 25, 2005
together with all Riders to this document.
(B) "Borrower" is
RONALD BURNSIDE, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
STEARNS LENDING, INC., A CALIFORNIA CORPORATION

Lender is a  CORPORATION
organized and existing under the laws of  CALIFORNIA

NEVADA-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
WITH MERS
VMP-6A(NV) (0307)                    Page 1 of 15          LENDER SUPPORT SYSTEMS INC. MERS6ANV.NEW (06/04)

Initials:
Form 3029 1/01

Lender's address is
4 HUTTON CENTRE DRIVE, SUITE 500, SANTA ANA, CA 92707

**(D) "Trustee"** is
FIRST AMERICAN TITLE

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated        JULY 25, 2005

The Note states that Borrower owes Lender
THREE HUNDRED FIFTY FOUR THOUSAND TWO HUNDRED FIFTY AND NO/100 X X X X X X

                                                                    Dollars

(U.S. $354,250.00                    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  AUGUST 01, 2035

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [XX] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [XX] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

VMP-6A(NV) (0307)                   Page 2 of 15                   Initials: _____ Form 3029  1/01

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the        COUNTY        [Type of Recording Jurisdiction] of        CLARK        [Name of Recording Jurisdiction]:

SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID Number: 177-31-714-009        which currently has the address of
        10912 FISHERS ISLAND STREET        [Street]
        LAS VEGAS        [City], Nevada        89141-        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

Initials: _____

VMP-6A(NV) (0307)        Page 3 of 15        Form 3029  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives

Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: _BB_

Form 3029  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials: _BB_

VMP-6A(NV) (0307)                    Page 8 of 15                    Form 3029  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

VMP-6A(NV) (0307)                    Page 9 of 15                    Initials: RB    Form 3029  1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials:

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be

VMP-6A(NV) (0307)                Page 11 of 15                Form 3029  1/01

Initials: ___

one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $                        .

Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____
-Witness

_____
-Witness

_____(Seal)          _____(Seal)
RONALD BURNSIDE          -Borrower          -Borrower

_____(Seal)          _____(Seal)
-Borrower          -Borrower

_____(Seal)          _____(Seal)
-Borrower          -Borrower

_____(Seal)          _____(Seal)
-Borrower          -Borrower

**VMP-6A(NV) (0307)**          Page 14 of 15          **Form 3029   1/01**

**STATE OF** NEVADA
**COUNTY OF** CLARK

This instrument was acknowledged before me on 7/27/05                                    by
RONALD BURNSIDE



Mail Tax Statements To:

STEARNS LENDING, INC.

4 HUTTON CENTRE DRIVE, SUITE 500
SANTA ANA, CA  92707

VMP-6A(NV) (0307)                    Page 15 of 15                    Initials: BB
                                                                      Form 3029  1/01

EXHIBIT "A"

The land referred to in this Commitment is situated in the City of Las Vegas, County of Clark, State of Nevada and is described as follows:

Lot 359 of Royal Highlands at Southern Highlands #3, as shown by map thereof on file in Book 112 of Plats, Page 87, in the Office of the County Recorder of Clark County, Nevada.

# PLANNED UNIT DEVELOPMENT RIDER

LOAN NO.: ████577

MIN: 100183300000217787
MERS Phone: 1-888-679-6377

THIS PLANNED UNIT DEVELOPMENT RIDER is made this          25th          day of
          JULY, 2005          , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the
same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
STEARNS LENDING, INC., A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:
10912 FISHERS ISLAND STREET, LAS VEGAS, NV 89141-
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS.
(the "Declaration"). The Property is a part of a planned unit development known as
GLEN EAGLES

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.

   **PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

   **A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners
Association; and (iii) any by-laws or other rules or regulations of the Owners Association.
Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the
Constituent Documents.

Initials: _____

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3150 1/01**
V-7R (0411)                        Page 1 of 3                        LENDER SUPPORT SYSTEMS INC. 7R NEW (03/05)

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become

Initials:

V-7R (0411)                    Page 2 of 3                    Form 3150 1/01

additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)    _____ (Seal)
RONALD BURNSIDE         -Borrower                           -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                           -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                           -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                           -Borrower

V-7R (0411)                            Page 3 of 3                        Form 3150 1/01

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

LOAN NO.: ███0577

MIN: 100183300000217787
MERS Phone: 1-888-679-6377

THIS ADJUSTABLE RATE RIDER is made this    25th    day of        JULY, 2005          , and is
incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security
Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to
STEARNS LENDING, INC., A CALIFORNIA CORPORATION

("Lender") of the same date and covering the property described in the Security Instrument and located at:
10912 FISHERS ISLAND STREET, LAS VEGAS, NV 89141-
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND
THE MAXIMUM RATE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of         6.500           %.  The Note provides for
changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of        AUGUST, 2010       and on that
day every sixth month thereafter.  Each date on which my interest rate could change is called a "Change
Date."

Six Month Adjustable Rate Rider - Periodic Cap
6TMHR (January 6, 2001)                    Page 1 of 3          LENDER SUPPORT SYSTEMS INC. EMC-6PR.EMC (08/04)

Initials: BB

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date twenty-five (25) days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE QUARTER    Percentage point(s) (    2.250    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**(i) Interest-Only Period.** The "interest-only period" is the period from the date of this Note through AUGUST 01, 2015    . For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

**(ii) Amortization Period.** The "amortization period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.500    % or less than    2.250    %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000THS    percentage point(s) (    1.000    %) from the rate of interest I have been paying for the preceding    6    months. My interest rate will never be greater than    11.500    %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

Six Month Adjustable Rate Rider - Periodic Cap
6TMHR (January 6, 2001)                    Page 2 of 3                    Initials: BB

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)          _____(Seal)
RONALD BURNSIDE                -Borrower                                       -Borrower

_____(Seal)          _____(Seal)
                                       -Borrower                                       -Borrower

_____(Seal)          _____(Seal)
                                       -Borrower                                       -Borrower

_____(Seal)          _____(Seal)
                                       -Borrower                                       -Borrower

Six Month Adjustable Rate Rider - Periodic Cap
6TMHR (January 6, 2001)                         Page 3 of 3

# EXHIBIT 2

# EXHIBIT 2

APN #: 177-31-714-009
Recording requested by:

When recorded mail to:

Americas Servicing Company
1 Home Campus X2504-017
Customer Service
Des Moines, IA 50328

Inst #: 201104040002575
Fees: $16.00
N/C Fee: $0.00
04/04/2011 01:24:17 PM
Receipt #: 727986
Requestor:
LSI TITLE AGENCY INC.
Recorded By: SUO   Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

TS #: NV-10-402907-CT
Order #: 100697399-NV-LPI
MERS MIN No.: 100183300000217787

Space above this line for recorders use

## Assignment of Deed of Trust

For value received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR STEARNS LENDING, INC., A CALIFORNIA CORPORATION A CORPORATION, ITS SUCCESSORS AND ASSIGNS,** hereby grants, assigns, and transfers to

**The Bank of New York Mellon, fka The Bank of New York as Successor in interest to JP Morgan Chase Bank NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust 2005-9, Mortgage Pass-Through Certificates, Series 2005-9**

All beneficial interest under that certain Deed of Trust dated **7/25/2005** executed by **RONALD BURNSIDE , A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY,** as Trustor(s) to **FIRST AMERICAN TITLE,** as Trustee and recorded as Instrument number **20050805-0004376,** on **8/5/2005,** of Official Records, , in the office of the County Recorder of **CLARK** County, **NV.**

Page 1 of 2

TS #: NV-10-402907-CT
Page 2

Dated: 3/29/2011

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: Carl Schmitz, Assistant Secretary

State of: Minnesota)

) ss

County of: Dakota)

On _March 29_, 2011, before me, _Taehoony Chin_ the
undersigned Notary Public, personally appeared **Carl, Schmitz, Assistant Secretary for
Mortgage Electronic Registration Systems Inc.,** personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Signature _____ (Seal)

TAEHOONY CHIN
Notary Public
Minnesota
My Commission Expires January 31, 2013

Page 2 of 2

# EXHIBIT 3

# EXHIBIT 3

Inst #: 201101130001575
Fees: $14.00
N/C Fee: $0.00
01/13/2011 09:33:20 AM
Receipt #: 641734
Requestor:
ALESSI & KOENIG LLC (JUNES
Recorded By: OSA   Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

When recorded mail to:

**THE ALESSI & KOENIG, LLC**
**9500 West Flamingo Rd., Ste 100**
**Las Vegas, Nevada 89147**
**Phone: 702-222-4033**

A.P.N. 177-31-714-009          Trustee Sale No. **RH-10912-N**

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER HOMEOWNERS ASSOCIATION LIEN

WARNING! IF YOU FAIL TO PAY THE AMOUNT SPECIFIED IN THIS NOTICE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS IN DISPUTE! You may have the right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account. The sale may not be set until ninety days from the date this notice of default recorded, which appears on this notice. The amount due is **$2,560.76** as of **January 7, 2011** and will increase until your account becomes current. To arrange for payment to stop the foreclosure, contact: **Royal Highlands Street and Landscape Maintenance Corporation**, c/o Alessi & Koenig, 9500 W. Flamingo Rd, Ste 100, Las Vegas, NV 89147.

THIS NOTICE pursuant to that certain Assessment Lien, recorded on **November 5, 2010** as document number **20101105-0003208**, of Official Records in the County of **Clark**, State of Nevada. Owner(s): **RONALD BURNSIDE**, of **LOT 359**, as per map recorded in Book **112**, Pages **87**, as shown on the Plan, Recorded on as document number as shown on the Subdivision map recorded in Maps of the County of **Clark**, State of Nevada. PROPERTY ADDRESS: **10912 FISHERS ISLAND ST, LAS VEGAS, NV 89141**. If you have any questions, you should contact an attorney. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. REMEMBER YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT The Alessi & Koenig is appointed trustee agent under the above referenced lien, dated **November 5, 2010**, executed by **Royal Highlands Street and Landscape Maintenance Corporation** to secure assessment obligations in favor of said Association, pursuant to the terms contained in the Declaration of Covenants, Conditions, and Restrictions (CC&Rs). A default in the obligation for which said CC&Rs has occurred in that the payment(s) have not been made of homeowners assessments due from and all subsequent assessments, late charges, interest, collection and/or attorney fees and costs.

Dated: **January 7, 2011**

Aileen Ruiz, Alessi & Koenig, LLC on behalf of **Royal Highlands Street and Landscape Maintenance Corporation**

# EXHIBIT 4

# EXHIBIT 4

Inst #: 201204020001883
Fees: $17.00
N/C Fee: $0.00
04/02/2012 09:13:48 AM
Receipt #: 1116952
Requestor:
ALESSI & KOENIG LLC (JUNES
Recorded By: ANI  Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

When recorded mail to:
Alessi & Koenig, LLC
9500 West Flamingo Rd., Suite 205
Las Vegas, NV 89147
Phone: 702-222-4033

APN: 177-31-714-009                    TSN RH-10912-N

# NOTICE OF TRUSTEE'S SALE

WARNING! A SALE OF YOUR PROPERTY IS IMMINENT! UNLESS
YOU PAY THE AMOUNT SPECIFIED IN THIS NOTICE BEFORE THE
SALE DATE, YOU COULD LOSE YOUR HOME, EVEN IF THE
AMOUNT IS IN DISPUTE. YOU MUST ACT BEFORE THE SALE DATE.
IF YOU HAVE ANY QUESTIONS, PLEASE CALL Alessi & Koenig at 702-
222-4033. IF YOU NEED ASSISTANCE, PLEASE CALL THE
FORECLOSURE SECTION OF THE OMBUDSMAN'S OFFICE, NEVADA
REAL ESTATE DIVISION, AT 1-877-829-9907 IMMEDIATELY.

**NOTICE IS HEREBY GIVEN THAT:**

On **April 25, 2012**, Alessi & Koenig as duly appointed Trustee pursuant to a certain lien, recorded on
**November 5, 2010**, as instrument number **20101105-0003208**, of the official records of Clark County,
Nevada, WILL SELL THE BELOW MENTIONED PROPERTY TO THE HIGHEST BIDDER FOR
LAWFUL MONEY OF THE UNITED STATES, OR A CASHIERS CHECK at: 2:00 p.m., at 9500 W.
Flamingo Rd., Suite #205, Las Vegas, NV 89147 (Alessi & Koenig, LLC Office Building, 2nd Floor)

The street address and other common designation, if any, of the real property described above is purported to
be: **10912 FISHERS ISLAND ST, LAS VEGAS, NV 89141**. The owner of the real property is purported to
be: **RONALD BURNSIDE**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common
designations, if any, shown herein. Said sale will be made, without covenant or warranty, expressed or
implied, regarding title, possession or encumbrances, to pay the remaining principal sum of a note,
homeowner's assessment or other obligation secured by this lien, with interest and other sum as provided
therein; plus advances, if any, under the terms thereof and interest on such advances, plus fees, charges,
expenses, of the Trustee and trust created by said lien. The total amount of the unpaid balance of the
obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time
of the initial publication of the Notice of Sale is **$4,622.25**. Payment must be in cash, a cashier's check drawn
on a state or national bank, a check drawn by a state bank or federal credit union, or a check drawn by a state
or federal savings and loan association, savings association, or savings bank specified in section 5102 of the
Financial Code and authorized to do business in this state.

Date: **March 26, 2012**

By: Ryan Kerbow, Esq. of Alessi & Koenig LLC on behalf of Royal Highlands Street and Landscape
Maintenance Corporation

# EXHIBIT 5

EXHIBIT 5

Inst #: 201303180003502
Fees: $17.00 N/C Fee: $0.00
RPTT: $130.05 Ex: #
03/18/2013 03:14:46 PM
Receipt #: 1538706
Requestor:
ALESSI & KOENIG LLC
Recorded By: CDE   Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

When recorded mail to and
Mail Tax Statements to:
**Las Vegas Development Group LLC**
**397 3rd Ave Suite A**
**Chula Vista, CA 91910**

A.P.N. No.**177-31-714-009**          TS No. **RH-10912-N**

## TRUSTEE'S DEED UPON SALE

The Grantee (Buyer) herein was: **Las Vegas Development Group LLC**
The Foreclosing Beneficiary herein was: **Royal Highlands Street and Landscape Maintenance Corporation**
The amount of unpaid debt together with costs: **$7,896.56**
The amount paid by the Grantee (Buyer) at the Trustee's Sale: **$25,100.00**
The Documentary Transfer Tax: **$130.05**
Property address: **10912 FISHERS ISLAND ST, LAS VEGAS, NV 89141**
Said property is in [   ] unincorporated area: City of **LAS VEGAS**
Trustor (Former Owner that was foreclosed on): **RONALD BURNSIDE**

Alessi & Koenig, LLC (herein called Trustee), as the duly appointed Trustee under that certain Notice of
Delinquent Assessment Lien, recorded **November 5, 2010** as instrument number **20101105-0003208**, in **Clark**
County, does hereby grant, without warranty expressed or implied to: **Las Vegas Development Group LLC**
(Grantee), all its right, title and interest in the property legally described as: **LOT 359**, as per map recorded in
Book **112**, Pages **87** as shown in the Office of the County Recorder of **Clark** County Nevada.

**TRUSTEE STATES THAT:**
This conveyance is made pursuant to the powers conferred upon Trustee by NRS 116 et seq., and that certain
Notice of Delinquent Assessment Lien, described herein.  Default occurred as set forth in a Notice of Default
and Election to Sell which was recorded in the office of the recorder of said county.  All requirements of law
regarding the mailing of copies of notices and the posting and publication of the copies of the Notice of Sale
have been complied with.  Said property was sold by said Trustee at public auction on **March 6, 2013** at the
place indicated on the Notice of Trustee's Sale.

Ryan Kerbow, Esq.
Signature of AUTHORIZED AGENT for **Alessi & Koenig, Llc.**

State of Nevada          )
County of **Clark**          )

SUBSCRIBED and SWORN to before me   3|18|13,

WITNESS my hand and official seal.
(Seal)                                        (Signature)

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
LANI MAE U. DIAZ
Appt. No. 10-2800-1
My Appt. Expires Aug. 24, 2014

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1.  Assessor Parcel Number(s)
    a. 161-26-111-017
    b. _____
    c. _____
    d. _____

2.  Type of Property:

| | | | |
|---|---|---|---|
| a. ☐ Vacant Land | b. ☑ Single Fam. Res. | | |
| c. ☐ Condo/Twnhse | d. ☐ 2-4 Plex | | |
| e. ☐ Apt. Bldg | f. ☐ Comm'l/Ind'l | | |
| g. ☐ Agricultural | h. ☐ Mobile Home | | |
| ☐ Other | | | |

FOR RECORDERS OPTIONAL USE ONLY
Book_____ Page:_____
Date of Recording: _____
Notes:

3.a. Total Value/Sales Price of Property        $ 25,100.00
   b. Deed in Lieu of Foreclosure Only (value of property (_____)
   c. Transfer Tax Value:                       $ 25,100.00
   d. Real Property Transfer Tax Due            $ 130.05

4.  **If Exemption Claimed:**
    a. Transfer Tax Exemption per NRS 375.090, Section_____
    b. Explain Reason for Exemption: _____

5.  Partial Interest: Percentage being transferred: 100  %
The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060
and NRS 375.110, that the information provided is correct to the best of their information and belief,
and can be supported by documentation if called upon to substantiate the information provided herein.
Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of
additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant
to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _____    Capacity: Grantor _____

Signature _____    Capacity: _____

**SELLER (GRANTOR) INFORMATION**
**(REQUIRED)**
Print Name: Alessi & Koenig LLC
Address: 9500 W Flamingo Rd., Ste. 205
City: Las Vegas
State: NV            Zip: 89147

**BUYER (GRANTEE) INFORMATION**
**(REQUIRED)**
Print Name: Las Vegas Development Group
Address: 397 3rd Ave Suite A
City: Chula Vista
State: CA            Zip: 91910

**COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**
Print Name: Alessi & Koenig LLC
Address: 9500 W Flamingo Rd., Ste. 205
City: Las Vegas

Escrow #N/A Foreclosure

State: NV            Zip: 89147

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED